## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

AIMEE LYNNE YATES,                )
as personal representative of the        )
Estate of Robert Lewis Yates, Jr.     )
deceased,                                          )
                                                         )
      Plaintiff,                             )
                                                         )
v.                                                       )      Case No.
                                                         )
SHERIFF HUEY BOSS MACK:          )      **<u>JURY TRIAL REQUEST</u>**
DEPUTY ROBERT CORREA;            )
DEPUTY GREG SMITH;                    )
BALDWIN COUNTY,                        )
ALABAMA;                                      )
BALDWIN COUNTY SHERIFF          )
OFFICE;                                           )
BALDWIN COUNTY MAJOR            )
CRIMES UNIT TASK FORCE;          )
BALDWIN COUNTY SWAT              )
TEAM;                                             )
CAPTAIN JOSEPH DAVIS              )
CAPTAIN TONY NOLFE                 )
LIEUTENANT NATHAN LUSK         )
LIEUTENANT ANDRE REID;           )
DEPUTY LONNIE MCKINNEY;        )
DEPUTY JUSTIN CORREA;            )
DEPUTY JARROD SHEFFIED;         )
DEPUTY NATE LAMPLUGH;           )
DEPUTY MATT MORRISON;           )
COROROAL ROB LINDELL;            )
DEPUTY BILL SMITH;                    )
DEPUTY JASON HALL;                   )
DEPUTY RANDY YOUNCE;             )
CAPTAIN STEVE ARTHUR;            )
SERGEANT CURTIS                        )
SUMMERLIN;                                  )

```
CORPORAL MATHEW HUNADY    )
SERGEANT DANIAL STEELMAN; )
CORPORAL SHANE ROBINSON;  )
OFFICER DONNIE PAYNE;     )
PAUL LEE WILSON;          )
LARRY PAUL, JR.;          )
CAPTAIN JUDD BEEDY        )
INVESTIGATOR REX BISHOP   )
INVESTIGATOR JASON        )
WOODRUFF                  )
DETECTIVE CHAD LAMBERT    )
CAPTAIN CHARLES VARNADO   )
SERGEANT GLEN HARTENSTEIN )
SERGEANT CHUCK SUTHERLIN  )
SERGEANT TONY NELSON      )
SERGEANT LARRY DEARING    )
DON DEBOURGE;             )
TIM DEBOURGE;             )
```

Defendants.

# COMPLAINT

COMES NOW the Plaintiff, AIMEE LYNNE YATES, as personal representative of the Estate of Robert Lewis Yates, Jr. and files this Complaint. For her causes of action, Plaintiff would show unto the Court the following, to wit:

## I. JURISDICTION AND VENUE

1. This action arises under the First, Second, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983 (hereinafter "Section 1983"), 42 U.S.C. § 12101 (ADA) and state laws. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1343.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) given that a substantial part of the events giving rise to the Plaintiff's claims occurred in this judicial district.

## II. PARTIES

3.      Plaintiff, Aimee Yates (hereinafter "Plaintiff"), is over the age of nineteen years and is a resident of Baldwin County, Alabama. Plaintiff is the daughter of the decedent, Robert Lewis Yates, Jr. (hereinafter "Yates"), and is the personal representative of the Estate of Robert Lewis Yates Jr. Deceased.

4.      Defendant, Huey Boss Mack (hereinafter "Mack"), is an adult resident citizen of Alabama and was the Baldwin County Sheriff at all times material hereto. At all times mentioned herein, Mack was the sheriff whose decision making and policies proximately and directly caused the death of Plaintiff's decedent, Robert Lewis Yates, Jr.  As the sheriff, among other things, he was the chief policy maker of the Baldwin County Sheriff Office and was responsible for the management and service of civil writs, and coordination of the activities of the Baldwin County MCU, BCSO Swat Team, its commanders, and its negotiators. Defendant Mack also had a statutory duty under Alabama law to attend to the medical needs of those in custody, especially those with known disabilities. He is sued in his individual capacity.

5.      Defendant Deputies Robert Correa and Greg Smith (hereinafter "Correa and Smith"), are and on information and belief on information and belief were individual deputies assigned to serving the Alias Writ of Possession on March 5, 2018 mentioned herein, and at all times were on the scene of the incident complaint of herein. were Baldwin County, They are jointly and severally responsible with Defendant Mack. Correa and Smith are sued in their individual capacities.

6.      Defendant Baldwin County, Alabama (hereinafter "Baldwin County") is a political subdivision of the State of Alabama.

7.      Defendant Baldwin County Sheriff Office (hereinafter "BCSO"), is an administrative sub-division of Baldwin County, Alabama.

8.      Defendant Baldwin County Major Crime Unit Task Force (hereinafter "MCU"), is an administrative division of the Baldwin County Sheriff Department.

9.      Defendant Baldwin County Swat Team (hereinafter "Swat Team"), is an administrative division of the Baldwin County Sheriff Office and is jointly and severally responsible with Defendant Mack.

10.      Defendant Captain Joseph Davis, Captain Tony Nolfe and Lieutenant Nathan Lusk on information and belief were commanders with the Baldwin County Swat Team at all times mentioned herein (hereinafter "Swat Team Cdrs").  Captain Joseph Davis' other responsibility was one of the two snipers on

the scene. The Swat Team Cdrs decision making and policies proximately and directly caused the death of Plaintiff's decedent, Robert Lewis Yates, Jr. They had a statutory duty under Alabama law to attend to the medical needs of those in custody, especially those with known disabilities. They are jointly and severally responsible with Defendant Mack. The Swat Team Cdrs are sued in their individual capacities.

11.    Defendants Lieutenant Andre Reid, Deputy Lonnie McKinney, Deputy Justin Correa, Deputy Jarrod Sheffield, Deputy Nate Lamplugh, Deputy Matt Morrison, Corporal Rob Lindell, Deputy Bill Smith, Deputy Jason Hall, Deputy Randy Younce, Captain Steve Arthur, Curtis Summerlin, Corporal Mathew Hunady on information and belief are members of the Baldwin County Swat Team (Swat Team Members), who were at all times present at the scene on the incident complained of herein. The Swat Team Members are sued in their individual capacities.

12.    Defendants Sergeant Daniel Steelman, Corporal Shane Robinson, Officer Donnie Payne, Investigator Paul Lee Wilson, Investigator Larry Paul, Jr. on information and belief were members of the Baldwin County Hostage Crisis Negotiators (hereinafter "Negotiators") who were at all times present at the scene on the incident complained of herei, whose decision making and policies proximately and directly caused the death of Plaintiff's decedent, Robert Lewis

Yates, Jr. They had a statutory duty under Alabama law to attend to the medical needs of those in custody, especially those with known disabilities. They are jointly and severally responsible with Defendant Mack.  The Negotiators are sued in their individual capacities.

13.     Defendants Captain Judd Beedy, Investigator Rex Bishop, Investigator Jason Woodruff, Detective Chad Lambert, Captain Charles Varnado, Sergeant Glen, Hartenstein, Sergeant Chuck Sutherlin, Sergeant Tony Nelson, Sergeant Larry Dearing on information and belief were members of the Baldwin County Major Crime Task Force (MCU Investigators) on the scene of the incident complaint of herein whose decision making and policies proximately and directly caused the death of Plaintiff's decedent, Robert Lewis Yates, Jr. Defendant Mack and had a statutory duty under Alabama law to attend to the medical needs of those in custody, especially those with known disabilities.  They are jointly and severally responsible with Defendant Mack. The MCU Investigators are sued in their individual capacities.

14.     Defendant Don DeBourge (hereinafter "Don DeBourge") was at all times mentioned herein was the owner of and doing business as Key Largo Villas, a mobile home park for retired individuals located on land owned by Don DeBourge in Baldwin County, Alabama.  Don DeBourge is sued in his individual capacity.

15.     Defendant Tim DeBourge (hereinafter "Tim DeBourge"), Tim DeBourge is Don DeBourge's son. Tim DeBourge is sued in his individual capacity.

### III. STATEMENT OF FACTS

16.     On information and belief, Don DeBourge had a history of harassing tenants of Key Allegro Villas, treating them unequally, and acting illegally and unethically against them, resulting in some tenants moving out. Yates suffered from and was clinically diagnosed with depression and was known by neighbors to stay indoors and out of the front yard of his dwelling, and due to the harassment by Don DeBourge, was pushed to be progressively more reclusive over recent years.

17.     On information and belief, Don DeBourge, the owner of Key Largo Villas and his son Tim DeBourge reportedly increasingly harassed Yates by littering his vehicle with empty beer cans, driving onto his front yard and leaving tracts with their ATV or golf cart, and clogging his drainpipe with a chip bag causing water to flood Yates floor air vents.

18.     Yates on occasion called the Baldwin County Sheriff Office to come out to his house in order to report harassment by DeBourge.  Yates also asked that the DeBourge not speak to him anymore, and that he (Yates) would communicate in writing and by mail only, which they did for several years. Yates was a peaceful, quiet neighbor who kept to himself mostly, having cordial relations only with

neighbors he knew or loaned out tools to when requested of him. However prior to his death, Defendants Don DeBourge and Tim DeBourge created a hostile living environment for Yates by their clogging his drainpipe, placing beer cans on his truck, and performing other harassing acts.  On information and belief, after Defendant Tim DeBourge moved into Key Allegro Villas and Tim DeBourge exacerbated the harassment of Yates and other tenants, creating a hostile living environment for residents of Key Largo Villas.  On information and belief, after one of the court proceedings with Yates, Don DeBourge stated he planned to "get rid of Yates". On information and belief, Yates tried to avoid both DeBourge and his son in order not to exacerbate the situation.

19.     However later, and before the incident of March 5, 2018, being aware of Don DeBourge's and Tim DeBourge's continued harassment and abuse of the elderly retirees living at Key Largo Villas, Yates consulted with an attorney. Attorney Robert Parker Sr. advised Yates to threaten a class action lawsuit against Don DeBourge if he didn't stop harassing the Key Largo Villas elderly residents. Robert W. Parker was later suspended by the Alabama State Bar Associatiion.

20.     In retaliation of his receipt of Yates letter threatening a class action lawsuit, Don DeBourge filed an Unlawful Detainer/Eviction Proceeding against Yates on or about May 15, 2017 in the District Court of Baldwin County, Alabama under case number DV-2017-900454 based upon false allegations that Yates was

in breach of his lease agreement. In fact, Yates was never asked to sign a lease agreement or contract, but paid his rent every month, and had never missed a payment, so Yates was not in default or breach for failure to pay rent. Nor did Yates fail to maintain his lot as Yates paid others to do it. Robert R. Parker, the son of Robert W. Parker was Don DeBourge attorney of record in said action.

21.     On June 7, 2017 the said district court entered a default judgment against Yates. On February 26, 2018 the said district court entered an Alias Writ of Possession to restore DeBourge's possession of the land and tenements located at 13449 Seabreeze Drive, Fairhope, Alabama. A separate order from the court recognized the premises to be relinquished was a mobile home lot, and that the mobile home on said premises was owned separately by Yates.  Finally, the order stated, "It is understood that the sheriff in executing the writ will stand by to ensure no breach of the peace if the plaintiff (Don DeBourge) decides to remove the mobile home at that time."

22.     On information and belief neither Don DeBourge nor Tim DeBourge informed Yates by mail or otherwise of the above June 7, 2017 Default Judgment nor the February 26, 2018 Order and Alias Writ of Possession issued by the Baldwin County District Court.

23.     On or about March 5 , 2018,Yates typically woke up early, took vitamins, had breakfast and coffee, made his bed, and shaved, and said daily

prayers. Later he liked to read or research something or watch a show, and he usually had a light lunch and take a nap.  On March 5, 2018 Yates had a cup of tea steeped on the kitchen counter and did not know that anyone would, or for what reason why, be knocking on his door on much less trying to break his door in with a sledgehammer and crowbar.   Present at the front door of Yates residence at 13449 Seabreeze Drive, Fairhope, Alabama were Defendants Correa and Smith assigned by Defendant Mack to serve the Alias Writ of Possession. Also present were Defendants Don DeBourge and Tim DeBourge.  Defendants Correa and Smith did not have the legal right to enter Yates premises based on the Alias Writ of Possession issued by the district court, nor did they have the legal right to allow Defendants Don DeBourge and Tim DeBourge to break down the front door of Yates premises but directed Don and Tim to bust the front door down with a sledge hammer and a crowbar.  Defendants Don DeBourge and Tim DeBourge's actions were pre-meditated, unlawful and malicious and motivated by an underlying desire to obtain the lot Yates mobile home was sitting on in order to replace Yates with a new tenant and new mobile home which was more esthetically pleasing than Yates mobile home.  One of the deputies present proceeded to go inside Yates residence after the door came down announcing this is the "sheriff's office" and the other went around to the back of the house.  On information and belief, Yates was in the bathroom when he heard the intruders breaking down his down, and in response

got his gun and fired a warning shot inside of his home but not in the direction of the front door intruders, then went back into the bathroom to protect himself from the intruders and called 911 and the sheriff's office.

24.     Once Yates fired a warning shot, both deputies ran away from the house to behind Yates' truck parked in the front yard, and proceeded to fire their weapons into Yates home and called for backup, medics and a medical helicopter. When the Swat Team arrived, they came with their military style vehicles, incendiaries, and weaponry, and cleared the local area of all residents surrounding Yates home.

25.     On information and belief, Defendant Deputy Robert Correa then spoke to his son Defendant Deputy Justin Correa upon his arrival on scene, and warned him, "if at all possible don't get involved in the SWAT entry…..I know you want to…..I'm just thinking about conflict of interest".  To which his son Defendant Deputy Justin Correa, an investigator, responded, "Well just don't tell them that.  ………….. I'm gonna go in and KILL this fucker if I have to."

26.     On information and belief, for sometime after 1:30 PM, Yates front door was open, and between then and 6:30 PM the SWAT TEAM members tore his windows and walls apart with their armored Bearcat vehicle and used tear-gassed, concussion grenades and/or flash bangs toward Yates for two and a half hours.

27.     Yates had not retaliated against the use of the Bearcat in breaking down the walls and windows of his home, nor to the use of tear gas, flash bangs, and concussion grenades by the Swat Team but with the strong possibility he lay hidden, injured or dying and in need of emergency medical attention, in a back room of his home in fear of his life for what was happening around him, the Swat Team Cdrs released the medical helicopter back.

28.     Yates family members heard of the disturbance near Yates home and began trying to contact the Baldwin County Sheriff Office and Swat Team officials on the scene in control of situation.  Swat Team Commanders, Negotiators or Members never attempted to contact members of the Yates family to try and de-esculate the situation before anyone was hurt.   When Yates sister Cyndey Ramsay, arrived home from work, she learned of a disturbance in his area, and called Baldwin County Sheriff Office, and spoke to Sergeant Payne who was also on the scene.  Payne asked her what guns Yates owned. So, in an attempt to be helpful, she called Yates father, Robert Lewis Yates, Sr. and asked him what longtime family guns did Yates own.  She also called her daughter and Yates' niece, Skye Ramsay at 6:00 PM.  Ramsey called the Plaintiff and told her about the disturbance near her father's home and requested she check on her father.

29.     At exactly 6:06 PM Plaintiff immediately called her father's phone number, and one of the Negotiators answered. The Negotiator told the Plaintiff that

her father's phone line had been intercepted and that he could not tell her why. The Negotiator asked Plaintiff if her dad had a history of mental illness, and Plaintiff answered yes and explained to the Negotiator that Yates would only trust and speak to herself or her sisters. Yates discussed trying to de-esculate the situation before anyone got hurt, and requested to speak with Yates to try to diffuse the situation since she was the only one Yates might would to.  The Negotiator and the other Negotiators refused Plaintiff's request to speak with Yates or otherwise to contact him.  The Negotiator also asked Plaintiff what guns her father owned, to which Plaintiff replied a couple of old family guns, a pistol and a rifle, the guns he owned most of his life.  The Negotiato stated he could not tell her what was happening, except that her father would not come out of his home or answer his phone.  When Plaintiff asked to speak with her father, The Negotiator would not allow her to speak with Yates. Plaintiff was on the phone with Negotiator fifteen minutes before he told her he had to clear the line in case her father wanted to communicate. He then allowed the Plaintiff to speak with another Negotiator on a separate line, who told Plaintiff that they "did not want family members to speak in this situation, since the person may have a chance to say goodbye and do whatever they were going to do".  This second Negotiator also told Plaintiff she should not go down there as she would not be able to get within a mile because the area was "blocked off".

30.     On information and belief, between the 1:30 and 6:30 PM, Yates

called 911 asking for the U.S. Marshall's office to intervene in a futile attempt to

negotiate with higher federal authorities but since the Baldwin County Sheriff and

Swat Team had intercepted his phone line, they denied his requested attempt to de-

esculate the situation. By this time, Defendants were dead-set on killing Yates.,

and approximately at or about 6:30 PM on March 5, 2018 the decision was made to

breach the Yates residence with all of the Swat Team's fire power, although the

situation was not an exigent one, nor was there an emergency, nor had Yates

threatened anyone's life since firing a warning shot inside his home.  The Swat

Team was not a tornado coming through to sweep away anything and everything in

its path, it was not a wild animal stealthly searching for its prey, it was a lot worse.

It was a group of highly specialized and heavily armored and armed men rushing

through Yates home from all sides intent on killing for no justifiable reason a 60

year old plus, retired and disabled and possibly seriously injured man trying to

protect himself the only way he knew how.

31.     Based on bullet holes in Yates home, and shell casings found outside

of the residence, Swat Team Members shot the home up with their military style

weapons without probable cause, as Yates had been silent for several hours. There

were more than 114 shells/bullets casings, along with tear gas canisters, and

concussion grenades left at scene. Defendant Deputy Justin Correa fired a

14

minimum of 30 AR15 rounds from Yates front porch.   Swat Team Members

entered Yates home and spread more fire all around inside the home leaving Yates

critically wounded and in need of emergency medical attention. Yates home had

been illegally broken into, cracked open at the seams and riddled with bullet holes

by Swat Team Members, under orders from their commanders, to breach Yates

home regardless of the risk to harm to Yates who had bravely withstood the

continuous tear gas, flash bangs, and concussion grenades for hours, peacefully

and quietly accepting the retaliation and torture they wrongfully imposed upon him

for simply trying to protect himself and his home in accordance with his

constitutional rights.

32.    On information and belief, present on the scene on March 5 and

March 6, 2018 were Swat Team members Defendant Lieutenant Andre Reid, who

fired his AR 15, Defendant Deputy Lonnie McKinney, who fired his Glock 22,

Defendant Deputy Justin Correa, who fired his AR 15, Defendant Deputy Jarrod

Sheffield, who was armed but did not fire his Glock 22, Defendant Deputy Nate

Lamplugh, who was armed but did not fire his Glock 22, Defendant Deputy Matt

Morrison, who fired his Glock 22, Defendant Corporal Rob Lindell, who fired his

AR15, Defendant Deputy Bill Smith, who fired his Glock 22, Defendant Deputy

Jason Hall, who fired his Glock 22, Defendant Deputy  Randy Younce, who fired

his AR15, Defendant Sergeant Curtis Sutherlin was a SWAT sniper, and

Defendant Captain Steve Arthur, who rammed his Bearcat military into Yates' residence.Yates was killed after receiving three bullets. One to his abdomen, one to his arm, and another execution style bullet to the back of his Yates head.

33.     Yates lay seriously wounded, unconscious, and barely alive by the time medics reached him on March 5, 2018 at approximately 6:30 PM. However Yates was not rushed to the emergency room by ambulance, and was not transported by life saver helicopter to the hospital. Yates remained in his home slowly dying as the Investigators make false reports, took false statements, and failed to adequately investigate the incident and scene, counting shells, casings, canisters, and grenades. A transport unit from Gulf Shores was not called until sometime between 2:00 AM and 4 AM the next morning to transport Yates now deceased body to the Forensics Laboratory in Mobile.

34.     Plaintiff was at the mercy of the officials on the scene to try to de-esculate the situation and preserve life, but after seeing further media reports, Plaintiff began to fear for her father's life, and called the second officer back to demand she be able to speak to her father but the officer didn't answer. Then Plaintiff called her father's home number again but no one answered that number either. Since the named Defendants on the scene no longer answered her calls, in desparation to save her father's life, Plaintiff called her sister and picked her up to go with her to her father's home at Key Largo Villas. She received a phone call on

route to her father's home that her father "had been killed". Plaintiff's sister then called Captain Tony Nolfe, who she knew, on his personal cell phone.  He was on the scene of the incident at the time who to Plaintiff's sister and told Plaintiff's sister that he didn't know Yates was her father since she had a different last name. He told her that the Chaplin and Dan Steelman were on their way to the Plaintiff's house to notify her of her father's death. Plaintiff's sister Courtenay asked if they would meet them at the church instead.

35.    On March 6, 2018 an officer cut the police tape around the scene and the scene was released to the Plaintiff.  Defendant Don DeBourge told the Plaintiff that police had told him to "get rid of the mobile home ASAP" and gave Plaintiff a "24 hour deadline" to remove her father's belongings, because, he said, he was going to, "haul it to a repo yard and burn it".

## GENERAL ALLEGATIONS

36.    The plaintiff re-alleges and incorporates by reference paragraphs 1-35 above with the same force and effect as if fully set out in specific detail hereinbelow.

37.    Defendants, at all times material hereto, either personally or through an agent or representative:

>    a.    acted negligently and/or wantonly in regards to Yates's serious medical needs;

b.   acted with deliberate indifference to Yate's serious medical needs in violation of 42 U.S.C. § 1983;

c.   acted negligently and/or wantonly by violating known policies and procedures regarding the deployment of military style equipment, weaponry, and incendiary devices;

d.   acted negligently and/or wantonly by not training the Swat Team Members on the justifiable use of military style equipment, weaponry, and incendiary devices;

e.   acted negligently and/or wantonly by breaching standard Swat Team policies and procedures;

f.   acted with negligent and/or wanton disregard for Yates's constitutional rights;

g.   acted with deliberate indifference to Yate's constitutional rights.

38.   As a direct and proximate cause of Defendants' tortious, negligentful, and/or wanton conduct, Robert Lewis Yates, Jr. was caused to die before receiving proper medical treatment.

### COUNT I – 42 U.S.C. § 1983
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

39.   The plaintiff re-alleges and incorporates by reference paragraphs 1-38 above with the same force and effect as if fully set out in specific detail hereinbelow.

40.   Defendants Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, and Swat Team Investigators acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were

deliberately indifferent to Yate's, serious medical needs in that they had knowledge of Yates mental disability and subsequent three bullet woulnds requiring emergency medical treatment yet refused to obtain or authorize that emergency treatment for Yates resulting in Yates death.

41.     The decisions of the said defendants to deny Yates medical care for his three bulllet wounds were pursuant to one or more policies or customs and practices. These policies and customs included inadequate medical care to those in custody of the BCSO inadequate emergency medical field training, allowing untrained and/or poorly trained personnel to make decisions regarding medical treatment, and denying and delaying necessary medical care to persons with serious medical needs in order to avoid incurring charges for said medical treatment.

42.     The said defendants Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, and Swat Team Investigators did thereby deprive Yates of his clearly established rights as a person in custody as pretrial detainee under the Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983.

43.     As a direct and proximate cause of said defendants deliberate indifference to Yates mental disability and serious medical needs Yates was caused to die before receiving proper medical treatment.

## COUNT II – 42 U.S.C. § 1983
## DELIBERATE INDIFFERENCE TO HEALTH/SAFETY

44.     The plaintiff re-alleges and incorporates by reference paragraphs 1-43 above with the same force and effect as if fully set out in specific detail hereinbelow.

45.     Defendants Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, and Swat Team Investigators acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Yates' health and safety, including both his serious mental medical needs, his mental disability, and the conditions of his custody and confinement, in that they had knowledge of these conditions, had ample opportunity to address them, yet refused to take action to remedy them.

46.     The decisions of the individual defendants to deny Yates medical care for his mental disability and while he was suffering from three gun shot wounds to his body, were pursuant to one or more policies or customs in practice at the time. These policies and customs included allowing untrained and/or poorly trained law enforcement officers such as the said defendants to make decisions regarding providing emergency medical care and denying and delaying necessary medical care to persons with mental disabilities and suffering from three bullet wounds to his body..

47.     These said defendants did thereby deprive Yates of his clearly established rights as a person in custody as a pretrial detainee under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. § 1983.

48.     As a direct and proximate cause of said defendants deliberate indifference to Yates health and safety Yates was caused to die before receiving proper medical treatment.

## COUNT III – 42 U.S.C. § 1983
## EXCESSIVE FORCE

49.     The plaintiff re-alleges and incorporates by reference paragraphs 1-48 above with the same force and effect as if fully set out in specific detail hereinbelow.

42.     Defendants Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, Swat Team Members, and Swat Team Investigators acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, deliberately deprived Yates of his rights under the Eighth and Fourteenth Amendment of the United States Constitution.

43.     Defendants Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, Swat Team Members, and Swat Team Investigators while working in the line and scope of their duties as law enforcement officers deliberately violated Yates' Eight and Fourteenth

Amendment rights as a person in custody to be free from the use of excessive force while being detained as a pretrial detainee.

44.    Defendants Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, and Swat Team Investigators are supervisory officials responsible for the development and implementation of policies and procedures to ensure that Swat Team appropriate use their force with their equipment, weaponry, and incendiaries under the circumstances. This duty included, but was not limited to, the duty to create, adopt and implement rules, regulations, practices, and procedures which clearly direct Swat Team Members as to the appropriate use of force with their equipment, weaponry, and incendiaries under relevant circumstances.

45.    Defendant Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, and Swat Team Investigators failure to adopt and implement adequate policies regarding his corrections officers' appropriate use of force under the relevant circumstances and their conscious ignorance of legal duties and responsibilities under the law as a matter of custom and practice, constitutes deliberate indifference to the known, serious consequences of excessive force with this type of equipment, weaponry, and incendiaries under relevant circumstances.

46.     Yates' death was the foreseeable result of Defendant Sheriff Mack, BCSO, Baldwin County, MCU, Swat Team, Swat Team Cdrs, Negotiators, and Swat Team Investigators failure to adopt and implement adequate policies regarding the use of force with this type of equipment, weaponry, and incendiaries under the relevant circumstances.

47.     The said defendants did thereby deprive Yates of his clearly established rights as a pretrial detainee under the Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States in violation of 42 U.S.C. § 1983 proximately causing Yates death.

## COUNT IV – NEGLIGENCE AND/OR WANTONNESS OF DEFENDANTS  SHERIFF MACK, MCU, SWAT TEAM CDRS, AND NEGOTIATORS, AND MCU INVESTIGATORS

48.     The plaintiff re-alleges and incorporates by reference paragraphs 1-47 above with the same force and effect as if fully set out in specific detail hereinbelow.

49.     Defendants Sheriff Mack, Swat Team Cdrs, Negotiators, and MCU Investigators acting within the scope of their employment and responsibilities, owed a duty to Yates to act reasonably and meet the standard of care applicable to persons in custodial situations and pretrial detainees experiencing serious medical conditions such as mental disability and wounds to the body to make sure those under their supervision were trained adequately regarding the proper care of such

inmates and that adequate policies and procedures regarding the proper medical care are in place. This standard of care required, among other things, that Yates condition immediately be assessed, that Yates's condition be closely monitored under physician supervision, and that referral of Yates for emergency medical or other appropriate treatment begin immediately once his condition was found to have deteriorated.

50.     Said defendants negligently and/or wantonly violated this standard of care or caused it to be violated with the foreseeable result that Yates suffered unnecessary pain and suffering and ultimately died as a result thereof.

51.     Said defendants acting within the scope of their employment with the Baldwin County or the Baldwin County Sheriff Office, owed a duty to Yates to provide a him with immediate emergency care when he was found alive but with three serious gunshot wounds to his body and head at the scene.

52.     Said defendants' breach of this duty proximately caused Yates unnecessary pain and suffering, and ultimately led to his death.

53.     Said defendants' acting within the said scope of their employment owed a duty to Yates to act reasonably in providing adequate training and supervision of the Correa and Smith, and Swat Team Members in regard to using appropriate force under varying circumstances but breached said duty when they approved using excessive force against Yates as described above.

54.     Said defendants acting within the said scope of their employment, negligently and/or wantonly failed to provide adequate training and supervision to Correa and Smith, and the Swat Team Members at the Birmingham at the scene of the incident.  Defendants' breach of this duty proximately caused Yates unnecessary pain and suffering, and ultimately led to his death.

## COUNT V – NEGLIGENT AND/OR WANTONNESS OF CORREA AND SMITH, SWAT TEAM CDRS, SWAT TEAM MEMBERS, MCU INVESTIGATORS, AND NEGOTIATORS

55.     The plaintiff re-alleges and incorporates by reference paragraphs 1-54 above with the same force and effect as if fully set out in specific detail hereinbelow.

56.     Defendants Correa and Smith, Swat Team Cdrs, Swat Team Members, MCU Investigators, and Negotiators acting within the scope of their employment with the Baldwin County, BCSO, Sheriff Mack, and the Swat Team were under a duty de-esculate the situation and to provide adequate medical care to Yates.

57.     Defendants Correa and Smith, Swat Team Cdrs, Swat Team Members, MCU Investigators, and Negotiators negligently and/or wantonly failed to de-esculate the situation with Yates, then failed to properly evaluate and/or assess and/or treat Yates' medical condition in violation of known policies and procedures.

58.     Defendants' breach of this duty proximately caused Yates unnecessary pain and suffering, and ultimately led to his death.

59.     Defendants acting within the said scope of their employment owed Yates a duty of care to act reasonably and to use a reasonable amount of force given the circumstances of March 5, 2018.

60.     Defendants negligently and/or wantonly violated that duty of care by using excessive force against Yates on March 5, 2018, and furthermore violated known policies and procedures with regard to safe use of said force.

61.     Defendants' breach of this duty proximately caused Yates unnecessary pain and suffering, and ultimately led to his death.

### COUNT VII

**FIRST AMENDMENT – INVASION OF PRIVACY
SECOND AMENDMENT – RIGHT TO KEEP AND BEAR ARMS
FOURTH AMENDMENT - UNLAWFUL SEARCH AND SEIZURE**

62.     The plaintiff re-alleges and incorporates by reference paragraphs 1-61 above with the same force and effect as if fully set out in specific detail herein68low.

63.     The actions by all named individual defendants constitute an unlawful invasion of privacy and search and seizure in violation of the First and Fourth Amendments of the Constitution of the United States.

64.     All of the named individual defendants were acting under color of law in the line and scope of their employment and position as law enforcement officers

and officials of Defendants Baldwin County, Sheriff Mack, the Sheriff Department, and its Swat Team Cdrs, MCU Investigators, and Negotiators.

65.     On information and belief, it is the policy or custom of the Sheriff Mack, Baldwin County, its Sheriff Department, and its Swat Team to allow, to fail to prohibit, or fail to discipline such actions, so as to constitute the policy of Sheriff Mack, Baldwin County, its Sheriff Department, and its Swat Team Cdrs, MCU Investigators, and Negotiators.  Further, said defendants failed to train its officers, despite notice of the need to do so, to avoid such constitutional violations.

66.     As a result of the violation of Yates clearly established constitutional rights to privacy, to keep and bear arms, and to be free from unlawful search and seizure, the front door, walls, and windows of Yates home were broken down and destroyed placing Yates in fear of his life for five hours inside his home before he was shot in the abdomen, arm, and back of the head by Swat Team Members as they shot up the exterior and interior of his home firing more than 114 rounds.  In the process, Yates was subjected to severe mental anguish of the type that no reasonable person should be expected to endure; Yates suffered intimidation, embarrassment, and humiliation, along with mental and physical abuse distress, and suffered serious wounds to his body.

67.     Said actions of said defendants were done maliciously, willfully, and with reckless disregard for Yates clearly established constitutional rights.

## COUNT VIII — DISABILITY DISCRIMINATION

68.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-67 above with the same force and effect as if fully set out in specific detail hereinbelow.

69.     Yates suffered from depression and other recognized disabilities under the Americans with Disabilities Act

70.     All of the named Defendants, including those named individually, were aware of Yates mental disability and disorders, and used Yates disability to abuse and terrorize Yates as stated above.

71.     Said actions by constitute disability discrimination under the Americans with Disabilities Act.

72.     On information and belief, it is the policy or custom of Sheriff Mack, Baldwin County, its Sheriff Department, its Swat Team Cdrs,  MCU Investigators, and Negotiators to allow, to fail to prohibit, or fail to discipline such actions, so as to constitute the policy and practice of said defendants.  Further, said defendants failed to adequately train its officers, despite notice of the need to do so, to avoid such constitutional violations.

73.     Said defendants therefore ratified and/or condoned such hostile and abusive behavior of the individually named defendants.

74.     Said defendants are vicariously liable for the conduct of the individual officers that harassed, terrified, and discriminated against Yates on March 5 and 6, 2018.

75.     Said harassing actions, terrorizing, and discrimination was done maliciously, willfully, and with reckless disregard for the Yates rights as a person with disabilities recognized under A.D.A.

76.     As a result of the disability discrimination against him, Yates suffered the following injuries and damages:  Yates was subjected to severe mental anguish of the type that no reasonable person should be expected to endure; Yates suffered intimidation, embarrassment, and humiliation, along with mental and physical abuse and distress, and gunshot wounds which ultimately led to his death the following morning.

## COUNT IX – WRONGFUL DEATH

77.     The plaintiff re-alleges and incorporates by reference paragraphs 1-76 above with the same force and effect as if fully set out in specific detail hereinbelow.

78.     The named Defendants, separately and severally, caused the wrongful death of Robert Lewis Yates, Jr.  as contemplated by Alabama Code § 6-5-410. Defendants, separately and severally, owed a duty to Yates to provide him with a standard of medical care of the degree of diligence and skill common in the community and applicable to inmates such as Yates who are experiencing a serious medical need as a result of three gunshot wounds made by law enforcement officers, mental disability, to train their subordinates adequately regarding the

proper care of such patients and that adequate medical protocol regarding the proper care of such patients was in place.

79.     This standard of care required, among other things, Yates medical condition adequately assessed and closely monitored under physician supervision and referral for emergency medical or other appropriate treatment, including having proper and functional emergency medical equipment on hand once his condition deteriorated.

80.     Defendants further owed Yates a duty of care to use reasonable force under the circumstances present on March 5, 2018.

81.     Defendants Correa and Smith, and Swat Team Members specifically, violated this duty of care, exercised unreasonable force given the circumstances, and in doing so violated known policies and procedures relating to the safe use of their equipment, weapons, and incendiaries.

82.     Defendants' negligent and/or wanton violation of the duties of care owed to Yates proximately caused his wrongful death. This was a foreseeable result of Defendants' negligent and/or wanton conduct.

## COUNNT X - ABUSE OF PROCESS
## AND
## CONSPIRACY TO ABUSE OF PROCESS

83.     Plaintiff re-alleges and incorporates by reference paragraphs 1-82 above with the same force and effect as if fully set out in specific detail hereinbelow.

84.     Defendants Don DeBourge and Tim DeBourge conspired to bring a civil action against Yates under false pretenses for the purpose of repossessing the lot upon which Yates mobile home was situated.

85.     As a result of the said defendants actions, Yates suffered the injuries and death as hereinabove described.

## COUNT XI
## BREACH OF IMPLIED WARRANTY OF HABITABILITY

86.     Plaintiff re-alleges and incorporates by reference paragraphs 1-85 above with the same force and effect as if fully set out in specific detail hereinbelow.

87.     Defendants Don DeBourge and Tim DeBourge conspired to breach and breached the warranty of habitability of the property upon which Yates mobile home was situated by driving their golf cart and atv over Yates yard, placing beer cans on Yates truck, and placing a chip bag over Yates drainpipe causing the air vents to flood.

88.     As a result of the said defendants actions, Yates suffered the injuries as hereinabove described.

## COUNT XII - NEGLIGENCE

89.     Plaintiff re-alleges and incorporates by reference paragraphs 1-88 above with the same force and effect as if fully set out in specific detail hereinbelow.

90.     Don DeBourge and Tim DeBourge owed a duty to Yates not to cause damage to his mobile home.

91.     Said defendants breached that duty when they used a sledge hammer and crow bar on March 5, 2018 to break down the front door of Yates home without Yates authorization and approval.

92.     As a result of the said defendants actions, Yates suffered the injuries and death as hereinabove described.

## COUNT XIII INFLICTION OF EMOTIONAL DISTRESS

93.     Plaintiff re-alleges and incorporates by reference paragraphs 1-92 above with the same force and effect as if fully set out in specific detail hereinbelow.

94.     Don Debourge and Tim DeBourge's recklessly inflicted emotional distress upon Yates by driving their golf cart and atv over his yard, placing beer cans on his truck, and covering up his drainpipe.

95.     Said defendants acts toward the Yates were so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and are atrocious and utterly intolerable in a civilized society.

96.     The emotional distress that said defendants caused Yates to suffer was so severe that no reasonable person could be expected to endure it.

97.     As a result of the said defendants actions, Yates suffered the injuries and death as hereinabove described.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court assume jurisdiction of this action and after trial:

98      Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her damages in an amount to be determined by a jury, to include nominal damages, compensatory and punitive damages, and pre- and post-judgment interest.

99.     The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Dated: March 3, 2020

Respectfully submitted,

*/s/ Anthony Piazza*
Anthony Piazza (ASB-6593-A37A)
**ANTHONY PIAZZA, P.C.**
P. O. Box 550217
Birmingham, AL 35255-0217

T:     (205) 617-6211
Email:  anthonypiazza0326@hotmail.com

*Counsel for Plaintiff*

**OF COUNSEL:**
ANTHONY PIAZZA, P.C.
Post Office Box 550217
Birmingham, Alabama 35255-0217

**SERVE DEFENDANTS AS FOLLOWS:**

Sheriff Huey Boss Mack
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Robert Correa
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Greg Smith
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Baldwin County, Alabama
c/o Baldwin County Commission
310 Hand Avenue
Bay Minnette, Alabama 36507

Baldwin County Sheriff Office
310 Hand Avenue
Bay Minnette, Alabama 36507

Baldwin County Major Crimes Unit Task Force
310 Hand Avenue
Bay Minnette, Alabama 36507

Baldwin County Swat Team
310 Hand Avenue
Bay Minnette, Alabama 36507

Captain Joseph Davis
310 Hand Avenue
Bay Minnette, Alabama 36507

Captain Toney Nolfe
310 Hand Avenue
Bay Minnette, Alabama 36507

Lieutenant Nathan Lusk
310 Hand Avenue
Bay Minnette, Alabama 36507

Lieutenant Andre Reid
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Lonnie McKinney
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Justin Correa
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Jarrod Sheffield
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Nate Lamplugh
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Matt Morrison
310 Hand Avenue
Bay Minnette, Alabama 36507

Corporal Rob Lindell
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Bill Smith
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy Jason Hall
310 Hand Avenue
Bay Minnette, Alabama 36507

Deputy  Randy Younce
310 Hand Avenue
Bay Minnette, Alabama 36507

Captain Steve Arthur
310 Hand Avenue
Bay Minnette, Alabama 36507

Sergeant Curtis Summerlin
310 Hand Avenue
Bay Minnette, Alabama 36507

Corporal Mathew Hunady
310 Hand Avenue
Bay Minnette, Alabama 36507

Sergeant Daniel Steelman
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Corporal Shane Robinson
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Officer Donnie Payne
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Investigator Paul Lee Wilson
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Investigator Larry Paul, Jr.
c/o Baldwin County Sheriff Department
310 Hand Avenue
Bay Minnette, Alabama 36507

Captain Judd Beedy
c/o Daphne Police Department
1502 US Hwy 98
Daphne, AL 36526

Investigator Rex Bishop
c/o Robertsdale Police Department
23335 East Chicago Street
Robertsdale, AL 36567

Investigator Jason Woodruff
c/o Gulf Shores Police Dept.
220 Clubhouse Drive
Gulf Shores, AL 36542

Detective Chad Lambert
c/o Gulf Shores Police Dept.
220 Clubhouse Drive
Gulf Shores, AL 36542

Captain Charles Varnado
c/o Fairhope Police Department
107 North Section Street
Fairhope, AL 36562

Sergeant Glen Hartenstein
c/o Foley Police Department
200 East Section Avenue
Foley, AL 36535

Sergeant Chuck Sutherlin
c/o Foley Police Department
200 East Section Avenue
Foley, AL 36535

Sergeant Tony Nelson
c/o Foley Police Department
200 East Section Avenue
Foley, AL 36535

Sergeant Larry Dearing
c/o Foley Police Department
200 East Section Avenue
Foley, AL 36535

Don DeBourge
9522 Coral Sea Dr.
Fairhope, Al 36532

Tim DeBourge
13295 Sea Breeze Blvd.
Fairhope, AL 36532