# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| AIMEE LYNNE YATES, | ) | |
| as personal representative of the | ) | |
| Estate of Robert Lewis Yates, Jr. | ) | |
| deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.  20-00131-KD-B** |
| | ) | |
| SHERIFF HUEY HOSS MACK | ) | **JURY TRIAL REQUEST** |
| BALDWIN COUNTY, | ) | |
| ALABAMA; | ) | |
| ROBERT CORREA | ) | |
| GREG SMITH | ) | |
| JOSEPH DAVIS | ) | |
| CAPT. TONY NOLFE | ) | |
| LT. NATHAN LUSK | ) | |
| LONNIE MCKINNEY | ) | |
| JUSTIN CORREA | ) | |
| JARROD SHEFFIELD | ) | |
| NATE LAMPLAUGH | ) | |
| MATT MORRISON | ) | |
| BILL SMITH | ) | |
| JASON HALL | ) | |
| Cpt. STEVE ARTHUR | ) | |
| SERGEANT CURTIS | ) | |
| SUMMERLIN; | ) | |
| CPL. MATHEW HUNADY | ) | |
| CPL. SHANE ROBINSON | ) | |
| DEP. LARRY PAUL, JR. | ) | |
| LT. ANDRE REID | ) | |
| RANDY YOUNCE | ) | |
| SGT. CURTIS SUTHERLIN | ) | |
| SGT. DANIAL STEELMAN | ) | |
| DEP. DONNIE PAYNE | ) | |

| | |
|---|---|
| CPL. ROB LINDELL | ) |
| INVESTIGATOR REX BISHOP | ) |
| CAPTAIN JUDD BEEDY | ) |
| JASON WOODRUFF | ) |
| CHAD LAMBERT | ) |
| CPL CHARLES VARNADO | ) |
| SGT GLEN HARTENSTEIN | ) |
| CHUCK SUTHERLIN | ) |
| SGT TONY NELSON | ) |
| SGT LARRY DEARING | ) |
| DON DEBOURGE | ) |
| TIM DEBOURGE | ) |

Defendants.

## **PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW the Plaintiff, AIMEE LYNNE YATES, as personal representative of the Estate of Robert Lewis Yates, Jr. and files her First Amended Complaint. For her causes of action, Plaintiff would show unto the Court the following, to wit:

## **I. JURISDICTION AND VENUE**

This action arises under the Fourth, and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983 (hereinafter "Section 1983"), 42 U.S.C. § 12101 (ADA) and state laws. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1343.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) given that a substantial part of the events giving rise to the Plaintiff's claims occurred in this judicial district.

4

## II. PARTIES

1.     Plaintiff, Aimee Yates (hereinafter "Plaintiff"), is over the age of nineteen years and is a resident of Baldwin County, Alabama. Plaintiff is the daughter of the decedent, Robert Lewis Yates, Jr. (hereinafter "Yates"), and is the personal representative of the Estate of Robert Lewis Yates Jr. Deceased.

2.     Defendant, Huey Hoss Mack (hereinafter "Mack"), is an adult resident citizen of Alabama and was the Baldwin County Sheriff at all times material hereto. At all times mentioned herein, Mack was the sheriff whose customs and practices proximately and directly and/or indirectly caused the death of Plaintiff's decedent, Robert Lewis Yates, Jr.  As the sheriff, among other things, he was the chief policy maker of the Baldwin County Sheriff Office and was responsible for the management and service of civil writs, and coordination of the activities of the Baldwin County MCU, BCSO Swat Team, its commanders, and its negotiators.  Defendant Mack also had a statutory duty under Alabama law to attend to the medical needs of those in custody, especially those with known disabilities. He is sued in his individual capacity.

3.     Defendant Baldwin County, Alabama (hereinafter "Baldwin County") is a political subdivision of the State of Alabama.

4.      Defendants Robert Correa and Greg Smith (hereinafter "R. Correa and G. Smith"), on information and belief were individual deputies with the Baldwin County Sheriff Department.  They are sued in their individual capacities.

5.      Defendants Joseph Davis, Capt. Tony Nolfe Lt. Nathan Lusk, Lonnie McKinney, Justin Correa, Jarrod Sheffield, Nate Lamplaugh, Matt Morrison, Bill Smith, Jason Hall, Steve Arthur, Curtis Summerlin,  Cpl. Mathew Hunady, Cpl. Shane Robinson, Dep. Larry Paul, Lt. Andre Reid, Randy Younce, Sgt. Curtis Sutherlin, Sgt. Danial Steelman, Dep. Donnie Payne, and Cpl Rob Lindell, on information and belief were members of the Baldwin County Swat Team (Swat Team Members), who responded to the scene on the incident complained of herein. Commanders on the scene were Cpt Tony Nolfe, after Joseph Davis relinquished command to become a SWAT sniper, and Lt. Nathan Lusk. SWAT Command on scene was Steve Arthur, SWAT Commander, Lt Andre Reid, Dep SWAT Cdr. The said commanders on scene, along with Sheriff Mack, were the on scene policy makers. The above Defendant Swat Team Members and Commanders are sued in their individual capacities.

6.      Defendants Investigator Rex Bishop,  Cpt. Judd Beedy, Jason Woodruff, Chad Lambert, Cpl. Charles Varnado, Sgt. Glen, Hartenstein, Chuck Sutherlin, Sgt. Tony Nelson, Sgt. Larry Dearing on information and belief were

members of the Baldwin County Major Unit Crime (hereafter MCU Investigators) The MCU Investigators are sued in their individual capacities.

7.     Defendant Don DeBourge (hereinafter "Don DeBourge") was at all times mentioned herein the owner of and doing business as Key Largo Villas, a mobile home park for retired individuals located on land owned by Don DeBourge in Baldwin County, Alabama.  Don DeBourge is sued in his individual capacity.

8.     Defendant Tim DeBourge (hereinafter "Tim DeBourge"), Tim DeBourge is Don DeBourge's son. Tim DeBourge is sued in his individual capacity.

### III. STATEMENT OF FACTS

9.     On information and belief, Don DeBourge was the sole owner of Key Allegro Villas Retirement Community, a mobile home retirement community located in Baldwin County, Alabama.

10.     Robert Lewis Yates, Jr., (hereinafter Yates) the Plaintiff's decedent, had leased a lot from DeBourge  Yates owned the mobile home in which he resided that was situated on said lot, located at 13449 Seabreeze Blvd, Fairhope, Alabama.

11.     Yates suffered from depression and other mental disorders, and previously had been involuntarily committed for mental health treatment in 2002 by the Probate Court of Baldwin County, Alabama but had not been hospitalized

since 2002.  In 2004, the Probate Court held another hearing to determine Yate's mental capacity. In both cases the Baldwin County Sheriff Department was ordered to pick up Yates and bring him to the Probate Court or the hospital.

12.   DeBourge sought a "forced entry order" along with an alias writ of possession from the District Court of Baldwin County, On February 26, 2018 the District Court issued an Alias Writ of Possession against Yates and an order which stated, "It is understood that the sheriff in executing the writ will stand by to ensure no breach of the peace if the plaintiff (Don DeBourge) decides to remove the mobile home at that time."

13.   On or about 8.37 A.M. on March 2, 2018 Defendants Robert Correa and Greg Smith executed an Alias Writ of Possession on the Yates' mobile home residence, located at 13449 Seabreeze Blvd., Fairhope, Alabama by posting a copy of it to Yates' door at 8:37 A.M.  Having executed a copy of the writ, they signed the original, and gave it to DeBourge.

14.   The said Correa and Smith returned to the Yates residence on March 5, 2018 at the instigation of DeBourge for the purpose of acting together with Debourge and aiding Debourge to remove Yates from his property without an arrest warrant for Yates, and without a search warrant of Yates mobile home, and without a new alias writ of possession**.**

8

15.     On said date Correa and Smith were not acting under the authority of the Court, nor there on official sheriff department business but as personal agents of DeBourge, acting outside the scope of their employment. Within the first 110 seconds of their first knocking on Yates' door, Correa and Smith knocked on the carport end of the Yates trailer multiple times and later on the front door, announcing "sheriff's office" without a response from inside.

16.     DeBourge and his son then made multiple attempts with a crowbar and sledge hammer to bust open the front door of Yates residence eventually knocking down the door, and shortly thereafter, Smith stood in the threshold with Correa behind him, and announces "Sheriff's Office", as he scans north and south looking for Yates. Approximately a half minute later, a single gunshot is heard from within the residence from an unknown source and direction.  At that moment, Smith turns around at the doorjamb with bodycam showing Correa in front of him and both head off of the porch. No one, including the Debourges were injured, and Yates had not directed physical harm at anyone.

17.     Correa and Smith left the porch, leaving the entrance doorway open. Correa took up a position adjacent to the left front wheel well and on the shielded side of the vehicle that was backed into the carport, and Smith took up an initial location behind the end of the trailer.

18.     Smith then crossed over to the left rear of the vehicle for cover and calls out "come here sir, get your hands up" and one second later, discharges his 40 caliber Glock five times. The 5-shot volley takes less than 2 seconds.  There is another volley of gunfire by both Smith and Correa's handguns 5 seconds later. This volley contains another 12 discharges and is over in approximately 4 seconds. Then Smith calls out "let me see your hands now".

19.     As the scene unfolded for next several hours, Correa and Smith relayed their rendition of encounter with fellow officers, supervisors, SWAT commander, and negotiator, deliberately fabricating a story of Yates coming out or crawling out on the front porch and firing at them, a story not supported by Baldwin County Sheriff's records of the incident.

20.     When Justin Correa, Robert Correa's son, arrived on the scene with other members of the SWAT team, Robert Correa was overhead to tell his son Justin Correa, "if at all possible don't get involved in the SWAT entry…..I know you want to because he shot right at my head and missed me by an inch so I'm just thinking about conflict of interest".  To which his Justin Correa, responded, "Then just don't tell them that. I'm gonna go in and KILL this fucker if I have to."

21.     After the Correa and Smith's initial encounter there were no additional firearm discharges occuring until several hours later. However, as a result of Correa and Smith's fabricated stories, the SWAT team assaulted the

trailer. The SWAT team utilized a military Bearcat to breach Yates' residence, used a 40mm grenade launcher and multiple handheld teargas cans and flashbangs to flush Yates out of his residence, which was unsuccessful.

22.     Meanwhile Yates, in need of serious medical attention as a result of his anxiety and mental disorders, had called 911 twice in a frantic effort to get outside help from the FBI and others while the events were unfolding. Negotiators on the scene had access to Yates' frantic 911 calls yet ignored his pleas for help. When the FBI agent responded, he was denied access to and otherwise not allowed to intervene by those in control of the scene.

23.     In addition, Yates' family members desperately tried to defuse the situation by directly calling the negotiator Steelman prior to the SWAT team entry. Yates daughter, the Plaintiff, called Steelman but was not allowed to communicate with her father although she tell Steelman her father suffered from paranoia and depression and she was the only would he would talk to. In addition, Yates' sister, Cyndey Ramsey, called Baldwin County Sheriff Office and spoke to Sgt. Payne who was also on the scene, but was not allowed to speak to or to have contact her brother Yates.

24.     Robert Correa lied about Yates, "shot right at my head, and missed me by an inch" on March 5, 2018, and jointly agreed and/or conspired with Greg Smith to prepare false, misleading, and incomplete reports and to give false,

incomplete, and misleading versions of the events of March 2nd and 5th, 2018, for

the purpose of, among other things, concealing the true series of events and facts

which ultimately lead to Robert Lewis Yates, Jr 's death on March 5, 2018,

concealing misconduct and/or illegal conduct, and manufacturing the justification

for their use of deadly force.

25.    Individual members of the SWAT and MCU named above were

complicit in maintaining a "Code of Silence" to protect Robert Correa and Greg

Smith from the potential consequences of the officers' falsifying their reports of

incident to justify the use of deadly force against Yates ultimately causing his

death.

26.    On information and belief, the above said defendants and other

employees or agents of the Baldwin County Sheriff Office jointly agreed and/or

conspired with one another to use unreasonable and deadly force on Robert Lewis

Yates, Jr. The actions of the defendants were done jointly, in concert, and with

shared intent and, therefore, constitute a continuing civil conspiracy in violation of

42 U.S.C. § 1983.

27.    At approximately 2:00 PM to 6:30 PM the SWAT TEAM members

tore the  windows and walls of Yates mobile home apart with their armored

Bearcat vehicle and used tear-gas, concussion grenades and/or flash bangs toward

Yates for two and a half hours.

28.     Yates had not retaliated against the use of the Bearcat in breaking down the walls and windows of his home, nor to the use of tear gas, flash bangs, and/or concussion grenades by the Swat Team but with the strong possibility that lay hidden, injured or dying and in need of emergency medical attention, in a back room of his home in fear of his life for what was happening around him, the commanders on the scene released the medical helicopter back.

29.     With the possibility of de-escalating the situation having been eliminated by the negotiators Steelman, Robinson, and Payne, defendants were dead-set on killing Yates. At approximately 6:30 PM on March 5, 2018 the decision was made to breach the Yates residence with all of the Swat Team's fire power, despite that the situation was not an exigent one, nor was there an emergency, nor had Yates threatened anyone's life since firing a warning shot inside his home.

30.     The Swat Team was not a tornado coming through to sweep away anything and everything in its path, it was not a wild animal stealthily searching for its prey, it was a lot worse. It was a group of supposedly specialized and heavily armored and armed, but poorly trained men rushing through Yates home from all sides intent on killing Yates for no justifiable reason.

31.     Robert Lewis Yates, Jr. was a 65 year, retired, disabled, and possibly seriously injured gentleman trying to protect himself the only way he knew how.

13

32.     Based on bullet holes in Yates home, and shell casings found outside of the residence, Swat Team Members shot up the mobile home with their military style weapons without probable cause, as Yates had been silent for several hours and presented a threat to no one. There were more than 114 shells/bullets casings, along with tear gas rounds and canisters, and concussion grenades collected by MCU. There were additional casings, projectiles, and ferret founds left at scene by MCU law enforcement, which were subsequently collected as evidence by Yates' family and forensic experts.  Justin Correa fired a minimum of 30 AR15 rounds from Yates front porch.   Swat Team Members entered Yates home and spread more gunfire all around inside the home leaving Yates critically wounded and in need of emergency medical attention.

33.     On information and belief, present on the scene on March 5 and March 6, 2018 were Swat Team members Lt. Andre Reid, who fired his AR 15, Defendant Deputy Lonnie McKinney, who fired his Glock 22, Defendant Deputy Justin Correa, who fired his AR 15, Defendant Deputy Jarrod Sheffield, who was armed but did not fire his Glock 22, Defendant Deputy Nate Lamplaugh, who was armed but did not fire his Glock 22, Defendant Deputy Matt Morrison, who fired his Glock 22, Defendant Corporal Rob Lindell, who fired his AR15, Defendant Deputy Bill Smith, who fired his Glock 22, Defendant Deputy Jason Hall, who fired his Glock 22, Defendant Deputy  Randy Younce, who fired his AR15,

Defendants Joesph E. Davis, Matt Hunady, and Sgt. Curtis Sumerlin were SWAT team snipers, and Cpt. Steve Arthur, who rammed his Bearcat military vehicle into Yates' residence. Yates was killed after receiving three bullets. One to his abdomen, one to his arm, and another execution style bullet to the back of his Yates head.

34.     Yates lay seriously wounded, unconscious, and barely alive by the time medics reached him on March 5, 2018 at approximately 6:30 PM. However Yates was not rushed to the emergency room by ambulance, and was not transported by life saver helicopter to the hospital but died on the scene from his fatal wounds. A body transport unit from Gulf Shores was not called until sometime between 2:00 AM and 4:00 AM the next morning to transport the deceased Yates to the Baldwin County Coroner's Office along with Defendant Bishop and later to the ADFS Medical Examiner's office in Mobile. In the interim, MCU defendants recognized, documented, preserved, photographed, and collected evidence and established chain of custody for the evidence, but failed to collect a significant amount of evidence that was later collected by the family and forensic experts.

## **GENERAL ALLEGATIONS**

35.     The plaintiff re-alleges and incorporates by reference paragraphs 1-34 above with the same force and effect as if fully set out in specific detail hereinbelow.

36.     Mack, Nolfe and Lusk, the on scene commanders, and Arthur, and Reid, the SWAT commanders, along with the Crisis Negotiating Team (CNT) Steelman, Robinson, and Payne were the on scene policy makers at all times material hereto and either by their direct participation or through their subordinate officers:

   a.     acted negligently and/or wantonly in regards to Yates's serious medical needs;

   b.     acted with deliberate indifference to Yates' serious medical needs in violation of 42 U.S.C. § 1983;

   c.     failed to supervise and train the Swat Team Members on the foreseeable risk of life associated with the unjustifiable use of military style equipment, and incendiary devices, equipment and weaponry;

   d.     violated Swat Team standards and policies;

   e.     acted with deliberate indifference to Yates' 4th Amendment constitutional rights;

   f.     acted with deliberate indifference to Yates' health and safety

37.     As a direct and proximate cause of Defendants above acts, Robert Lewis Yates, Jr. was caused to suffer great injuries and death.

**COUNT I – 42 U.S.C. § 1983**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED**

38.    The plaintiff re-alleges and incorporates by reference paragraphs 1-37 above with the same force and effect as if fully set out in specific detail hereinbelow.

39.    Mack, Nolfe and Lusk, the on scene commanders, and Arthur, and Reid, the SWAT commanders, along with the Crisis Negotiating Team (CNT) Steelman, Robinson, and Payne acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Yate's, serious medical needs in that they either knew or should have known Yates' was in serious need of medical treatment after the Swat members used the Bearcat, teargas, and flashbangs to tried to flush him out of his home, yet refused to allow his family members, medical personnel, and others he was frantically reaching out for to help, to intervene or have any contact with him before or after he was fired upon by Swat team members.

41.    The said defendants deprived Yates of tactical medical treatment in violation of Swat Team standard and policy after deadly force was used against him, and Baldwin County Sheriff Office (BCSO) custom and practice of providing inadequate or substandard medical care to those in custody of the BCSO similar to prior deprivations described Case No 1:12-cv-00625-WS-M and Case No. 1:15-cv-00466-KD-B in that said defendants also provided inadequate emergency medical field training, allowing untrained and/or poorly trained personnel to make

decisions regarding medical treatment, and denying and delaying necessary medical care to persons with serious medical needs, all of which violated Yates' clearly established due process rights under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

42.     As a direct and proximate cause of  defendants said actions, Yates died before receiving proper medical treatment.

**COUNT II – 42 U.S.C. § 1983**
**DELIBERATE INDIFFERENCE TO HEALTH/SAFETY**

43.     The plaintiff re-alleges and incorporates by reference paragraphs 1-42 above with the same force and effect as if fully set out in specific detail hereinbelow.

45.     Mack, Nolfe and Lusk, the on scene commanders, and Arthur and Reid, the SWAT commanders, along with the Crisis Negotiating Team (CNT) Steelman, Robinson, and Payne acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Yates' health and safety, in deciding to use deadly force against him with the use of the Bearcat and 40 mm tear gas cannons when they knew or should have known of the risk of injury to Yates, including death, of deploying said devices in type of structure such as Yates' mobile home residence, and the destructive power and the toxic effect they would have on Yates' surroundings.

18

46.     Said acts, including the denial to Yates's contact with his family, physicians, medical personnel, and others Yates was reaching out to in desperation were pursuant to one or more violations of policies or customs said defendants, including Mack, or a result of similar practice of defendants, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

47.     As a direct and proximate cause of  defendants said actions, Yates suffered severe injuries and died.

### COUNT III – 42 U.S.C. § 1983
### EXCESSIVE FORCE

48.     The plaintiff re-alleges and incorporates by reference paragraphs 1-47 above with the same force and effect as if fully set out in specific detail hereinbelow.

49.     Defendants Lt. Andre Reid, Lonnie McKinney, Justin Correa, Matt Morrison, Cpl Rob Lindell, Bill Smith, Jason Hall,  Randy Younce, all fired their weapons which killed Yates, and Cpt. Steve Arthur operated the Bearcat at a great risk of death and serious bodily harm to Yates. Still other SWAT member defendants operated the 40 mm tear gas cannon launcher at a great risk of death

19

and serious bodily harm to Yates, when Yate' posed no immediate threat of harm at the time of their deployment.

50.     Said defendants acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, deliberately deprived Yates of his rights clearly established rights under the Fourth and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 not to have excessive force used against him.

51.     Defendants Mack, Nolfe and Lusk, the on scene commanders, and Arthur, and Reid, the SWAT commanders, are supervisory officials responsible for the development and implementation of policies and procedures to ensure the Swat Team and officers appropriate deployment and use of deadly force with their equipment, weaponry, and incendiaries under the circumstances. This duty included, but was not limited to, the duty to create, adopt and implement rules, regulations, practices, and procedures which clearly direct Swat Team Members as to the appropriate use of force with their equipment, weaponry, and incendiaries under relevant circumstances.


52.     Defendants Mack, Nolfe and Lusk, the on scene commanders, and Arthur, and Reid, the SWAT commanders, failure to adopt and implement, or failure to follow, adequate policies regarding  appropriate use of force under the

relevant circumstances and their conscious ignorance of legal duties and

responsibilities under the law as a matter of custom and practice, constitutes

deliberate indifference to the known, serious consequences of excessive force with

this type of equipment, weaponry, and incendiaries under relevant circumstances.

53.     Yates' death was the foreseeable result of said Defendants Lt. Andre

Reid, Lonnie McKinney, Justin Correa, Matt Morrison, Cpl Rob Lindell, Bill

Smith, Jason Hall,  Randy Younce, Cpt. Steve Arthur and other SWAT member

defendants use and deployment of the above force, Defendants Mack, Nolfe and

Lusk, the on scene commanders, and Arthur, and Reid, the SWAT commanders

violation of policies on the use of said force, or their failure to adopt and

implement adequate policies regarding the use of excessive force, similar to

Mack's acts and omissions as that described in case no. 1:19-cv-00221-C

54.     The said actions and omissions of said defendants did thereby deprive

Yates of his clearly established rights to due process under the Fourth,

Amendment, and the Fourteenth Amendments of the Constitution of the United

States in violation of 42 U.S.C. § 1983 proximately causing Yates death.


**COUNT IV**
**FOURTH AMENDMENT - UNLAWFUL SEARCH AND SEIZURE**

55.    The plaintiff re-alleges and incorporates by reference paragraphs 1-54 above with the same force and effect as if fully set out in specific detail herein68low.

56.    The actions by all named individual defendants constitute an unlawful invasion of privacy and search and seizure in violation of the First and Fourth Amendments of the Constitution of the United States.

57.    All of the named individual defendants were acting under color of law in the line and scope of their employment and position as law enforcement officers and officials of Defendants Baldwin County, Sheriff Mack, the Sheriff Department, and its Swat Team Cdrs, MCU Investigators, and Negotiators.

58.    On information and belief, it is the policy or custom of the Sheriff Mack, Baldwin County, its Sheriff Department, and its Swat Team to allow, to fail to prohibit, or fail to discipline such actions, so as to constitute the policy of Sheriff Mack, Baldwin County, its Sheriff Department, and its Swat Team Cdrs, MCU Investigators, and Negotiators.  Further, said defendants failed to train its officers, despite notice of the need to do so, to avoid such constitutional violations.

59.    As a result of the violation of Yates clearly established constitutional rights to privacy, to keep and bear arms, and to be free from unlawful search and seizure, the front door, walls, and windows of Yates home were broken down and destroyed placing Yates in fear of his life for five hours inside his home before he was shot in the abdomen, arm, and back of the head by Swat Team Members as they shot up the exterior and interior of his home firing more than 114 rounds.  In the process, Yates was subjected to severe mental anguish of the type that no

reasonable person should be expected to endure; Yates suffered intimidation, embarrassment, and humiliation, along with mental and physical abuse distress, and suffered serious wounds to his body.

60.     Said actions of said defendants were done maliciously, willfully, and with reckless disregard for Yates clearly established constitutional rights.


## COUNT V
## SECTION 1983 CLAIM
## UNCONSTITUTIONAL SEIZURE

61.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-60 above with the same force and effect as if fully set out in specific detail hereinbelow.

62.     Neither R. Correa and G Smith were in possession of a no knock warrant to enter Yates mobile home on March 5, 2018, and were acting under of color of law and outside the scope of their employment, and as agents on behalf of DeBourge.

63.     Correa and Smith did not have a search warrant to enter Yates mobile home nor were there exigent circumstances  existing at the time to enter Yates home but rather than calling a locksmith to open the front door of Yates mobile home to determine if Yates were inside, R. Correa and G. Smith directed Don and Tim DeBourge and/or their agents to forcibly enter Yates residence by taking a sledge hammer and crowbar to bust down the front door.

66.     Their wrongful entry into Yates' mobile home and subsequent lies to cover up their acts, resulting in Yates' eventual death after SWAT team was called. in.

67.    The actions of the defendants including DeBourge who was acting along with and directly over said Correa and Smith, violated Yates rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure and excessive force, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

68.    As a proximate result of said defendants lies, conspiracy, and complicity, and Yates suffered violations of his 4th Amendment and 14th Amendment, and 42 U.S.C. 1983 rights, including serious bodily injuries and death described above.

## COUNT VI
## CONSPIRACY TO VIOLATE CONSITUTIONAL RIGHTS
## 42 U.S.C. 1983

69.    The Plaintiff re-alleges and incorporates by reference paragraphs 1-68 above with the same force and effect as if fully set out in specific detail hereinbelow.

70.    Defendants R. Correa and G. Smith, lied and conspired to give false statements regarding the encounter with Yates on March 5, 2018, and continued to engage in a course of conduct, and otherwise jointly acted and/or filed false statements, and inaccurate, and misleading reports, and to make false statements to superior officers in order to conceal the actions and lies of said defendants.

24

71.     In furtherance of this conspiracy said defendants, together with their unnamed co-conspirators, committed the overt acts alleged in this complaint, which served as the basis of the use of deadly force against Yates, which ultimately lead to Yates death that day.

73.     Said defendants supervisors and MCU investigators, Rex Bishop, Cpt. Judd Beedy, Jason Woodruff, Chad Lambert, Cpl. Charles Varnado, Sgt. Glen, Hartenstein, Chuck Sutherlin, Sgt. Tony Nelson, Sgt. Larry Dearing were complicit in the conspiracy, in violation of the sheriff's polices and procedures.

74.     As a proximate result of said defendants lies, conspiracy, and complicity, and Yates suffered violations of his 4th Amendment and 14th Amendment, and 42 U.S.C. 1983 rights, including serious bodily injuries and death described above.

## COUNT SIX
## SECTION 1983 CLAIM  FOR FAILING TO PREVENT VIOLATIONS TO CLEARLY ESTABLISHED CONSITUTIONAL RIGHTS

75.     The plaintiff re-alleges and incorporates by reference paragraphs 1-74 above with the same force and effect as if fully set out in specific detail hereinbelow.

76.     Defendants Mack, Lusk, Reid, Sheffield, Lamplaugh, Steelman, Robinson, and Payne violated Yates' civil rights by failing to intervene and stop violations to Yates' clearly established rights by Lt. Andre Reid, Lonnie

McKinney, Justin Correa, Matt Morrison, Cpl Rob Lindell, Bill Smith, Jason Hall, Randy Younce, who all fired their weapons which killed Yates, and Cpt. Steve Arthur who operated the Bearcat at a great risk of death and serious bodily harm to Yates, and other SWAT member defendants operated the 40 mm tear gas cannon launcher, when they knew or should have known said acts would cause bring deadly serious harm to Yates and violate Yate's clearly established 4th and 14th Amendments rights and 42 U.S.C. 1983.

77.    Defendants Mack, Lusk, Reid, Sheffield, Lamplaugh, Steelman, Robinson, and Payne had a realistic opportunity to intervene but failed to take reasonable steps to prevent the violations of Yate's clearly established constitutional rights described above.

78.    As a proximate result of said defendants failure to intervene and prevent the above described actions, Yates suffered violations of his 4th Amendment and 14th Amendment, and 42 U.S.C. 1983 rights, serious bodily injuries and death described above.

**COUNT VII**
**SUPERVISOR LIABILITY**

79.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-78 above with the same force and effect as if fully set out in specific detail hereinbelow.

80.     Defendant Mack violated 42 U.S.C. §1983 in the manner set forth herein.  Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

81.     Under 42 U.S.C. § 1983, Supervisory Liability can be found either where a supervisor personally participates in the alleged constitutional violation or where there is a sufficient causal connection between the supervising official's actions and the alleged Constitutional deprivation.

82.     At all relevant times, defendant Sheriff Mack acted under color of state law. Defendant Sheriff Mack was the supervising official for law enforcement purposes of his office in Baldwin County, and therefore had a duty to ensure that he adequately supervised the deputies, including defendants R. Correa and G. Smith , to ensure that his subordinate agents responded in a proportionate and appropriate manner to injured individuals and/or individuals displaying signs of an altered state of mind.

84.     Mack failed to properly supervise his subordinate agents, including R. Correa and G. Smith and thereby allowed them to falsify records and official statements and interviews, which directly and proximately caused the death of

Yates on March 5, 2018. At the time Jonathan was killed, Defendant SHERIFF

breached his above-described duties and failed to properly supervise his deputies

including, R. Correa and G. Smith agents, to ensure that they conducted

themselves in an honest professional capacity and act in an appropriate manner

when faced with reporting official police incidents. Such a failure to supervise

reflects Mack's deliberate indifference to the known or obvious consequence that

his failure to supervise in this circumstance with foreseeable results that Yates'

constitutional rights would be violated, and thereby establishes a sufficient causal

connection between the Mack's failure to supervise his subordinate agents and the

deprivation of Yates' constitutional rights.  Mack's failure to supervise regarding

falsification of records is also described in cases 1:12-cv-00718-KN-N and 1:17-

cv-00259-KD-N

     85.     As a proximate result of said Sheriff Mack's failure to supervise S.

Correa and G. Smith, Yates suffered violations of his 4th Amendment and 14th

Amendment, and 42 U.S.C. 1983 rights, serious bodily injuries and death

described above.

## COUNT VIII
## DISABILITY DISCRIMINATION

86.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-85 above with the same force and effect as if fully set out in specific detail hereinbelow.

87     Yates suffered from depression and other recognized disabilities under the Americans with Disabilities Act

88.     Baldwin County, Alabama, through, and employers in the Probate Court of Baldwin County, including the sheriff deputies its agents, officers they employed to assist in involuntary commitment hearings, knew of Yates mental disability and disorders, having initiated several involuntary commitment proceedings against Yates in the past through the Probate Court of Baldwin County, Alabama, and by Yates own 911 calls to the Baldwin County 9-1-1 District Call Center.

89.     Yates desparate pleas for help were ignored by Baldwin County, Alabama, by and through, defendant Sheriff Mack whose sheriff deputies act as officials who are employed to assist in probate court involuntary commitment hearings, in Baldwin County, Alabama, and by the Baldwin County 9-1-1 District Call Center, and other officials who were in charge of their operations such as defendants Steelman, Robinson, and Payne, who refused Yate's desparate 911 calls for help.

90.     Said actions by said Baldwin County, Alabama and its officials constitute disability discrimination under the Americans with Disabilities Act.

91    As a result of the disability discrimination against him, Yates suffered the following injuries and damages:  Yates was subjected to severe mental anguish of the type that no reasonable person should be expected to endure; Yates suffered intimidation, embarrassment, and humiliation, along with mental and physical abuse and distress, and gunshot wounds which ultimately led to his death the following morning

92.    As a proximate result of said defendants discrimination against him, Yates suffered violations of his 4th Amendment and 14th Amendment, and 42 U.S.C. 1983 rights, serious bodily injuries and death described above.

**COUNT IX**
**WRONGFUL DEATH**

93.    The Plaintiff re-alleges and incorporates by reference paragraphs 1-92 above with the same force and effect as if fully set out in specific detail hereinbelow.

94.    On March 5, 2018, defendants R. Correa and G. Smith were acting as agents, servants, and employees of Don DeBourge and outside the scope of their employment, when they entered Yates' mobile home at the request of DeBourge, in connection with an entirely civil matter on behalf of DeBourge.  Correa, Smith, and DeBourge had a duty to use only the force necessary to remove Yates from DeBourge's property.

95.    As a result of their encounter with Yates, DeBourge's agents, Correa and Smith falsified their reporting of the incident, in violation of sheriff's policy,

which ultimately lead to Yates' death when Correa and Smith called in a tactical SWAT team.

96.    Said defendants, Correa, Smith, and DeBourge, separately and severally, caused the wrongful death of Robert Lewis Yates, Jr. as contemplated by Alabama Code § 6-5-410.

97.    As a direct and proximate result of the foregoing willful and wanton acts stated above, the said defendants, separately and severally caused the death of, Robert Lewis Yates Jr. on March 5, 2018.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court assume jurisdiction of this action and after trial:

98    Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her damages in an amount to be determined by a jury, to include nominal damages, compensatory and punitive damages, and pre- and post-judgment interest.

99.    The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Dated: August 17, 2020

Respectfully submitted,

*/s/ Anthony Piazza*

Anthony Piazza (ASB-6593-A37A)
**ANTHONY PIAZZA, P.C.**
P. O. Box 550217
Birmingham, AL 35255-0217
T:      (205) 617-6211
Email:  anthonypiazza0326@hotmail.com

*Counsel for Plaintiff*


**<u>OF COUNSEL:</u>**
ANTHONY PIAZZA, P.C.
Post Office Box 550217
Birmingham, Alabama 35255-0217

32