# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

---

AIMEE LYNNE YATES, as Personal
Representative of the Estate of Robert
Lewis Yates, Jr., deceased,

Civ. A. No. 1:20-cv-00131-KD-B

*Plaintiff,*

   *v.*

Jury Trial Requested

SHERIFF HUEY HOSS MACK,
BALDWIN COUNTY, ALABAMA, *et al.,*
TIM DEBOURGE,
DON DEBOURGE,
TONY NOLFE,
STEVE ARTHUR,
ROBERT CORREA
NATHAN LUSK
JUSTIN CORREA
GREG SMITH
ANDRE REID

*Defendants.*

---

## (PROPOSED) SECOND AMENDED COMPLAINT

Plaintiff AIMEE LYNNE YATES, as Personal Representative of the Estate of Robert Lewis Yates, Jr., submits this Second Amended Complaint against these below named Defendants.

## I.  JURISDICTION AND VENUE

This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 12101 ("ADA") and state law. Jurisdiction is proper under 28 U.S.C. § 1331 and § 1343.

Venue is proper under 28 U.S.C. § 1391(b)(2) given that a substantial part of the events giving rise to the Plaintiff's claims occurred in this judicial district.

## II.   PARTIES

1.      Plaintiff, Aimee Yates ("Plaintiff"), is over the age of nineteen years and is a resident of Baldwin County, Alabama. Plaintiff is the daughter of the decedent, Robert Lewis Yates, Jr. ("Yates"), and is the personal representative of the Estate of Robert Lewis Yates Jr., deceased.

2.      Defendant, Huey Hoss Mack (hereinafter "Mack"), is an adult resident citizen of Alabama and was the Baldwin County Sheriff at all times material hereto. At all times mentioned herein, Mack was the sheriff whose duties, customs and practices, policymaking duties, authority, standing, and power delegated to him by the state, proximately and directly and/or indirectly caused the death of Plaintiff's decedent, Robert Lewis Yates, Jr. As the sheriff, among other things, he was the chief policymaker of the Baldwin County Sheriff Office and was responsible for the administration, management, and service of civil writs, and coordination of the activities of the Deputies, Baldwin County MCU, BCSO Swat Team, its commanders, and its negotiators. Defendant Mack also had a statutory duty under Alabama law in the context of his policymaking power and duties to take care to ensure that the laws are faithfully executed to attend to the medical needs of those in custody, especially those with known disabilities including those with known mental health issues. He is sued in his individual capacity.

3.      Defendant Baldwin County, Alabama (hereinafter "Baldwin County") is a political subdivision of the State of Alabama.

4.      Defendants Robert Correa and Greg Smith (hereinafter "R. Correa and G. Smith"), on information and belief were individual deputies with the Baldwin County Sheriff Department. They are sued in their individual capacities.

5.      Defendants Lt. Andre Reid, Cpt. Tony Nolfe, Lt. Nathan Lusk, Justin Correa, and  Steve Arthur on information and belief were members of the Baldwin County Swat Team (Swat Team Members), who responded to the scene on the incident complained of herein. Commanders on the scene were Cpt Tony Nolfe, after Joseph Davis relinquished command to become a SWAT sniper, and Lt. Nathan Lusk. SWAT Command on scene was Steve Arthur, SWAT Commander, Lt Andre Reid, Dep SWAT Cdr.  The said commanders on scene, along with Sheriff Mack, were the on-scene policy makers. The above Defendant Swat Team Members and Commanders are sued in their individual capacities.

6.      Defendant Don DeBourge (hereinafter "Don DeBourge") was at all times mentioned herein the owner of and doing business as Key Largo Villas, a mobile home park for retired individuals located on land owned by Don DeBourge in Baldwin County, Alabama.  Don DeBourge is sued in his individual capacity.

7.      Defendant Tim DeBourge (hereinafter "Tim DeBourge"), Tim DeBourge is Don DeBourge's son. Tim DeBourge is sued in his individual capacity.

## III.   STATEMENT OF FACTS

8.     On information and belief, Don DeBourge was the sole owner of Key Allegro Villas Retirement Community, a mobile home retirement community located in Baldwin County, Alabama.

9.     Robert Lewis Yates, Jr., (hereinafter Yates) the Plaintiff's decedent, had leased a lot from DeBourge. Yates owned the mobile home in which he resided that was situated on said lot, located at 13449 Seabreeze Blvd, Fairhope, Alabama.

10.     Yates suffered from depression and other mental disorders, including anxiety and paranoia, and previously had been involuntarily committed for mental health treatment in 2002 by the Probate Court of Baldwin County, Alabama but had not been hospitalized since 2002.  In 2004, the Probate Court held another hearing to determine Yate's mental capacity. In both cases, Defendant Sherriff Mack was ordered to pick up Yates and bring him to the Probate Court or the hospital.

11.     Upon information and belief, Don DeBourge and Mr. Yates had disagreement over the continued leasing of the property where Mr. Yates trailer home was situated.  Don DeBourge wanted Yates remove his mobile home from DeBourge's lot, even though Yates had leased the lot and paid rent for many years. Yates and Don DeBourge had bank drafts for the lease payments sent and rejected by their respective banks. After to being unable to sort out their differences, Don

4

DeBourge sought relief from the Courts but didn't tell them anything about Yates mental health, disabilities, or paranoia.

12.     DeBourge sought a "forced entry order" along with an alias writ of possession from the District Court of Baldwin County.  There were several hearings with the Court regarding this property dispute, none of which were attended by Mr. Yates.  On February 26, 2018 the District Court issued an Alias Writ of Possession against Yates and an order which stated, "It is understood that the sheriff in executing the writ will stand by to ensure no breach of the peace if the plaintiff (Don DeBourge) decides to remove the mobile home at that time."

13.     On or about 8:37 A.M. on March 2, 2018 Defendant Robert Correa executed an Alias Writ of Possession on the Yates' mobile home residence, located at 13449 Seabreeze Blvd., Fairhope, Alabama by posting a copy of it to Yates' door at 8:37 A.M.  Having executed a copy of the writ, they signed the original, and gave it to DeBourge.

14.     Robert Correa returned to the Yates residence on March 5, 2018 after scheduling a time with DeBourge for the purpose of acting together and in concert to remove the mobile home from DeBourge's lot. Robert Correa did not have an arrest warrant for Yates. Nor was there a search warrant for Yates's home.  After initially approaching Yates' trailer home, Robert Correa decided to return to his squad vehicle to run a background check on Mr. Yates, and to call for backup. By information and belief, Robert Correa became aware or reasonably should have

become aware of Yates' history of mental illness including paranoia when he looked Yates up on his squad car computer. And that he had no prior history as a trespasser. Robert Correa also became aware that there had been no prior history of violent felonies involving Mr. Yates. Robert Correa then called for backup, to which Defendant Smith arrived on the scene. Sheriff Departments have a responsibility to train their officers regarding how to interact with citizens that suffer from mental illness. At this time, the standard of care for reasonable police officers of the required and appropriate training, skill, and qualification would require the officers to take reasonable steps to guard against creating an unreasonable risk of injury to Yates or anyone in the immediate area including other officers or persons given the foreseeability of harm that could occur because of Yates's mental history and the circumstances of executing a forced-entry writ without a search warrant on a mobile home. It is mandatory for law enforcement departments to have policies in place to provide their officers with thorough policy and training for policing the mentally ill. Officers that interact directly with the public like Robert Correa have a duty to have some general understanding of the importance of de-escalation and reducing the risk of violence when dealing with citizens with known behavioral issues. If officers don't have proper training, confrontations involving people with mental illness can escalate quickly putting everyone involved in danger. Robert Correa breached the standard of care by failing to take into account Mr. Yates mental health issues in proceeding with his enforcement of the writ in coordination with the rest of the officers in a negligent, reckless, violent manner in serious disregard for and

deliberate indifference to Yates's mental health. Additionally, there was no consideration or indication that the Court or the ordering district judge knew that Mr. Yates had a history of mental illness, despite that DeBourge was well aware. Upon prayer and belief, the DeBourges didn't inform Robert Correa or Smith about the extent of the bad blood between them and Mr. Yates. The DeBourges through their personal animus for Mr. Yates placed the officers at serious risk and placed the life of Mr. Yates at great risk, ultimately causing and contributing to his death. With mental-illness patients violence begets violence. The decision to proceed with violently and forcefully exercising the writ under these conditions promised to significantly increase the risk and predictably lead to a tragic outcome. The data is overwhelming and was known to the Sheriff's department at the time including the fact that studies had shown that people with mental illness are 16-times more likely to be killed by police than other suspects.

15.     Robert Correa and Smith, along with Don and Tim DeBourge approached the front door of Yates' home. Within the first 110 seconds of their first knocking on Yates' door, Correa and Smith knocked on the carport end of the Yates trailer home multiple times and later on the front door, announcing "sheriff's office" without a response from inside.

16.     Don and Tim were then given the greenlight by Robert Correa and Smith to bust down Yates's door. The DeBourges then made multiple violent attempts with a crowbar and sledgehammer to bust open the front door of Yates residence eventually succeeding in busting it open. The video evidence of this is

partially recorded on Smith's police body-video camera. Imagine Mr. Yates in his home under assault and his property being destroyed. It is expected that a person with the kind of mental illness that Mr. Yates had that he might believe that the DeBourges and people with them bearing weapons and busting his door down were trying to hurt him. Smith and Robert Correa later directed the DeBourges off Yates's front porch and entered his home with their weapons drawn in a classic two-man sweeping technique to clear the mobile home. Smith stood in the threshold with Robert Correa behind him, and announced "*Sheriff's Office*", as he scanned both north and south looking for Yates. About 30 seconds later, one single gunshot is heard from within the residence from an unknown source and direction. At that moment, Smith turns around at the doorjamb with his bodycam showing Robert Correa in front of him and both officers head off of the porch. Nobody was injured by the unknown single gunshot from the unidentified source. No one saw any muzzle flash. Nor did anyone see the point from where the shot was fired or directed, and it is clear that Yates had not directed physical harm aimed at the officers who were in his house with drawn weapons even they busted his door down with a sledgehammer.

17.     Robert Correa and Smith left the porch, leaving the doorway to the home open. Robert Correa took up a position adjacent to the left front wheel well and on the shielded side of the vehicle that was backed into the carport, and Smith took up an initial location behind the end of the trailer.

18.     Smith then crossed over to the left rear of the vehicle for cover and calls out "come here sir, get your hands up" and one second later, Smith discharges his 40-caliber Glock five times. The 5-shot volley takes less than 2 seconds.  There is another volley of gunfire by both Smith and R. Correa's handguns 5 seconds later. This volley contains another 12 discharges and is over in approximately 4 seconds. Then Smith calls out "let me see your hands now". Robert Correa asks Smith if Yates shot at them and neither officer can provide a clothing description of Mr. Yates to responding officers. By information and belief, Robert Correa and Smith did not engage Yates in a combat ready position and instead shot wildly and recklessly in the direction they believed Yates to be. Officers Smith and Robert Correa panicked and chose to escalate the situation by firing a volley of unprovoked gunfire into Yates home. By information and belief officer Robert Correa's wild volley of gunfire penetrated the vehicles front and passenger side windshield.

19.     Knowing that they fired recklessly, Robert Correa and Smith relayed their rendition of the encounter with Yates to their fellow officers, supervisors, SWAT commanders, and negotiators, deliberately fabricating a story of Yates coming out or crawling out on the front porch and firing at them, a story not supported by Baldwin County Sheriff's records of the incident, available body cam footage and forensic evidence, including audio forensics of the gun shots. By stating that Mr. Yates had followed them outside and had discharged his weapon in an attempt to shoot and kill the police officers, both Robert Correa and Smith bore false witness. The gravity of the falsity was easily measured by the reaction of the

other officers that Yates was now a potential cop killer. When policemen make false attestations on issues of this gravity their immunity is lost. All citizens should have great respect for the difficult situations policemen find themselves in. Here, however, there is no excuse for the wildly false narrative from Robert Correa that Mr. Yates purposefully fired his weapon with intent to kill a police officer. Robert Correa didn't just make a mistake, he misrepresented a material fact and then continued to do so in interviews after the fact.  He told the Big Lie. Over, and over again.

20.     When Justin Correa, Robert Correa's son, arrived on the scene with other members of the SWAT team, Robert Correa was overhead to tell his son Justin Correa, "if at all possible don't get involved in the SWAT entry….I know you want to because he shot right at my head and missed me by an inch so I'm just thinking about conflict of interest".  To which his Justin Correa, responded, "Then just don't tell them that. I'm gonna go in and KILL this fucker if I have to."  By information and belief, Justin Correa remained on the scene and discharged his AR15 rifle during the SWAT entry of Mr. Yates' home on March 5, 2018.

21.     After Robert Correa and Smith's flawed version of their initial encounter was relayed to responding officers, Yates's home was surrounded, and an avoidable standoff ensued for several hour. The SWAT team then brought in a military Bearcat to breach Yates' residence in multiple locations. They used a 40mm grenade launcher and multiple handheld teargas cans and flashbangs to flush Yates out of his mobile home, which was unsuccessful. Even though these officers fully

geared up for and carried out a military assault on Yates's home, he did not retaliate. Encounters between the police and those with mental illness can quickly turn dangerous, especially because people in the grip of paranoia or psychosis may behave unpredictably.

22.     Meanwhile Yates, in need of serious medical attention because of his anxiety and mental disorders, called 911 twice in a frantic effort to get outside help from the FBI and others while the events were unfolding.  Yates clearly believed those outside his home were corrupt and were colluding with the DeBourges to hurt him and take his home by force.  The available body-cam video shows that R. Correa and Smith sanction the DeBourges violent assault on Mr. Yates' front door.  It is clear in listening to the erratic 911 audio that Yates was severely agitated and was acting consistent with his history of mental illness. He believed the DeBourges were trying to kill him and were using their friends in the Sheriff's Department to do so. Negotiators on the scene had access to Yates' frantic 911 calls. Yet they ignored his pleas for help.  They chose not to bring in a mental health specialist to help deescalate. They chose not to assess his history of mental illness and chose not to try to deescalate the situation. Rather than follow their training on how to handle stand-off situations with people with mental health issues they proceeded in following a course of direct confrontation. When the FBI agent responded, he was denied access to and otherwise not allowed to intervene by those in control of the scene. By information and belief, even by the time the FBI agent responded, had the

FBI agent been given the opportunity to communicate with Mr. Yates, an armed extraction could have been avoided and Mr. Yates would not have been killed.

23.    In addition, Yates's family members desperately tried to defuse the situation by directly calling the negotiators on the scene before the SWAT team entry. Yates's daughter, the Plaintiff, spoke with negotiators but was not allowed to communicate with her father although she informed them that her father suffered from paranoia and depression and she was the only person Mr. Yates would speak with. In addition, Yates' sister, Cyndey Ramsey, called Baldwin County Sheriff Office and spoke to Sgt. Payne who was also on the scene, but was not allowed to speak to or to have contact her brother Yates.  Mr. Yates suffered from a known mental illness, despite this knowledge, the defendants denied Mr. Yates' family access to him in an effort to deescalate the situation. This blatant failure to allow Mr. Yates family to try to help intervene and get him to surrender without further escalation of violence showed reliance that the SWAT team had toward the "cop killer" label that was falsely placed on Mr. Yates by Robert Correa and Greg Smith.

24.    The reality is that Robert Correa lied about Yates, "shot right at my head, and missed me by an inch" on March 5, 2018, and acted together, jointly agreed and/or conspired with Greg Smith to prepare false, misleading, and incomplete reports and to give false, incomplete, and misleading versions of the events of March 5, 2018, for the purpose of, among other things, concealing or suppressing the true series of events and facts which ultimately and foreseeably lead to Robert Lewis Yates, Jr 's death on March 5, 2018, concealing misconduct

and/or illegal conduct, and manufacturing the justification for their use of deadly force.

25.     Individual members of the SWAT named herein had a duty to investigate, discover, assess, and gather the necessary information to deescalate the situation to the extent practicable. Instead, they chose to escalate the situation to the extent practicable by denying the FBI and family access to Mr. Yates and chose to use and engage military-grade equipment against Mr. Yates who they knew or should have known was suffering from acute mental illness, including paranoia and anxiety.  Defendants' escalation on the scene ultimately and foreseeably lead to Mr. Yates' death. Additionally, SWAT leadership and command control are required by the applicable standard of care to make their own individual assessment of the situation including discovering everything they can about the person of interest. They are required to take steps to minimize the potential loss of life for both the police officers and the person they are conflicted with. Here, the SWAT leadership failed to take the proper steps to perform an independent analysis of the situation. Deescalation is of particular importance because people experiencing mental health issues may react to force or intervention in unexpected ways.

26.     On information and belief, the above said defendants and other employees or agents of the Baldwin County Sheriff Office jointly agreed and/or conspired with one another to use unreasonable and deadly force on Robert Lewis Yates, Jr. The actions of the defendants were done jointly, in concert, and with

shared intent and, therefore, constitute a continuing civil conspiracy in violation of 42 U.S.C. § 1983. They did so without giving a peaceful resolution a chance. They did so in complete disregard to Mr. Yates known mental health issues. Had the minimum standard of care required been followed by all Defendants named herein, separately and severally, including the SWAT team and negotiators, it would have been confirmed that Mr. Yates had not previously been violent toward anyone; that he had been off his medications; and that he was suffering from acute mental illness: anxiety and paranoia. Any reasonable inquiry would have yielded Yates's distrust of the DeBourges and his paranoia. Any reasonable inquiry would have confirmed that escalating violence in this case would most likely and foreseeable lead to the death of Mr. Yates. Knowing this, the SWAT commanders on the scene chose not to allow Yates's family to intervene. Instead, they called in an armored vehicle and grenade launcher.  Imagine how Yates felt at that time.

27.    From approximately 2:00 PM to 6:30 PM the SWAT team members tore the windows and walls of the mobile home apart with their armored Bearcat vehicle and used teargas, concussion grenades and/or flash bangs against Yates for two and a half hours.

28.    Yates had not retaliated against the use of the Bearcat in breaking down the walls and windows of his home, nor to the use of tear gas, flash bangs, and/or concussion grenades by the Swat Team.

14

29.     With the possibility of deescalating the situation having been eliminated by SWAT command and the negotiators on the scene; defendants were clearly heading toward a violent physical confrontation with Mr. Yates, which ultimately and foreseeably resulted in his death. At approximately 6:30 PM on March 5, 2018 the decision was made to breach the Yates residence with all of the SWAT Team's fire power, despite that the situation was not exigent under any circumstance. Nor had there ever been an emergency to begin with. Yates had never threatened anyone's life. At most, he fired a warning shot inside his home when the DeBourges were making unlawfully busting down his door with a sledgehammer.

30.     The SWAT Team moved into Yates's trailer home—heavily armored and armed. They were intent on killing Yates because they perceived him as a potential cop killer. For all these reasons, Defendants' presence, breach, and the entry ultimately and foreseeably caused Mr. Yates's death.

31.     Robert Lewis Yates, Jr. was a 65-year-old, retired, disabled, and possibly seriously injured gentleman with a history of mental illness including paranoia and was trying to protect himself the only way he knew how.  Available evidence suggests that Mr. Yates did finally engage the officers when they breached his home by firing his shotgun at an advancing steel shield.  The SWAT team fired around one hundred plus rounds of ammunition into Yates's home, ultimately and foreseeably killing Mr. Yates with a hail of bullets.

32.    Based on the bullet holes in Yates home, and shell casings found outside of the residence, SWAT Team Members shot up the mobile home with their military style weapons without probable cause, as Yates had been silent for several hours and presented a threat to no one. There were more than 114 shells/bullets casings, along with tear gas rounds and canisters, and concussion grenades collected by MCU. There were additional casings, projectiles, and ferret founds left at scene by MCU law enforcement, which were subsequently collected as evidence by Yates's family and forensic experts.  Justin Correa alone fired a minimum of 30 AR15 rounds from Yates front porch.   Swat Team Members entered Yates home and spread more gunfire all around inside the home leaving Yates critically wounded and in need of emergency medical attention.

33.    On information and belief, Yates was killed after receiving three bullets. One to his abdomen, one to his arm, and another execution-style bullet to the back of his head. Yates's death by SWAT was a foreseeable result of the violent entry into his home, done under color of purported executive legal authority, the false/fabricated rendition of events communicated by Robert Correa and Smith, the negligent/supervision training of the responding officers, and negotiators, and the failure of the on scene SWAT commanders to perform their own independent evaluation  and their refusal to allow the FBI or Mr. Yates family including his daughter to try to intervene to de-escalate the situation. The Baldwin County Sheriff's Department, through its negligent training, policymaking, setting of policies and procedures in place for interacting with mental health persons and

subjects, or lack thereof, deliberately, negligently, and recklessly chose to act in a way with an individual with known mental illness that would lead to a violent result.

34.     Yates lay seriously wounded, unconscious, and barely alive by the time medics reached him on March 5, 2018 at approximately 6:30 PM. However, Yates was not rushed to the emergency room by ambulance and was not transported by life saver helicopter to the hospital but died on the scene from his fatal wounds. A body transport unit from Gulf Shores was not called until sometime between 2:00 AM and 4:00 AM the next morning to transport the deceased Yates to the Baldwin County Coroner's Office and later to the ADFS Medical Examiner's office in Mobile. In the interim, MCU recognized, documented, preserved, photographed, and collected evidence and established chain of custody for the evidence, but failed to collect a significant amount of evidence that was later collected by the family and forensic experts.

## GENERAL ALLEGATIONS

35.     The plaintiff re-alleges and incorporates by reference paragraphs 1-34 above with the same force and effect as if fully set out in specific detail hereinbelow.

36.     Mack, Nolfe and Lusk, the on-scene commanders, and Arthur, and Reid, the SWAT commanders, were the on-scene policy makers at all times material hereto and either by their direct participation or through their subordinate officers:

   a.     acted negligently and/or wantonly in regard to Yates's serious
          medical needs;

b.     acted with deliberate indifference to Yates' serious medical needs in violation of 42 U.S.C. § 1983;

c.     failed to supervise and train the Swat Team Members on the foreseeable risk of life associated with the unjustifiable use of military style equipment, and incendiary devices, equipment and weaponry;

d.     violated Swat Team standards and policies;

e.     acted with deliberate indifference to Yates' Fourth Amendment constitutional rights;

f.     acted with deliberate indifference to Yates' health and safety;

g.     acted with deliberate indifference toward an individual with a known mental illness;

h.     knowingly escalated the situation by employing military style equipment in dealing with Yates, an individual with a known mental illness;

i.     acted with deliberate indifference toward Yates by showing extreme aggression, when statistically individuals with a known mental illness are sixteen times more likely to die in interactions with police;

j.     failed to provide proper training in regard to interactions with individuals suffering from mental illness in deliberate disregard for Mr. Yates, constitutional rights;

k.     deliberately provoked Mr. Yates by assaulting his home for multiple hours with military style equipment, despite Mr. Yates communicating that he believed those outside his home were corrupt;

l.     deliberately entered Mr. Yates' home in an aggressive and forceful manner and knowingly provoking the expected response, which ultimately and foreseeably caused Mr. Yates' death.

37.    As a direct and proximate cause of Defendants above acts, Robert

Lewis Yates, Jr. was caused to suffer great mental anguish, physical injuries and

death. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sheriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

### COUNT I – 42 U.S.C. § 1983
### DELIBERATE INDIFFERENCE TO
### SERIOUS MEDICAL CONDITION/NEED

38.    The plaintiff re-alleges and incorporates by reference paragraphs 1-37 above with the same force and effect as if fully set out in specific detail hereinbelow.

39.    Mack, Nolfe and Lusk, the on-scene commanders, and Arthur, and Reid, the SWAT commanders, along with the members of the Crisis Negotiating Team (CNT) acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, and under the policymaking and procedural authority and power of Baldwin County Sheriff's Department, including in acting together and in concert with Correa and Smith regarding the relaying and communication of information about the early encounter with Yates and subsequent breach into the mobile home. All

Defendants named herein acted together in violation of Section 1983 and were deliberately indifferent to Yate's, serious medical needs in that they either knew or should have known Yates' was in serious need of medical treatment before and after the Swat members used the Bearcat, teargas, and flashbangs to flush him out his home, yet refused to allow his family members, medical personnel, and others he was frantically reaching out for to help, to intervene or have any contact with him before or after he was ultimately killed by Swat team members upon their violent entry into his home.

40.     The said defendants deprived Yates of medical treatment in violation of Baldwin County Sherriff Office standards and policies or reasonable standards and policies that should have been in place after understanding that Mr. Yates suffered from a mental illness. The Baldwin County Sheriff Office (BCSO) custom and practice of providing inadequate or substandard medical care or refusing to enforce policies and procedures to mental health persons including to those in custody of the BCSO similar to prior deprivations described Case No 1:12-cv-00625-WS-M and Case No. 1:15-cv-00466-KD-B in that said defendants also provided inadequate emergency medical field training, allowing untrained and/or poorly trained personnel to make decisions regarding medical treatment, and denying and delaying necessary medical care to persons with serious medical needs, all of which violated Yates' clearly established due process rights under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

41.     As a direct and proximate cause of defendants said actions, Yates died before receiving proper medical treatment.

## COUNT II – 42 U.S.C. § 1983
## DELIBERATE INDIFFERENCE TO HEALTH/SAFETY

42.     The plaintiff re-alleges and incorporates by reference paragraphs 1-41 above with the same force and effect as if fully set out in specific detail hereinbelow.

43.     Robert Correa and Greg Smith failed to follow national standards of care for law enforcement, including policies and procedures in place, in regard to interacting with citizens with known mental illnesses.  They countenanced the DeBourges use of a crowbar and sledgehammer to beat down and destroy Yates's front door. They forcefully and unlawfully entered with excessive force with deliberate indifference to Yates's mental health in serious disregard for reasonable policies and procedures relating to persons with mental health that should have been in place and followed and enforced. They chose the worst path to approach a person with known mental illness and paranoia. The officers should have obtained a mental health evaluation of Mr. Yates and should only have used a nonviolent method in their attempted interactions with him.  The officers did not have an arrest warrant for Mr. Yates. Nor did they have a search warrant to enter Yates's home.  Robert Correa and Greg Smith were policemen acting under the color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Yates' health and safety, and acted in a reckless and dangerous foreseeably provoking an ultimate violent response from Mr. Yates.  Mack, Nolfe and Lusk, the on-scene commanders, and Arthur and Reid, the SWAT commanders,

along with the Crisis Negotiating Team (CNT) were acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Yates' health and safety, in deciding to use deadly force against him with the use of the Bearcat and 40-mm teargas cannons when they knew or should have known of the unreasonable risk of injury to Yates, including death, of deploying said devices in type of structure such as the mobile home, and the destructive power and the toxic effect they would have on Yates's surroundings.

44.     Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sheriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

45.     As a direct and proximate cause of defendants said actions, Yates suffered severe injuries and died.

## COUNT III – 42 U.S.C. § 1983
### EXCESSIVE FORCE

46.     The plaintiff re-alleges and incorporates by reference paragraphs 1-45 above with the same force and effect as if fully set out in specific detail hereinbelow.

47.     Defendants Justin Correa fired his weapon which helped kill Yates, and Cpt. Steve Arthur operated the Bearcat at a great risk of death and serious injury to Yates. Still other SWAT member defendants operated the 40 mm tear gas cannon launcher at a great risk of death and serious bodily harm to Yates, when Yate' posed no immediate threat of harm at the time of their deployment.

48.     Said defendants acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, deliberately deprived Yates of his rights clearly established rights under the Fourth and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 not to have excessive force used against him.

49.     Defendants Mack, Nolfe and Lusk, the on-scene commanders, and Arthur, and Reid, the SWAT commanders, are supervisory officials responsible for the development and implementation of policies and procedures to ensure the SWAT Team and officers appropriate deployment and use of deadly force with their equipment, weaponry, and incendiaries under the circumstances. This duty included, but was not limited to, the duty to create, adopt and implement rules, regulations, practices, and procedures which clearly direct SWAT Team Members as to the appropriate use of force with their equipment, weaponry, and incendiaries

under relevant circumstances. In circumstances dealing with people with mental illness such as Mr. Yates the SWAT command should have performed their own independent assessment of who Mr. Yates was, his level of mental illness, whether or not he suffered from paranoia or delusion, and whether he had ever been violent. When police aren't trained in mental health issues, they may interpret the mentally ill citizen's actions as defiance or resisting arrest. SWAT and Baldwin County policies should emphasize the sanctity of human life, focus on de-escalation, and urge officers to go above and beyond to avoid using force in any situation unless absolutely necessary.

50.    Defendants Mack, Nolfe and Lusk, the on scene commanders, and Arthur, and Reid, the SWAT commanders, failure to adopt and implement, or failure to follow, adequate policies regarding  appropriate use of force under the relevant circumstances and their conscious ignorance of legal duties and responsibilities under the law as a matter of custom and practice, constitutes deliberate indifference  regarding Mr. Yates mental illness to the known, serious consequences of excessive force with this type of equipment, weaponry, and incendiaries under relevant circumstances.

51.    Yates' death was the foreseeable result of said Defendants use and deployment of the above force, Defendants Mack, Nolfe and Lusk, the on scene commanders, and Arthur, and Reid, the SWAT commanders violation of policies on the use of said force in dealing with citizens with mental illness, or their failure to adopt and implement adequate policies regarding the avoidance of use of excessive

24

force unless absolutely necessary when dealing with citizens with mental illnesses, similar to Mack's acts and omissions as that described in case no. 1:19-cv-00221-C

52.    The said actions and omissions of said defendants did thereby deprive Mr. Yates of his clearly established rights to due process under the Fourth, Amendment, and the Fourteenth Amendments of the Constitution of the United States in violation of 42 U.S.C. § 1983 proximately causing Yates death. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sheriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

## COUNT IV
## FOURTH AMENDMENT - UNLAWFUL SEARCH AND SEIZURE

53.    The plaintiff re-alleges and incorporates by reference paragraphs 1-52 above with the same force and effect as if fully set out in specific detail herein68low.

54.     The actions by all named individual defendants constitute an unlawful invasion of privacy and search and seizure in violation of the First and Fourth Amendments of the Constitution of the United States.

55.     All of the named individual defendants, including Defendants Correa, Smith, Mack, Nolfe and Lusk, the on scene commanders, and Arthur, and Reid, and the SWAT commanders were acting under color of law outside the line and scope of the employment, and the DeBourges were acting under purported color of law in conjunction with executing the writ of possession under the authority of the officials of Defendants Baldwin County, Sheriff Mack, the Sheriff Department, and its Swat Team Cdrs, MCU Investigators, and Negotiators.

56.     On information and belief, it is the policy or custom of the Sheriff Mack, Baldwin County, its Sheriff Department, and its Swat Team to allow, to fail to prohibit, or fail to discipline such actions, so as to constitute the policy of Sheriff Mack, Baldwin County, its Sheriff Department, and its Swat Team Cdrs, MCU Investigators, and Negotiators.  Further, said defendants failed to train its officers, despite notice of the need to do so, to avoid such constitutional violations. It is the further policy of the Baldwin County Sheriff Department not to enforce policies and procedures in place pertaining to persons with mental health concerns, such as Yates. In the alternative, no reasonable policies and procedures in place exist. The breach in this case was done without a search warrant on Yates's mobile home in violation of the Fourth Amendment. All named Defendants are liable for said breach.

57.    As a result of the violation of Yates clearly established constitutional rights to privacy, to keep and bear arms, and to be free from unlawful search and seizure, the front door, walls, and windows of Yates home were broken down and destroyed placing Yates in fear of his life for five hours inside his home before he was shot in the abdomen, arm, and back of the head by Swat Team Members as they shot up the exterior and interior of his home firing more than 114 rounds.  In the process, Yates was subjected to severe mental anguish of the type that no reasonable person should be expected to endure, much less someone with known mental illness including paranoia; Yates suffered intimidation, embarrassment, and humiliation, along with mental and physical abuse distress, and suffered serious wounds to his body.

58.    Said actions of said defendants were done maliciously, willfully, and with reckless disregard for Yates clearly established constitutional rights. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sheriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights

due under the Fourth and Fourteenth Amendments to the Constitution of the

United States  and 42 U.S.C. § 1983.

## COUNT V
## SECTION 1983 CLAIM
## UNCONSTITUTIONAL SEIZURE

59.    The Plaintiff re-alleges and incorporates by reference paragraphs 1-58

above with the same force and effect as if fully set out in specific detail hereinbelow.

60.    Neither R. Correa and G Smith were in possession of a warrant to

enter Yates mobile home on March 5, 2018 and were acting under of color of law

when the directed the DeBourges to violently breach Yates' front door.

61.    Correa and Smith did not have a search warrant to enter Yates mobile

home nor were there exigent circumstances existing at the time to enter Yates'

home but rather than calling a locksmith to open the front door of Yates' mobile

home to determine if Yates was inside, or take any other less dangerous action, R.

Correa and G. Smith gave the greenlight to Don and Tim DeBourge and/or their

agents to forcibly enter Yates residence by taking a sledge hammer and crowbar to

bust down the front door.

62.    Their wrongful entry into Yates' mobile home and later

misrepresentations to cover up their acts, resulted in Yates's eventual death after

SWAT team was called and consequently strips these Defendants of immunity.

63.    The actions of the defendants including the DeBourges who were

acting along with and directly over said R. Correa and Smith, violated Yates' rights

under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure and excessive force, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries and death alleged in this complaint.

64.    As a proximate result of said defendants lies, conspiracy, and complicity, Yates suffered violations of his Fourth Amendment and Fourteenth Amendment, and 42 U.S.C. 1983 rights, including serious bodily injuries and death described above. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sherriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

### COUNT VI
### CONSPIRACY TO VIOLATE CONSITUTIONAL RIGHTS
### 42 U.S.C. 1983

65.    The Plaintiff re-alleges and incorporates by reference paragraphs 1-64 above with the same force and effect as if fully set out in specific detail hereinbelow.

66. Defendants R. Correa and G. Smith misrepresented, concealed, and suppressed and conspired to give false statements regarding the encounter with Yates on March 5, 2018, and continued to engage in a course of conduct, and otherwise jointly acted and/or filed false or misleading statements, and inaccurate, and misleading reports, and to make false statements to superior officers in order to conceal or suppress the actions and omissions of said defendants.

67. In furtherance of this conspiracy said defendants, together with their unnamed co-conspirators, committed the overt acts alleged in this complaint, which served as the basis of the use of deadly force against Yates, which ultimately lead to Yates' death that day. These acts remove the protection of qualified immunity because the actions were made in bad faith with total disregard for human life.

68. Said defendants, Capt. Tony Nolfe, Lt. Nathan Lusk, Justin Correa, Robert Correa, Greg Smith, Andre Reid and Steve Arthur were complicit in the conspiracy, and in violation of the sheriff's policies and procedures in place, or in violation of reasonable and appropriate policies and procedures that should have been in place.

69. As a proximate result of said defendants lies, conspiracy, and complicity, Yates suffered violations of his Fourth Amendment and Fourteenth Amendment, and 42 U.S.C. 1983 rights, including serious bodily injuries and death described above. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I.,

were the foreseeable result of Sheriff Huey Hoss Mack's and BCSO's culture on not

enforcing policies and procedures and not training personnel on one or more

appropriate policies or customs. It is also the foreseeable result by or a result of

similar practice of all named defendants in carrying out the acts described herein

and in the normal course of their employment or business or ordinary obligations,

including Mack's, deliberate indifference to individual's health and safety, described

in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due

process rights due under the Fourth and Fourteenth Amendments to the

Constitution of the United States  and 42 U.S.C. § 1983.

### COUNT VII
### SECTION 1983 CLAIM FOR FAILING TO PREVENT VIOLATIONS TO CLEARLY ESTABLISHED CONSITUTIONAL RIGHTS

70.     The plaintiff re-alleges and incorporates by reference paragraphs 1-69

above with the same force and effect as if fully set out in specific detail hereinbelow.

71.     On March 5, 2018, defendants R. Correa and G. Smith were acting as

agents, servants, and employees of Don DeBourge and outside the scope of their

employment, when they entered Yates' mobile home at the request of DeBourge, in

connection with an entirely civil matter on behalf of DeBourge. Correa, Smith, and

DeBourge had a duty to use only the reasonable and minimal amount of force

necessary to safely remove Yates from DeBourge's property. The Debourges acted

together with Correa and Smith outside the scope of their employment to tortiously

and recklessly and/or wantonly violate Yates's protected constitutional rights with

reckless and wanton disregard for his mental health and safety of which they knew

or should have known would foreseeably result in immediate threats to safety for all present, serious injury, violence, and death.

72.     As a result of their encounter with Yates, DeBourge's agents, Correa and Smith falsified their reporting of the incident, in violation of sheriff's policy, which ultimately lead to Yates' death when Correa and Smith called in a tactical SWAT team.

73.     Said defendants, Correa, Smith, and the DeBourges, separately and severally, caused the wrongful death of Robert Lewis Yates, Jr. as contemplated by Alabama Code § 6-5-410.

74.      As a direct and proximate result of the foregoing willful and wanton acts stated above, the said defendants, separately and severally caused the death of Robert Lewis Yates Jr. on March 5, 2018.

75.     All Defendants herein, including Huey Hoss Mack as policymaker, and Steve Arthur and Tony Nolfe as SWAT commanders, violated Yates' civil rights by failing to intervene and stop violations to Yates' clearly established rights when Lt. Andre Reid, Nathan Lusk, Justin Correa, all fired their weapons which killed Yates, and Cpt. Steve Arthur who operated the Bearcat at a great risk of death and serious bodily harm to Yates, and other SWAT members operated the 40 mm tear gas cannon launcher, when they knew or should have known said acts would cause deadly and/or serious harm to Yates and violate Yate's clearly established Fourth and Fourteenth Amendments rights and 42 U.S.C. 1983.

76.     Defendants Mack, Lusk, Reid, Arthur, Nolfe had a realistic opportunity to intervene but failed to take reasonable steps to prevent the violations of Yates' clearly established constitutional rights as described above.

77.     As a proximate result of said defendants failure to intervene and prevent the above described actions, Yates suffered violations of his 4th Amendment and 14th Amendment, and 42 U.S.C. 1983 rights, serious bodily injuries and death described above. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sheriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

## COUNT VIII
## SUPERVISOR LIABILITY

78.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-77 above with the same force and effect as if fully set out in specific detail hereinbelow.

79.    Defendant Mack violated 42 U.S.C. §1983 in the manner set forth herein.  Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

80.    Under 42 U.S.C. § 1983, Supervisory Liability can be found either where a supervisor personally participates in the alleged constitutional violation or where there is a sufficient causal connection between the supervising official's actions and the alleged Constitutional deprivation.

3.    81.    At all relevant times, defendant Sheriff Mack acted under color of state law. Defendant Sheriff Mack was the supervising official for law enforcement purposes of his office in Baldwin County, and therefore had a duty to ensure that he adequately supervised the deputies, including defendants R. Correa and G. Smith , to ensure that his subordinate agents responded in a proportionate and appropriate manner in accordance with applicable standards of care and applicable administrative policies, protocols, and procedures, to injured individuals and/or individuals displaying signs of an altered state of mind. As the sheriff, among other things, he was the chief policymaker of the Baldwin County Sheriff Office and was responsible for the administration, management, and service of civil writs, and coordination of the activities of the Deputies, Baldwin County MCU, BCSO Swat Team, its commanders, and its negotiators. Defendant Mack also had a statutory duty under Alabama law in the context of his policymaking power and duties to take care to ensure that the laws are faithfully executed to attend to the

medical needs of those in custody, especially those with known disabilities including those with known mental health issues. He is sued in his individual capacity.

82.     Mack failed to properly supervise his subordinate agents, including R. Correa and G. Smith and thereby allowed them to falsify records and official statements and interviews, which directly and proximately caused the death of Yates on March 5, 2018. At the time Yates was killed, Defendant SHERIFF breached his above-described duties and failed to properly supervise his deputies including, R. Correa and G. Smith agents, to ensure that they conducted themselves in an honest professional capacity and act in an appropriate manner when faced with reporting official police incidents. Such a failure to supervise reflects Mack's deliberate indifference to the known or obvious consequence that his failure to supervise in this circumstance with foreseeable results that Yates' constitutional rights would be violated, and thereby establishes a sufficient causal connection between the Mack's failure to supervise his subordinate agents and the deprivation of Yates' constitutional rights.  Mack's failure to supervise regarding falsification of records is also described in cases 1:12-cv-00718-KN-N and 1:17-cv-00259-KD-N

83.     As a proximate result of said Sheriff Mack's failure to supervise S. Correa and G. Smith, Yates suffered violations of his 4th Amendment and 14th Amendment, and 42 U.S.C. 1983 rights, serious bodily injuries and death described above. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sherriff Huey Hoss Mack's and BCSO's culture on not

enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

### COUNT IX
### DISABILITY DISCRIMINATION

84.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-83 above with the same force and effect as if fully set out in specific detail hereinbelow.

85.     Yates suffered from depression and other recognized disabilities under the Americans with Disabilities Act

86.     Baldwin County, Alabama, through, and employers in the Probate Court of Baldwin County, including the sheriff deputies its agents, officers they employed to assist in involuntary commitment hearings, knew of Yates' mental disability and disorders, having initiated several involuntary commitment proceedings against Yates in the past through the Probate Court of Baldwin County, Alabama, and by Yates' own 911 calls to the Baldwin County 9-1-1 District Call Center.

87.     Yates desperate pleas for help were ignored by Baldwin County, Alabama, by and through, defendant Sheriff Mack whose sheriff deputies act as

officials who are employed to assist in probate court involuntary commitment hearings, in Baldwin County, Alabama, and by the Baldwin County 9-1-1 District Call Center, and other officials who were in charge of their operations.

88.     Said actions by said Baldwin County, Alabama and its officials constitute disability discrimination under the Americans with Disabilities Act.

89.     As a result of the disability discrimination against him, Yates suffered the following injuries and damages:  Yates was subjected to severe mental anguish of the type that no reasonable person should be expected to endure; Yates suffered intimidation, embarrassment, and humiliation, along with mental and physical abuse and distress, and gunshot wounds which ultimately led to his death the following morning

90.     As a proximate result of said defendants' discrimination against him, Yates suffered violations of his 4th Amendment and 14th Amendment, and 42 U.S.C. 1983 rights, serious bodily injuries and death described above. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sherriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of

which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

## COUNT X
## RECKLESSNESS/WANTONNESS/CIVIL CONSPIRACY

91.     The Plaintiff re-alleges and incorporates by reference paragraphs 1-90 above with the same force and effect as if fully set out in specific detail hereinbelow.

92.     On March 5, 2018, defendants R. Correa and G. Smith were acting together and in concert with Don DeBourge and under the purported authority of Sheriff Huey Hoss Mack outside the scope of their employment, when they entered Yates' mobile home at the request of DeBourge, in connection with an entirely civil matter on behalf of DeBourge, of which the Sherriff was the primary executive who was charged with administering and executing the civil writ of possession. R. Correa, Smith, and DeBourge were required by law not to exceed the parameters of the writ of possession, which merely allowed the Debourges remove the mobile home from the property and the officers to standby to keep the peace—not kill Yates. So, the Debourges acted together in concert with R. Correa and Smith under the purported authority of Sherriff Huey Hoss Mack outside the scope of their employment to tortiously and recklessly and/or wantonly violate and act deliberately indifferent Yates's protected rights by killing him with reckless and wanton disregard for his mental health, the mental health of which was known to DeBourge, of which they also knew or should have known would foreseeably result in immediate threats to the safety of all present, especially Yates, including serious

injury, violence, and death. These actions together and in concert also constitute underlying violations of Section 1983 as described in Counts I-IX, above. The Plaintiff re-alleges and incorporates by reference paragraphs 1-91 above with the same force and effect as if fully set out in specific detail hereinbelow.

93.    As a result of their violent encounter with Yates, DeBourge's conspirators, R. Correa and Smith falsified, concealed, misrepresented, and suppressed their reporting of the incident, in violation of sheriff's policy, which ultimately lead to Yates' death when R. Correa and Smith called in a tactical SWAT team.

94.    Said defendants, R. Correa, Smith, and the DeBourges, separately and severally, caused the wrongful death of Robert Lewis Yates, Jr.  as contemplated by Alabama Code § 6-5-410.

95.    As a direct and proximate result of the foregoing willful and wanton acts stated above, the said defendants, separately and severally caused the death of Robert Lewis Yates Jr. on March 5, 2018.  Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sherriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health

and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates'

clearly established due process rights due under the Fourth and Fourteenth

Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

**COUNT XI**
**WRONGFUL DEATH**

96.    The Plaintiff re-alleges and incorporates by reference paragraphs 1-95

above with the same force and effect as if fully set out in specific detail hereinbelow.

97.    On March 5, 2018, defendants R. Correa and G. Smith were acting

together and in concert with Don DeBourge and under the purported authority of

Sheriff Huey Hoss Mack outside the scope of their employment, when they entered

Yates' mobile home at the request of DeBourge, in connection with an entirely civil

matter on behalf of DeBourge, of which the Sheriff was the primary executive who

was charged with administering and executing the civil writ of possession. R.

Correa, Smith, and DeBourge were required by law not to exceed the parameters of

the writ of possession, which merely allowed the Debourges remove the mobile

home from the property and the officers to standby to keep the peace—not kill

Yates. So, the Debourges acted together in concert with R. Correa and Smith under

the purported authority of Sheriff Huey Hoss Mack outside the scope of their

employment to tortiously and recklessly and/or wantonly violate and act

deliberately indifferent Yates's protected rights by killing him with reckless and

wanton disregard for his mental health, the mental health of which was known to

DeBourge, of which they also knew or should have known would foreseeably result

in immediate threats to the safety of all present, especially Yates, including serious

40

injury, violence, and death. These actions together and in concert also constitute underlying violations of Section 1983 as described in Counts I-X, above. The Plaintiff re-alleges and incorporates by reference paragraphs 1-91 above with the same force and effect as if fully set out in specific detail hereinbelow.

93.   As a result of their violent encounter with Yates, DeBourge's conspirators, R. Correa and Smith falsified, concealed, misrepresented, and suppressed their reporting of the incident, in violation of sheriff's policy, which ultimately lead to Yates' death when R. Correa and Smith called in a tactical SWAT team.

94.   Said defendants, R. Correa, Smith, and the DeBourges, separately and severally, caused the wrongful death of Robert Lewis Yates, Jr. as contemplated by Alabama Code § 6-5-410.

95.   As a direct and proximate result of the foregoing willful and wanton acts stated above, the said defendants, separately and severally caused the death of Robert Lewis Yates Jr. on March 5, 2018.

100.   As a direct and proximate result of the foregoing willful and wanton acts stated above, the said defendants, separately and severally caused the death of, Robert Lewis Yates Jr. on March 5, 2018. Said acts, including the denial to Yates's contact with his family, physicians, mental-health professional personnel, and others including the F.B.I., were the foreseeable result of Sheriff Huey Hoss Mack's and BCSO's culture on not enforcing policies and procedures and not training personnel on one or more appropriate policies or customs. It is also the foreseeable

result by or a result of similar practice of all named defendants in carrying out the acts described herein and in the normal course of their employment or business or ordinary obligations, including Mack's, deliberate indifference to individual's health and safety, described in Case No. 1:12-cv-00281-CG-C, all of which violated Yates' clearly established due process rights due under the Fourth and Fourteenth Amendments to the Constitution of the United States  and 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court assume jurisdiction of this action and after trial:

101.   Enter an Order requiring the Defendants to make the Plaintiff whole by awarding her damages in an amount to be determined by a jury, to allow the jury to hear evidence and award damages, to hear the evidence to include damages and award damages in accordance with the purpose and function of tort law and Section 1983, including the function of deterrence and public safety, to include nominal damages, compensatory and punitive damages, and pre- and post-judgment interest.

102.   The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.


Respectfully submitted, March 2, 2021


François M. Blaudeau (ASB-7722-D32F)
Evan T. Rosemore (ASB-3760-N10B)
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 547-5525
Facsimile: (205) 547-5526
evan@southernmedlaw.com
www.southernmedlaw.com

*Attorney for the Plaintiff*