**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

AIMEE LYNNE YATES, *as Personal*
*Representative of the Estate of*
*Robert Lewis Yates, Jr.,*
*Deceased,*

      **Plaintiff,**

vs.

SHERIFF HUEY HOSS MACK, *et al.,*

      **Defendants.**

                 CIVIL ACTION NO. 20-00131-KD-B

**ORDER**

    This case is before the Court on Defendants Steve Arthur, Justin Correa, Nathan Lusk, Tony Nolfe, and Andre Reid's (the "SWAT Team Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 142). For the reasons stated herein, that Defendants' motion is **GRANTED.**

### I. Background Facts[1]

    Plaintiff Aimee Lynne Yates ("Plaintiff"), as Personal Representative of the estate of Robert Lewis Yates, Jr. ("Yates"), deceased, commenced this action on March 4, 2020. (Doc. 1). In

---

[1] For purposes of resolving Defendants' motion to dismiss, the Court accepts as true the facts alleged in Plaintiff's amended complaint.

her Second Amended Complaint filed on March 10, 2021, Plaintiff
asserts the following claims against the SWAT Team Defendants
Nolfe, Lusk, Arthur, Reid, and J. Correa:[2] (Counts One and Two) §
1983 Deliberate Indifference to Serious Medical Needs and Safety;
(Count Three) § 1983 Excessive Force; (Counts Four and Five) §
1983 Unlawful Search and Seizure; (Counts Six and Ten) Conspiracy;
(Count Seven) § 1983 Failure to Intervene; (Count Nine) Disability
Discrimination - ADA; and (Count Eleven) § 1983 Wrongful Death.
Specifically, Plaintiff alleges that these Defendants were part of
the SWAT team that fired the shots that killed Yates. (Doc. 131
at ¶¶ 46-52).

According to Plaintiff, on March 5, 2018, the movants caused
the unlawful death of her father, Robert Lewis Yates, Jr., as a
result of their involvement in the execution of an Alias Writ of
Possession on Yates's mobile home residence, located in Fairhope,
Alabama, and a subsequent standoff with police during which
officers of the Baldwin County Sheriff's Office shot and killed the
decedent. (Doc. 131). The specific factual allegations related to
each claim are set forth below.

In response to Plaintiff's Second Amended Complaint,
Defendants Mack, Arthur, Justin Correa, Lusk, Nolfe, and Reid have
filed a motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6) on grounds of qualified immunity, failure to

---

[2] Plaintiff's claims against the other Defendants are addressed by
separate order.

state a claim upon which relief can be granted, and abatement. (Docs. 138, 140, 142).  This motion has been fully briefed and is now ready for resolution.

## II. **Standard of Review**

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must

be enough to raise a right to relief above the speculative level
. . ., on the assumption that all the allegations in the complaint
are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007) (internal citations omitted).   The
plaintiff must plead "enough facts to state a claim that is
plausible on its face."   Id. at 570.   Unless a plaintiff has
"nudged [his] claims across the line from conceivable to
plausible," the complaint "must be dismissed." Id.

"[U]unsupported conclusions of law or of mixed fact and law"
will not defeat a Rule 12(b)(6) motion for dismissal. Dalrymple
v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Marsh v.
Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).
"[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not 'show[n]' — that the pleader is entitled to
relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting
Fed. R. Civ. P. 8(a)(2)).   The U.S. Supreme Court has suggested
that courts adopt a "two-pronged approach" when considering
motions to dismiss: "1) eliminate any allegations in the complaint
that are merely legal conclusions; and 2) where there are well-
pleaded factual allegations, 'assume their veracity and then
determine whether they plausibly give rise to an entitlement to
relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283,
1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664).

Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

**III. <u>Analysis</u>**

According to Plaintiff's Second Amended Complaint, on March 5, 2018, Deputies Robert Correa and Greg Smith arrived at Yates' residence in connection with on-going eviction proceedings brought by Yates' landlord, Defendant Don DeBourge. (Doc. 131 at ¶¶ 14-16). The deputies approached Yates' residence, knocked on the trailer and the door multiple times, and announced, "Sheriff's office," with no response. (Id.). Deputies R. Correa and Smith then authorized Don DeBourge and his son, Tim DeBourge, to knock down the door, and Deputies R. Correa and Smith entered the residence, without a warrant.[3] (Id.). When Deputies R. Correa and Smith entered the residence, Yates fired a shot from an unknown location and direction inside the residence. (Id. at ¶¶ 16, 20).

_____

[3] Plaintiff alleges that, as part of eviction proceedings by the DeBourges against Yates, Deputies R. Correa and Smith possessed a "writ of possession" which allowed them to "standby to keep the peace" while the DeBourges "remove[d] the mobile home from the property." (Doc. 131 at ¶ 92). Specifically, Plaintiff alleges that the "alias writ of possession" and order issued by the Baldwin County District Court on February 26, 2018, provided: "[i]t is understood that the sheriff in executing the writ will stand by to ensure no breach of the peace if the plaintiff (Don DeBourge) decides to remove the mobile home at that time." (Id. ¶ 12).

Deputies R. Correa and Smith fled from the residence and fired shots in the direction of the house while taking cover outside. (Id. at ¶¶ 16-18).

Deputy Justin Correa[4] arrived on the scene after the initial confrontation between Yates and Deputies R. Correa and Smith. Plaintiff alleges that Deputies R. Correa and Smith falsely reported to Deputy Justin Correa and the other arriving SWAT Team members that Yates had come outside the residence and fired directly at Deputy Robert Correa's head.   (Id. at ¶¶ 19-21). According to Plaintiff, when Yates fired his gun and Deputies R. Correa and Smith retreated from the residence, a standoff of several hours ensued.  (Id. at ¶¶ 21-28).  During that time, the SWAT Team members used a military Bearcat to breach the mobile home residence and fired tear gas and flash bang grenades in unsuccessful attempts to extricate Yates from the residence.  (Id. at ¶¶ 21-22, 27).  Inside the residence, Yates, who had a history of mental illness, phoned 911 and expressed his belief that the DeBourges and their friends at the Sheriff's Department were trying to kill him.  (Id. at ¶ 22).  Yates requested help from the FBI. (Id.).

---

[4] Deputy Justin Correa is the son of Deputy Robert Correa.  (Doc. 131 at ¶ 20).

Plaintiff alleges that an FBI agent, as well as herself and Yates' sister, were denied access to Yates during the standoff, which prevented them from deescalating the situation. (Id. at ¶¶ 22-23). Plaintiff alleges that, at approximately 6:30 p.m., the SWAT team entered the residence. (Id. at ¶¶ 29-30). When they did so, Yates "fir[ed] his shotgun at an advancing steel shield" being carried by a SWAT Team Member. (Id. at ¶ 31). The SWAT Team members responded to Yates' gunshot blast by firing approximately 100 rounds, three of which struck and mortally wounded Yates. (Id.). Yates was unconscious and "barely alive" when medics reached him at approximately 6:30 p.m., and he died on the scene. (Id. at ¶ 34).

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he [or she] must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 Fed. Appx. 849, 850-851 (11th Cir. 2012). There is no question that the named SWAT Team Defendants, as Baldwin County Sheriff's deputies, were state actors for purposes of this action. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989)("Under the plain language of the Constitution of Alabama, a sheriff is an executive officer of the state."); Carr v. City of Florence, Ala., 916 F.2d 1521, 1526 (11th Cir. 1990)("The deputy sheriff is the alter ego of the sheriff."). Thus, to establish her asserted claims,

Plaintiff must establish that each named Defendant personally acted to deprive Yates of a constitutional right.

As stated, in their motion to dismiss, the Defendant SWAT Team members (Nolfe, Lusk, Arthur, Reid, and J. Correa) argue that they are entitled to qualified immunity on each of Plaintiff's § 1983 claims. "The defense of qualified immunity, which is available to local, state, and federal law enforcement officers, protects the defendants from liability for damages if they acted with a good faith belief based upon reasonable grounds that the measures they took were necessary." Maiorana v. MacDonald, 596 F.2d 1072, 1074 (1st Cir. 1979)("We . . . recognize that an arrest may sometimes entail the use of deadly force and that liability under § 1983 will not arise if the officers involved reasonably believed in good faith that such force was necessary to protect themselves or others from death or great bodily harm.") (citing Butz v. Economou, 438 U.S. 478 (1978)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (citations omitted). "Because

qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'" Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "Accordingly, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'"   Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

In order to receive qualified immunity, the Defendants must first show that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).   In this case, there can be no genuine dispute that the Defendant SWAT Team members were acting in their discretionary capacity as law enforcement officers when they attempted to extricate Yates from his residence after he fired a gun in response to Deputies R. Correa and Smith initially entering his home.

Once a defendant establishes that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."   Lee, 284 F.3d at 1194 (citations omitted).   The Supreme Court has set forth a two-part test for evaluating a claim of qualified immunity.   As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"   Lee,

284 F.3d at 1194 (quoting <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)).
"If a constitutional right would have been violated under the
plaintiff's version of the facts, the court must then determine
'whether the right was clearly established.'" <u>Id.</u> (citations
omitted).  This second inquiry "must be undertaken in light of the
specific context of the case, not as a broad general proposition."
<u>Id.</u>

      "This burden is not easily discharged: that qualified
immunity protects government actors is the usual rule; only in
exceptional cases will government actors have no shield against
claims made against them in their individual capacities." <u>Foy v.
Holston</u>, 94 F.3d 1528, 1532 (11th Cir. 1996)(citations and internal
quotation marks omitted).  The doctrine of qualified immunity
recognizes that suits such as the instant one "involve substantial
costs not only for the individual official – who incidentally may
be innocent – but for society in general," including "the expenses
of litigation, the diversion of official energy from pressing
public issues, and the deterrence of able citizens from acceptance
of public office." <u>Id.</u>  "[T]here is the danger that fear of being
sued will dampen the ardor of all but the most resolute, or the
most irresponsible public officials, in the unflinching discharge
of their duties."  <u>Id.</u> (internal alterations omitted)(citing
<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814 (1982)).

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) (citations omitted).  The analysis "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Id. (citations and internal quotation marks omitted).  Thus, in order to overcome a public official's entitlement to qualified immunity, a plaintiff must be able to establish not only that the public official acted wrongfully, but also be able to point the Court to law existing at the time of the alleged violation that provided "fair warning" that the conduct of the defendants was illegal. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

The Court now considers each of Plaintiff's constitutional claims separately to determine whether qualified immunity applies with respect to the SWAT Team Defendants.

### A. § 1983 Unlawful Search and Seizure (Counts Four and Five).

In Counts Four and Five of the Second Amended Complaint, Plaintiff alleges that the Defendant SWAT Team members violated Yates' right to be free from unlawful searches and seizures under the First, Fourth, and Fourteenth Amendments when they attempted to extract him from his residence (with a Bearcat, tear gas, and

11

flash grenades), entered his home, and shot him fatally – all without a warrant. (Doc. 131 at ¶¶ 54-64). The movants respond that their actions were lawful given Yates' earlier unlawful conduct in firing a gun in response to Deputies R. Correa and Smith entering his residence and given Yates' refusal to come out of the residence during the standoff. (Doc. 143 at 13). Defendants also argue that Plaintiff's unlawful search and seizure claims are abated. (Id. at 8).

"The Fourth Amendment guarantees the right for people 'to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.'"[5]   Sims v. Marion Cnty.,

---

[5] Plaintiff also bases her unlawful search and seizure claims on the First Amendment's right to privacy and the Fourteenth Amendment's right to due process. However, it appears from the allegations in the Second Amended Complaint, that it is the Fourth Amendment, not the First or Fourteenth Amendments, that governs conduct such as that alleged here. See generally Redd v. City of Enterprise, 140 F.3d 1378, 1383-84 (11th Cir. 1998)(the Fourth Amendment requirements regarding search and seizure are sufficient to protect First Amendment interests that may be implicated in the search and seizure)(citations omitted); Mitchell v. Shearrer, 2012 U.S. Dist. LEXIS 37347, *8-9, 2012 WL 943322, *3 (E.D. Mo. Mar. 20, 2012), aff'd in part, dismissed in part, 729 F.3d 1070 (8th Cir. 2013)("The Supreme Court has held that the Fourth Amendment, not substantive due process, governs unlawful search and seizures. Similarly, it is the Fourth Amendment, not the First Amendment, that protects a person's right to withdraw his consent to a warrantless knock and talk encounter with a law enforcement officer."); Agustonelli v. Springer, 2004 U.S. Dist. LEXIS 6545, *212004 WL 825300, *7 (D. Kan. Apr. 14, 2004)("Plaintiff fails to point to any authority that identifies a right of privacy in the First Amendment based on a claim of an unreasonable search. The court concludes that Plaintiff's right of privacy is best examined under the Fourth Amendment's guarantee of an expectation of privacy (Continued)

Alabama, 2019 U.S. Dist. LEXIS 72468, *6, 2019 WL 1921960, *2 (N.D. Ala. Apr. 30, 2019)(quoting U.S. Const. amend. IV). "Searches of homes made without a warrant are *per se* unreasonable." Id. (citing Payton v. New York, 445 U.S. 573, 586 (1980)(stating that it is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."); see also LaRoche v. Chapman, 2021 U.S. Dist. LEXIS 126455, *18, 2021 WL 2827298, *5 (S.D. Ga. July 7, 2021)("if Defendants' actions *did* violate Plaintiffs' Fourth Amendment rights, they would not be entitled to qualified immunity, because the right to not have one's home searched without a warrant absent consent or exigent circumstances is a clearly established one.")(emphasis in original).

"Where a warrantless arrest occurs in a house, the arrest 'violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest *and* either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant.'" Gomez v. Miami-Dade Cnty., 2021 U.S. Dist. LEXIS 186141, *15, 2021 WL 4726506, *6 (S.D. Fla. Sept. 28, 2021)(emphasis in original). "Probable cause exists where the facts within the collective knowledge of law enforcement

_____

against unreasonable searches and seizures."). Therefore, Plaintiff's unlawful search and seizure claims in this case are governed by the Fourth Amendment.

officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Id. (citing Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010)). The exigent circumstances exception is "case-specific" and "enables law enforcement officers to handle 'emergenc[ies]'— situations presenting a 'compelling need for official action and no time to secure a warrant.'" Lange v. California, 141 S. Ct. 2011, 2016, 210 L. Ed. 2d 486 (2021). "An officer, for example, may enter a home without a warrant to render emergency assistance to an injured occupant[,] to protect an occupant from imminent injury,' or to ensure his own safety." Id. (citations omitted). However, the exigent circumstances exception in the context of a home entry "should rarely be sanctioned when there is probable cause to believe that only a minor offense is involved." Id. (citations and internal quotation marks omitted).

Here, Plaintiff alleges that the SWAT Team members violated Yates' Fourth Amendment protection against unlawful searches and seizures when they used tear gas, flash grenades, and a Bearcat to attempt to force him to come out of his residence and, when those tactics failed, they entered the residence and fatally shot him. (Doc. 131 at ¶¶ 36, 39, 43, 47, 75). However, Plaintiff also alleges that Yates was involved in on-going eviction proceedings, that he had been given notice of a writ of possession posted on

14

his front door three days before the incident in question, that he knew that the officers at his home on March 5, 2018, were from the Sheriff's Department, and that he fired a gun when Deputies R. Correa and Smith initially entered the residence. (Doc. 131 at ¶¶ 13-16). These allegations constitute probable cause for the SWAT Team members to seize Yates, as a reasonable person would believe that a serious criminal offense had been committed at that time.[6]

With regard to the question of exigent circumstances, Plaintiff's allegations establish that Yates was mentally unbalanced;[7] that Yates' family members told the officers during the standoff that Yates was mentally ill; that Yates was "severely agitated;" that Yates had a gun; that Yates had fired his gun when deputies initially announced "Sheriff's Office" and entered his home; that Yates had suffered exposure to tear gas and flash

---

[6] Although Plaintiff alleges that Deputies R. Correa and Smith initially entered Yates' home without a warrant, Plaintiff does not allege that the SWAT Team members knew that Correa and Smith entered the residence without a warrant. Moreover, after Yates fired his gun in response to the deputies entering his residence (with knowledge that they were Sheriff's deputies)(Doc. 131 at ¶ 16), it was reasonable for the SWAT Team members to believe that a criminal offense had been committed.

[7] Plaintiff alleges that "Yates suffered from depression and other mental disorders, including anxiety and paranoia, and previously had been involuntarily committed for mental health treatment in 2002 by the Probate Court of Baldwin County, Alabama but had not been hospitalized since 2002. In 2004, the Probate Court held another hearing to determine Yate's mental capacity." (Doc. 131 a ¶ 10). Plaintiff describes Yates as "severely agitated" on the day in question. (Id. ¶ 22).

grenades during the standoff; and that Yates did not come out of his home during the standoff with the police. (Doc. 131 ¶¶ 12-13, 14, 23). The Court is satisfied that these allegations, which establish that Yates may have presented a risk of imminent harm to himself, that he may have presented a risk of imminent harm to the officers on site, and that he may have been in need of emergency medical assistance, are sufficient to establish exigent circumstances justifying the SWAT Team members' warrantless entry into Yates' home.[8]

Because the allegations of the Second Amended Complaint establish that the SWAT Team members acted within the scope of their authority, with probable cause for a seizure and arrest, and that exigent circumstances justified entry into Yates' home without a warrant, the Court finds that the SWAT Team Defendants are entitled to qualified immunity on Counts Four and Five for unlawful search and seizure. See Fisher v. City of San Jose, 558 F.3d 1069, 1078 (9th Cir. 2009) ("Fisher's own criminal behavior caused the exigency that excused the Fourth Amendment warrant

---

[8] Although the standoff is alleged to have lasted "multiple hours," the mere passage of time does not negate the existence of exigent circumstances. See, e.g., Fisher v. City of San Jose, 558 F.3d 1069, 1075-76 (9th Cir. 2009) ("We conclude that once exigent circumstances and probable cause justified Fisher's seizure, police were not required to obtain an arrest warrant despite the fact that they did not take Fisher into full physical custody until hours later.").

requirement to which he was otherwise entitled for an in-home arrest. Even Fisher admits that when he pointed his gun at the officers and threatened to shoot them, the police were, at that moment, entitled to enter his home, using force if necessary, to complete his arrest.").

Based on the foregoing, Plaintiff's allegations fail to establish a constitutional violation in Counts Four and Five against the SWAT Team Defendants, and these Defendants are entitled to qualified immunity on Plaintiff's unlawful search and seizure claims. Accordingly, their motion to dismiss Counts Four and Five is due to be granted.

### B. § 1983 Excessive Force (Count Three).

In the Second Amended Complaint, Plaintiff alleges that the actions of the SWAT Team Defendants (in using a Bearcat, teargas, and flash grenades to attempt to extract Yates from his residence and then using deadly force upon entry into the house), constituted excessive force which caused Yates' death. (Doc. 131 at ¶¶ 46-52). To establish her Fourth Amendment excessive force claim, Plaintiff must show that the force used by Defendants in making the arrest was not "objectively reasonable in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989)(internal quotation marks omitted). Objective reasonableness is highly fact-specific and requires a "totality of the circumstances" analysis. Tennessee v. Garner, 471 U.S. 1, 8–

17

9 (1985).   The Supreme Court in Graham set out the following
factors to be considered in conducting that analysis: "the severity
of the [suspected] crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade
arrest by flight." Id., 490 U.S. at 396 (citing Tennessee, 471
U.S. at 8-9).   "The reasonableness of a particular use of force
must be judged from the perspective of a reasonable officer on the
scene, rather than with the 20/20 vision of hindsight." Graham,
490 U.S. at 396 (citations and internal quotation marks omitted).
In determining whether the use of force was unreasonable, courts
have also considered the extent of the injury caused by the use of
that force. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003).

In analyzing this claim, the Court also bears in mind that
"police officers . . . must often act swiftly and firmly at the
risk that action deferred will be futile or constitute virtual
abdication of office." Maiorana, 596 F.2d 1072, 1078 (1st Cir.
1979)(quoting Scheuer v. Rhodes, 416 U.S. 232, 246 (1974)).   "We
also recognize that an arrest may sometimes entail the use of
deadly force and that liability under § 1983 will not arise if the
officers involved reasonably believed in good faith that such force
was necessary to protect themselves or others from death or great
bodily harm." Maiorana, 596 F.2d at 1078 (granting summary
judgment on plaintiff's § 1983 excessive force claim where police

officers shot an arrestee who they believed was going for his gun; holding as a matter of law that the officers acted without malice and in good faith where it was undisputed that the defendants knew that the arrestee had a prior criminal record, that he was armed with a gun, and that he had previously gone for his gun during a prior arrest; the court held that there was "no possible basis for a judgment holding them liable.").

In the present case, Plaintiff alleges that the SWAT Team Defendants responded to a call that Yates had fired a gun at law enforcement officers and remained armed inside his residence, refusing to come out.[9] (Doc. 131 at ¶¶ 16-21).  After a multiple-hour standoff (during which Defendants unsuccessfully used a Bearcat, teargas, and flash grenades to draw Yates out of the residence), the SWAT Team Defendants entered the residence, and Yates fired a shotgun directly at a SWAT Team member who was advancing toward him with a steel shield.  (Id. at ¶ 31).  Even considering the allegations in a light most favorable to the Plaintiff, Yates fired his gun when deputies initially entered his

_____

[9]Plaintiff's allegations establish that Yates knew that the individuals who initially entered his home were from the Sheriff's Department. Specifically, Plaintiff alleges that Defendants R. Correa and Smith yelled "Sheriff's Office" twice during the initial altercation with Yates and that Yates told the 911 operator that friends of the DeBourges from the Sheriff's Department were trying to kill him.  (Doc. 131 at ¶¶ 15-16, 22).

residence, which is a serious offense; Yates posed an immediate threat to law enforcement officers; Yates was resisting arrest; and when the SWAT Team entered the residence, Yates fired the first shot at a SWAT Team member with a shotgun.   Given these allegations, Defendants' actions were objectively reasonable in light of the facts and circumstances confronting the arresting officers.

The Court has considered Plaintiff's argument that Yates was mentally ill and that Defendants should have used an alternative means of apprehending him and making an arrest.   However, speculation about whether an alternative approach by law enforcement would have prevented Yates from firing a shotgun at SWAT Team members and, thus, rendered a different result, is not the test.   The Eleventh Circuit has stated:

> There is no precedent in this Circuit (or any other) which says that the Constitution requires law enforcement officers to use all feasible alternatives to avoid a situation where deadly force can justifiably be used. There are, however, cases which support the assertion that, where deadly force is otherwise justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first.... The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable.

Menuel v. City of Atlanta, 25 F.3d 990, 996-97 (11th Cir. 1994)(citations omitted)(in an excessive force case where "police

officers fatally but lawfully shot the decedent in response to her continuing gunfire," they "seized the decedent by shooting her but, in the circumstances of this case, violated none of her Fourth Amendment rights as a result.").

Under the circumstances alleged by the Plaintiff, there can be no question that the SWAT Team Defendants' actions in attempting to extricate Yates from his residence and ultimately using deadly force was reasonable and justifiable. See Parrott v. Wilson, 707 F.2d 1262, 1272-73 (11th Cir. 1983)(although plaintiff's expert maintained that defendant U.S. Marshal could have used other means to ensure a nonfatal end to the incident, the court granted judgment as a matter of law for defendant where the undisputed evidence established that the decedent was aware of his impending eviction, had demonstrated his unwillingness to leave the residence, and pointed a loaded shotgun at the Marshal when he entered the residence; thus, the shooting was justifiable.).

Based on the foregoing, Plaintiff's allegations fail to establish a constitutional violation in Count Three against the SWAT Team members, and these Defendants are entitled to qualified immunity on Plaintiff's excessive force claim. Accordingly, their motion to dismiss Count Three is due to be granted.

### C. § 1983 Deliberate Indifference to Serious Medical Need/Health/Safety (Counts One and Two).

In Counts One and Two of the Second Amended Complaint, Plaintiff alleges that the SWAT Team members were deliberately indifferent to Yates' serious medical need "in that they either knew or should have known Yates was in serious need of medical treatment before and after the SWAT members used the Bearcat, teargas, and flashbangs to flush him out [of] his home, yet refused to allow his family members, medical personnel, and others he was frantically reaching out for to help, to intervene or have any contact with him before or after he was ultimately killed by SWAT team members upon their violent entry into his home." (Doc. 131 at ¶¶ 38-39).  Plaintiff alleges that these Defendants deprived Yates of necessary medical treatment which directly and proximately caused his death.  (Id. at ¶¶ 38-41).  Plaintiff further alleges that these Defendants were deliberately indifferent to Yates' health and safety in "deciding to use deadly force against him with the use of the Bearcat and 40-mm teargas cannons when they knew or should have known of the unreasonable risk of injury to Yates, including death" and in denying Yates contact with family members, mental health professionals, and others including the FBI, which proximately caused his death. (Id. at ¶¶ 43-45).  As discussed, Defendants assert that they are entitled to qualified immunity on Plaintiff's deliberate indifference claims.

The Court begins this analysis by determining whether Plaintiff has alleged facts which would establish that Defendants committed an Eighth Amendment violation. Plaintiff's claims in Counts One and Two derive from the Fourteenth Amendment's guarantee of due process; however, the applicable standard is that applied under the Eighth Amendment's protection against "cruel and unusual punishments." See Hinson v. Bias, 927 F.3d 1103, 1121 (11th Cir. 2019), cert. denied, 141 S. Ct. 233, 208 L. Ed. 2d 14 (2020); Obremski v. Armor Corr. Health Servs., Inc., 467 F. Supp. 3d 1265, 1275 (S.D. Fla. 2020)("Because Mr. Obremski was a pretrial detainee, the Plaintiff's § 1983 claims sound, not in the Eighth Amendment's protection against 'cruel and unusual punishments,' but rather in the Fourteenth Amendment's guarantee of due process. . . . However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.")(quoting Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) and Taylor v. Adams, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000)).

"Among other functions, the Eighth Amendment prohibits 'cruel and unusual punishments.'" Hinson, 927 F.3d at 1121–23 (quoting U.S. Const. amend VIII). "Deliberate indifference of a medical need violates the Eighth Amendment because it amounts to 'the unnecessary and wanton infliction of pain. . . .'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104, (1976)).

"The first prong, 'a serious medical need,' is objective." Hammonds v. Theakston, 833 Fed. Appx. 295, 300 (11th Cir. 2020), *cert. denied*, 2021 WL 4507658 (U.S. Oct. 4, 2021)(citations omitted). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "For either of these situations, the medical need must be one that, *if left unattended,* pos[es] a substantial risk of serious harm." Id. (emphasis added)(citations and internal quotation marks omitted).

"The 'deliberate indifference' prong, on the other hand, is subjective. Id. (citations omitted). "To meet the onerous deliberate indifference standard, . . . a plaintiff must demonstrate (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Id. (citations and internal quotation marks omitted). "The Constitution does not require that a detainee's medical care be 'perfect, the best obtainable, or even very good.'" Id. (citations omitted). "Rather, for treatment (or lack thereof) to amount to deliberate indifference, it must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. (citations omitted). "For example, we have held that '[w]hen the need for treatment is obvious, medical care which is so cursory as to amount

to no treatment at all may amount to deliberate indifference.'" Id. (citations omitted). Likewise, "[d]eliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." Id. (citations omitted). Also, "a defendant who unreasonably fails to respond or refuses to treat [a detainee's] need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." Obremski, 467 F. Supp. 3d at 1275 (quoting Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016)). Finally, in order to state a claim for deliberate indifference to a serious medical need, Plaintiff must show that the defendant's deliberate indifference and the plaintiff's injury were causally related. Hinson, 927 F.3d at 1121-23 (citing Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019)).

Here, Plaintiff's allegations of deliberate indifference by these Defendants to Yates' serious medical needs are inadequate for several reasons. First, Plaintiff alleges that, before Yates was shot, Defendants knew or should have known that he was in need of treatment for serious medical conditions (both physical and mental) for injuries caused by the Bearcat, tear gas, or flash grenades, but that Defendants failed to provide such treatment. However, Plaintiff has alleged that Yates refused to come out of his home despite hours of coercion by law enforcement to get him

to do so, and he refused to peaceably allow law enforcement officers to enter his home. Therefore, Plaintiff's own allegations establish that Defendants were precluded by Yates himself from providing any medical care to him before he was shot. And any suggestion that these Defendants should have allowed civilians to enter the residence at their peril is absurd and merits no further discussion. Accordingly, Plaintiff has failed to state a claim for deliberate indifference to a serious medical need by these Defendants before he was shot.

Also, with respect to Plaintiff's allegations regarding Yates' serious medical needs after he was shot, Plaintiff's allegations themselves establish that Yates received virtually immediate medical attention from medics at the scene. Specifically, Plaintiff alleges that, "*[a]t approximately 6:30 PM* on March 5, 2018 the decision was made to breach the Yates residence with all of the SWAT Team's fire power. . . . Robert Lewis Yates, Jr. was a 65-year-old, retired, disabled, and possibly seriously injured gentleman with a history of mental illness including paranoia and was trying to protect himself the only way he knew how. Available evidence suggests that Mr. Yates did finally engage the officers when they breached his home by firing his shotgun at an advancing steel shield. The SWAT team fired around one hundred plus rounds of ammunition into Yates's home, ultimately and foreseeably killing Mr. Yates. . . ." (Id. at ¶¶ 29-

31)(emphasis added).  Plaintiff further alleges: "Yates lay seriously wounded, unconscious, and *barely alive* by the time medics reached him on March 5, 2018 *at approximately 6:30 PM*. However, Yates was not rushed to the emergency room by ambulance and was not transported by life saver helicopter to the hospital but died on the scene from his fatal wounds."  (Id. at ¶ 34)(emphasis added).  These allegations establish that after Yates was shot, he was "barely alive," and he was treated and attended by medics at the scene immediately; however, he succumbed to his wounds. Plaintiff does not allege that the emergency medical care provided by the medics was so cursory as to amount to no treatment at all, or even that it was inadequate.  Because Plaintiff has failed to allege facts which would establish that Yates' serious medical needs after he was shot were left unattended, she fails to establish the objective component of her deliberate indifference claim.

In addition to the foregoing objective requirement, Plaintiff must establish the subjective component of her deliberate indifference claim, by showing: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.  See Hammonds, 833 Fed. Appx. at 300.  Here, Plaintiff alleges that "Yates was not rushed to the emergency room by ambulance and was not transported by life saver helicopter to the hospital." (Doc. 131 at ¶ 34).  However,

Plaintiff does not allege that the decision (ostensibly by these Defendants) to allow medics to treat Yates at the scene and/or to not call an ambulance or a helicopter to transport Yates to a hospital were deliberate attempts by the SWAT Team Defendants to punish Yates or were so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Hammonds, 833 Fed. Appx. at 300. Because Plaintiff has failed to allege facts which would establish *some purposeful or intentional denial* of necessary medical treatment by these Defendants or that the medical treatment that was given was so *grossly incompetent* as to shock the conscience, she fails to establish the subjective component of her deliberate indifference claim as well. See Sasser v. Chase, 2008 U.S. Dist. LEXIS 120490, *8, 2008 WL 4426034, *4 (M.D. Ga. Sept. 25, 2008)("the question of whether *additional* diagnostic techniques *or forms of treatment* are indicated are classic examples of matters for medical judgment and that medical malpractice does not become a constitutional violation merely because the patient is a prisoner. . . . [I]n order to prevail in a § 1983 case involving allegations of deliberate indifference to serious medical needs, a plaintiff must show more than mere negligence or error in judgment; there must be *some purposeful or intentional denial* of necessary medical treatment or at least the medical treatment that was given must be so *grossly incompetent* as to shock the conscience.")(emphasis

28

added in part)(citing Estelle v. Gamble, 429 U.S. 97, 107 (1976);
Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989)); Blanton v. Howard,
2016 U.S. Dist. LEXIS 168776, *5, 2016 WL 7116128, *3 (N.D. Ga.
Nov. 7, 2016), *report and recommendation adopted*, 2016 WL 7104590
(N.D. Ga. Dec. 6, 2016)(An arrestee must show a police official's
"'subjective intent to punish' by demonstrating that the official
acted with deliberate indifference. . . . Plaintiff does not state
deliberate indifference claims against Defendants because there is
no indication that they prevented emergency medical technicians
from treating him after his arrest. . . . Accordingly, Plaintiff
fails to state any deliberate indifference claims.").

Last, Plaintiff does not allege facts to establish causation,
that is, that Yates would have lived if Defendants had called an
ambulance or helicopter to transport him to a hospital, as opposed
to the treatment that he was given on the scene by medics.  Thus,
Plaintiff's allegations fail to state a claim for this reason as
well.

In sum, Plaintiff's allegations in the Second Amended
Complaint fail to state a plausible claim against these Defendants
for deliberate indifference to Yates' serious medical needs either
before or after he was shot.[10]  Indeed, Plaintiff's allegations

---

[10] To the extent that Plaintiff claims that Defendants' use of force
constituted deliberate indifference to Yates' "safety," that
allegation fails to state a claim because this Court has already
(Continued)

seem to refute any such claim.  Therefore, the SWAT Team Defendants are entitled to qualified immunity on Plaintiff's deliberate indifference claims, and their motion to dismiss Counts One and Two is due to be granted.

### D. § 1983 Failure to Intervene (Count Seven).

In Count Seven, Plaintiff alleges that the SWAT Team Defendants "violated Yates' civil rights by failing to intervene and stop violations to Yates' clearly established rights when Lt. Andre Reid, Nathan Lusk, Justin Correa, all fired their weapons which killed Yates, and Cpt. Steve Arthur who operated the Bearcat at a great risk of death and serious bodily harm to Yates, and other SWAT members operated the 40 mm tear gas cannon launcher, when they knew or should have known said acts would cause deadly and/or serious harm to Yates and violate Yate's clearly established Fourth and Fourteenth Amendments rights and 42 U.S.C. 1983." (Doc. 131 at ¶¶ 70-77).  Movants argue that they are entitled to qualified immunity on this claim as well.

The Court begins its qualified immunity analysis by determining whether Plaintiff has identified any constitutional right that the Defendants allegedly failed to protect.  "If a police officer, whether supervisory or not, fails or refuses to

---

found, for the reasons previously discussed, that Plaintiff fails to state a claim for excessive force.

intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under section 1983." Heflin v. Miami-Dade Cnty., 393 Fed. Appx. 658, 660 (11th Cir. 2010). However, in order to state a claim for failure to intervene, Plaintiff must "identify any constitutional right that [the Defendant] failed to protect." Roberts v. Malone, 2018 U.S. Dist. LEXIS 51687, *17, 2018 WL 1518349, *6 (N.D. Ala. Mar. 28, 2018)("Even if Plaintiff had not abandoned his failure to intervene claim, which he has, the claim would still be subject to dismissal because Plaintiff did not identify any constitutional right that Defendant Carter failed to protect—which is itself necessary to a failure to intervene claim."); Sebastian v. Ortiz, 918 F.3d 1301, 1312 (11th Cir. 2019)("Of course, there also must be an underlying constitutional violation. . . Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed.")(citing Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009)); Reyes v. City of Jacksonville Beach, lexis--, 2021 WL 4974838, *5 (M.D. Fla. Oct. 26, 2021)("Because Reyes has failed to allege that a constitutional violation occurred, Officers Wallace and Blalock cannot be liable for failing to intervene and Count III of the Amended Complaint is also due to be dismissed.").

Here, the Second Amended Complaint alleges that the SWAT Team members violated Yates' civil rights by failing to intervene when

other SWAT Team members used excessive force against Yates, namely, a Bearcat, tear gas, and deadly force. (Doc. 131 at ¶ 75). However, the Court has already found that these allegations fail to state a claim against the SWAT Team Defendants for excessive force, unlawful search and seizure, or deliberate indifference to serious medical needs in violation of Yates' constitutional rights.

Therefore, because Plaintiff has failed to allege an underlying constitutional violation upon which a claim for failure to intervene may be based, this claim is due to be dismissed. See Roberts, 2018 U.S. Dist. LEXIS 51687, *17, 2018 WL 1518349 at *6 (Plaintiff's failure to intervene claim was subject to dismissal where Plaintiff did not identify a constitutional right that Defendant failed to protect, which is necessary to a failure to intervene claim.). Accordingly, Defendants are entitled to qualified immunity on Plaintiff's failure to intervene claim, and their motion to dismiss Count Seven is due to be granted.

**E. § 1983 ADA (Count Nine).**

In Count Nine, Plaintiff alleges that Yates suffered from depression and "other recognized disabilities" under the Americans with Disabilities Act and that by denying him "contact with his family, physicians, mental-health professional personnel, and others including the F.B.I." during the stand-off, the Defendants caused him to suffer mental anguish, bodily injury, and death,

which constituted "disability discrimination under the Americans with Disabilities Act." (Doc. 131 at ¶¶ 84-90). Plaintiff asserts this claim against the SWAT Team Defendants in their *individual capacities only*. (Doc. 131 at ¶ 5).

"It is settled that Title II of the ADA does not permit individual capacity suits."[11] Smith v. Rainey, 747 F. Supp. 2d 1327, 1340 (M.D. Fla. 2010)(citing Rylee v. Chapman, 316 Fed. Appx. 901, 905 (11th Cir. 2009); Badillo v. Thorpe, 158 Fed. Appx. 208, 211 (11th Cir. 2005)("[T]here is no individual capacity liability under Title II of the ADA ...."); see also Chaney v. Community Hospice of Baldwin Cnty., 2019 U.S. Dist. LEXIS 19951, *11, 2019 WL 489115, *4 (S.D. Ala. Feb. 7, 2019)("the Eleventh Circuit has found that employees are not subject to individual liability under the ADA. . . ."); Buford v. Alabama Dep't of Corrs., 2020 U.S. Dist. LEXIS 20281, *2, 2020 WL 587647, *1 (S.D. Ala. Feb. 6, 2020)("[T]here is no individual capacity liability under Title II of the ADA...."). Title II does permit official capacity suits against state officials for prospective injunctive relief. See Smith, 747 F. Supp. 2d at 1341.

Because Plaintiff has alleged an ADA claim against the SWAT Team Defendants in their individual capacities only, her

---

[11] While not specified in the Second Amended Complaint, Plaintiff refers to Title II of the ADA in her brief. (Doc. 147 at 20).

allegations fail to state a claim upon which relief could be granted; thus, Defendants' motion to dismiss Plaintiff's ADA claim in Count Nine is due to be granted.

**F. § 1983 Wrongful Death (Count Eleven).**

In Count Eleven, Plaintiff alleges that the unlawful actions of the Defendants, which "constitute underlying violations of Section 1983 as described in Counts I-X," directly and proximately caused Yates' wrongful death. (Doc. 131 at ¶¶ 96-100). For the following reasons, Plaintiff's allegations are insufficient to state a claim for § 1983 wrongful death.[12]

"[I]n the context of suits commenced by the personal representative of a decedent's estate, and alleging that constitutional violations under color of Alabama law caused the death of the plaintiff's decedent, . . . a § 1983 claim asserted through § 1988(a) 'incorporates' Alabama's wrongful death statute for the purpose of claiming damages from the state actors responsible for the death." Waites v. Limestone Corr. Facility, 2017 U.S. Dist. LEXIS 98771, *36, 2017 WL 2797124, *16 (N.D. Ala. June 27, 2017)(citations omitted). Here, Plaintiff asserts a § 1983 wrongful death claim against these Defendants, incorporating Ala. Code § 6-5-410 through 42 U.S.C. § 1983 and § 1988(a).

---

[12] Plaintiff has not alleged a state law wrongful death claim.

As previously discussed, in order for Plaintiff to establish a claim under § 1983, she must prove "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 Fed. Appx. 849, 850-851 (11th Cir. 2012). The Court has found that these Defendants are state actors for purposes of this action.  See Free, 887 F.2d at 1557 ("a sheriff is an executive officer of the state."); Carr, 916 F.2d at 1526 ("The deputy sheriff is the alter ego of the sheriff.").  Thus, to establish her § 1983 wrongful death claim, Plaintiff must establish that each named Defendant personally acted to deprive Yates of a constitutional right (as set forth in Counts I-X), which caused his death.

However, the Court has already found that Plaintiff's allegations fail to state a claim for any constitutional or statutory violation against these Defendants.  Thus, Plaintiff necessarily fails to state a § 1983 claim for wrongful death based upon those alleged violations.  See Estate of Gilliam ex rel. Waldroup v. City of Prattville, 639 F.3d 1041, 1047 (11th Cir. 2011)("when a constitutional violation *actually causes* the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala. Code § 6-5-410.")(emphasis added). There being no constitutional violation plausibly alleged here, Plaintiff's wrongful death claim has no violation upon which to

proceed.  Therefore, Defendants' Motion to Dismiss Count Eleven of the Second Amended Complaint is due to be granted.


### G. § 1983 Conspiracy (Counts Six and Ten).

As best the Court can discern, in Counts Six and Ten, Plaintiff alleges that all named Defendants conspired to violate Yates' constitutional rights, as alleged in each of the counts in the Second Amended Complaint, thereby directly and proximately causing Yates' death.  (Doc. 131 at ¶¶ 65-69, 91-95).  However, these allegations fail to state a claim for conspiracy against these Defendants for several reasons.

First, "to sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of [his] constitutional rights." Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008)(quoting GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1370 (11th Cir. 1998)(internal quotation marks omitted)).  "In addition, the plaintiff must prove that the defendants reached an understanding to deny the plaintiff's rights." Id. (citing Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990)).  Indeed, "[t]o avoid dismissal on a motion to dismiss, a plaintiff must make particularized allegations that a conspiracy exists." Brown v. Williams, 2021 U.S. Dist. LEXIS 110584, *26, 2021 WL 2414100, *9 (S.D. Fla. June 14, 2021)(dismissing conspiracy

claim where plaintiff failed to allege the denial of an underlying constitutional right or that defendants reached an understanding to deny plaintiff his rights)(citing Hansel v. All Gone Towing Co., 132 Fed. Appx. 308, 309 (11th Cir. 2005)). "In cases alleging civil rights violations and conspiracy, more than mere conclusory notice pleading is required for a complaint to survive a motion to dismiss." Robinson v. McNeese, 2020 U.S. Dist. LEXIS 208949, *10, 2020 WL 6566174, *6 (M.D. Ga. Nov. 9, 2020), *reconsideration denied*, 2020 WL 7232881 (M.D. Ga. Dec. 8, 2020)(internal quotation marks and brackets omitted)(citing Fullman v. Graddick, 739 F.2d 553, 556–57 (11th Cir. 1984)).

Here, Plaintiff alleges in a conclusory fashion that all of the Defendants conspired with one another to violate Yates' constitutional rights, as set forth in the various counts in the Second Amended Complaint. However, the Court has already found that Plaintiff's allegations in the Second Amended Complaint are insufficient to state a claim for any constitutional or statutory violation against these Defendants; thus, there is no underlying constitutional violation upon which to base a conspiracy claim. Further, even assuming a constitutional violation, there are no factual allegations in the Second Amended Complaint from which the Court could discern an agreement between the SWAT Team Defendants and anyone else to violate Yates' constitutional rights. "It is not enough to simply aver in the complaint that a conspiracy

existed." <u>Robinson</u>, 2020 WL 6566174  at *6 (citing <u>Fullman</u>, 739 F.2d at 557).  Here, Plaintiff's allegations do just that.  Where, as here, a plaintiff does not plead sufficient facts to show a plausible communication between the co-conspirators about the intended conspiracy, including facts concerning when or how the conspirators reached an agreement to violate the plaintiff's rights, the allegations are insufficient to survive a motion to dismiss.  <u>See</u> <u>Robinson</u>, 2020 WL 6566174  at *6.

For each of the foregoing reasons, Plaintiff's allegations fail to state a claim for conspiracy against these Defendants upon which relief could be granted.  Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claim (Counts Six and Ten) is due to be granted.[13]

## IV. **Conclusion**

---

[13] Having found that the SWAT Team Defendants are entitled to qualified immunity on each of Plaintiff's claims and/or that Plaintiff's allegations fail to state a claim upon which relief could be granted, the Court need not address any additional arguments proffered by these Defendants.  Nevertheless, the Court notes that, with respect to Defendants' abatement argument, Plaintiff has alleged in the Second Amended Complaint that each of Defendants' constitutional and statutory violations proximately caused Yates' death.  Thus, any discussion as to whether Plaintiff's claims have abated is not appropriate at this time. <u>See</u> <u>Sims v. Marion Cnty., Alabama</u>, 2019 U.S. Dist. LEXIS 72468, 2019 WL 1921960, *2 (N.D. Ala. Apr. 30, 2019)("when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute.").

For the reasons discussed herein, the SWAT Team Defendants'
Motion to Dismiss (Doc. 142) is **GRANTED.**

**DONE** this **2nd** day of **DECEMBER, 2021.**

**s/Kristi K. DuBose**
**UNITED STATES DISTRICT JUDGE**