IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AIMEE LYNNE YATES, *as Personal*&ast;
*Representative of the Estate of*&ast;
*Robert   Lewis   Yates,   Jr.,*&ast;
*Deceased,*                     &ast;
                                &ast;
     **Plaintiff,**              &ast; CIVIL ACTION NO. 20-00131-KD-B
                                &ast;
**vs.**                         &ast;
                                &ast;
SHERIFF HUEY HOSS MACK, *et al.,*

     **Defendants.**


## ORDER

This case is before the Court on Defendants Robert Correa and Greg Smith's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 140), and Sheriff Huey Hoss Mack's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 138). For the reasons stated herein, that Defendants' motions (Docs. 138, 140) are **GRANTED.**

### I. Background Facts[1]

Plaintiff Aimee Lynne Yates ("Plaintiff"), as Personal Representative of the estate of Robert Lewis Yates, Jr. ("Yates"), deceased, commenced this action on March 4, 2020. (Doc. 1). In

---

[1] For purposes of resolving Defendants' motion to dismiss, the Court accepts as true the facts alleged in Plaintiff's amended complaint.

her Second Amended Complaint filed on March 10, 2021 (Doc. 131), Plaintiff asserts the following claims against Defendants R. Correa, Smith, and Mack:[2]  (Counts One and Two) § 1983 Deliberate Indifference to Serious Medical Needs and Safety; (Count Three) § 1983 Excessive Force;[3] (Counts Four and Five) § 1983 Unlawful Search and Seizure; (Counts Six and Ten) Conspiracy; (Count Seven) § 1983 Failure to Intervene; (Count Eight) Supervisor Liability against Defendant Mack; (Count Nine) Disability Discrimination - ADA; and (Count Eleven) § 1983 Wrongful Death.

According to Plaintiff, on March 5, 2018, Deputies R. Correa, Smith, and Mack caused the unlawful death of her father, Robert Lewis Yates, Jr., as a result of their involvement in the execution of an Alias Writ of Possession on Yates's mobile home residence, located in Fairhope, Alabama, and a subsequent standoff with police during which officers of the Baldwin County Sheriff's Office SWAT Team shot and killed the decedent.[4] (Doc. 131).  The specific factual allegations related to these Defendants are discussed in more detail below.

---

[2] Plaintiff's claims against the other Defendants are addressed by separate order.

[3] While it is unclear if Plaintiff attempts to assert an excessive force claim against Defendants R. Correa and Smith, for purposes of this motion, the Court will assume that she does.

[4] A detailed recitation of the factual allegations of the Second Amended Complaint are also set forth in the Court's order dated December 16, 2021. (Doc. 157).

In response to Plaintiff's Second Amended Complaint, Defendants R. Correa, Smith, and Mack have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds including qualified immunity, absolute quasi-judicial immunity, failure to state a claim upon which relief can be granted, and abatement. (Docs. 138, 140). The motions have been fully briefed and are now ready for resolution.

## II. **Standard of Review**

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . ., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). The plaintiff must plead "enough facts to state a claim that is plausible on its face." Id. at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." Id.

"[U]nsupported conclusions of law or of mixed fact and law" will not defeat a Rule 12(b)(6) motion for dismissal. Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

### III. **Analysis**

According to Plaintiff's Second Amended Complaint, on March 5, 2018, Deputy Robert Correa arrived at Yates' residence in connection with on-going eviction proceedings brought by Yates' landlord, Defendant Don DeBourge. (Doc. 131 at ¶¶ 14-16). A court order and "writ of possession" from the Baldwin County District Court authorized Deputy R. Correa to "stand by to ensure no breach of the peace if the plaintiff (Don DeBourge) decide[d to remove the mobile home at that time."[5]  (Id. at ¶ 12). Neither the writ nor the court order authorized Deputy R. Correa to enter Yates' residence. (Id.). Before approaching the residence, Deputy R. Correa decided to call for backup, and Deputy Greg Smith arrived to assist. (Id. at ¶ 14). Deputies R. Correa and Smith, along with the landlord, Don DeBourge, and his son, Tim DeBourge,

---

[5] Three days earlier, Deputy R. Correa had posted a copy of the "writ of possession" on Yates' door. (Doc. 131 at ¶ 13).

approached Yates' residence. (Id.).  Deputies R. Correa and Smith knocked on the trailer and the door multiple times, and announced, "Sheriff's office," with no response. (Id. at ¶ 14-15).  The deputies then allowed Don and Tim DeBourge to knock down the door with a crowbar and a sledgehammer.  (Id. at ¶ 16).  Deputies R. Correa and Smith then entered the residence, without a warrant, with their weapons drawn and announced, "Sheriff's Office." (Id.).  When Deputies R. Correa and Smith entered the residence, Yates fired a shot from an unknown location and direction inside the residence. (Id. at ¶¶ 16, 20).  Deputies R. Correa and Smith fled from the residence and fired shots in the direction of the house while taking cover outside.  (Id. at ¶¶ 16-18).

Deputy Justin Correa[6] arrived on the scene after the initial confrontation between Yates and Deputies R. Correa and Smith. Plaintiff alleges that Deputies R. Correa and Smith falsely reported to Deputy Justin Correa and the other arriving SWAT Team members that Yates had fired a shot directly at Deputy Robert Correa's head.  (Id. at ¶¶ 19-21).

Thereafter, a standoff of several hours ensued.  (Id. at ¶¶ 21-28).  During that time, the SWAT Team members used a military Bearcat to breach Yates' mobile home residence and fired tear gas

---

[6] Deputy Justin Correa is the son of Deputy Robert Correa.  (Doc. 131 at ¶ 20).

and flash bang grenades in unsuccessful attempts to extricate Yates from the residence.  (Id. at ¶¶ 21-22, 27).  Inside the residence, Yates, who had a history of mental illness, phoned 911 and expressed his belief that the DeBourges and their friends at the Sheriff's Department were trying to kill him.  (Id. at ¶ 22). Yates requested help from the FBI.  (Id.).  Plaintiff alleges that an FBI agent, as well as herself and Yates' sister, were denied access to Yates during the standoff, which prevented them from deescalating the situation.  (Id. at ¶¶ 22-23).  Plaintiff alleges that, at approximately 6:30 p.m., the SWAT team entered the residence.  (Id. at ¶¶ 29-30).  When they did so, Yates "fir[ed] his shotgun at an advancing steel shield" being carried by a SWAT Team Member.  (Id. at ¶ 31).  The SWAT Team members responded to Yates' gunshot blast by firing approximately 100 rounds, three of which struck and mortally wounded Yates.  (Id.).  Yates was unconscious and "barely alive" when medics reached him at approximately 6:30 p.m., and he died on the scene.  (Id. at ¶ 34).

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he [or she] must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 Fed. Appx. 849, 850-851 (11th Cir. 2012).  There is no question that the Defendants R. Correa and Smith, as Baldwin County Sheriff's deputies, and Sheriff Mack were state actors for purposes of this

action.   See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989)("Under the plain language of the Constitution of Alabama, a sheriff is an executive officer of the state."); Carr v. City of Florence, Ala., 916 F.2d 1521, 1526 (11th Cir. 1990)("The deputy sheriff is the alter ego of the sheriff.").   Thus, to establish her asserted claims, Plaintiff must establish that each named Defendant personally acted to deprive Yates of a constitutional right.

Moreover, Defendants assert that they are entitled to qualified immunity with respect to each of Plaintiff's claims.   In order to receive qualified immunity, the Defendants must first show that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred.   Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).   In the present case, there is no genuine dispute that Defendants Sheriff Mack and Deputies R. Correa and Smith were acting in their discretionary capacity as law enforcement officers with respect to the incident alleged in the Second Amended Complaint, which ultimately resulted in Yates' death.   (Doc. 131).   Although Plaintiff alleges that Yates told the 911 operator during the standoff that the "friends" of the DeBourges from the Sheriff's Office were trying to kill him, Plaintiff also alleges that the DeBourges did not inform the Sheriff's deputies of "the extent of the bad blood between them and Mr. Yates" and that the DeBourges' conduct placed both the

8

officers and Yates at serious risk of harm.  (Id. at ¶ 14, 22).
Considering all of the circumstances alleged, the Court finds that
these Defendants have established that they were acting within
their discretionary authority with respect to the matters alleged
in the Second Amended Complaint.

Once a defendant establishes that he was acting within his
discretionary authority, "the burden shifts to the plaintiff to
show that qualified immunity is not appropriate."  Lee, 284 F.3d
at 1194 (citations omitted).  The Supreme Court has set forth a
two-part test for evaluating a claim of qualified immunity.  As a
"threshold question," a court must ask, "[t]aken in the light most
favorable to the party asserting the injury, do the facts alleged
show the officer's conduct violated a constitutional right?"  Lee,
284 F.3d at 1194 (quoting Saucier v. Katz, 533 U.S. 194 (2001)).
"If a constitutional right would have been violated under the
plaintiff's version of the facts, the court must then determine
'whether the right was clearly established.'"  Id. (citations
omitted).  This second inquiry "must be undertaken in light of the
specific context of the case, not as a broad general proposition."
Id.

"Qualified immunity 'gives government officials breathing
room to make reasonable but mistaken judgments,' and 'protects all
but the plainly incompetent or those who knowingly violate the
law.'"  Messerschmidt v. Millender, 565 U.S. 535, 546 (2012)

9

(citations omitted).  The analysis "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." <u>Id.</u> (citations and internal quotation marks omitted).  Thus, in order to overcome a public official's entitlement to qualified immunity, a plaintiff must be able to establish not only that the public official acted wrongfully, but also be able to point the Court to law existing at the time of the alleged violation that provided "fair warning" that the conduct of the defendants was illegal. <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1301 (11th Cir. 2003).

The Court now considers each of Plaintiff's claims to determine whether qualified immunity applies with respect to these Defendants.

**A. <u>Section 1983 Wrongful Death</u>**

In Count Eleven of the Second Amended Complaint, Plaintiff asserts a § 1983 wrongful death claim against all of the named Defendants, including Defendants R. Correa, Smith, and Mack.  (Doc 131).  "[I]n the context of suits commenced by the personal representative of a decedent's estate, and alleging that constitutional violations under color of Alabama law caused the death of the plaintiff's decedent ... a § 1983 claim asserted through § 1988(a) 'incorporates' Alabama's wrongful death statute for the purpose of claiming damages from the state actors responsible for the death." <u>Waites v. Limestone Corr. Facility</u>,

2017 WL 2797124, *16 (N.D. Ala. Jun. 27, 2017) (citations omitted).
Here, Plaintiff alleges that the conduct of the Defendants, as
alleged in the various counts of the Second Amended Complaint,
resulted in Yates' wrongful death.  The Court considers each count
of the Second Amended Complaint separately.

### 1. Excessive Force

In Count Three of the Second Amended Complaint, Plaintiff
asserts a Fourth Amendment excessive force claim arising out of
the SWAT Team's use of teargas, flash grenades, and a Bearcat to
attempt to extract Yates from his residence and the use of deadly
force when the SWAT Team entered the residence and shot Yates after
Yates opened fire on an approaching SWAT Team member.  (Doc. 131
at ¶¶ 46-52).  To establish a Fourth Amendment excessive force
claim, a plaintiff must show that the Defendant's use of force was
not "objectively reasonable in light of the facts and circumstances
confronting [him]," Graham v. Connor, 490 U.S. 386, 397
(1989)(internal quotation marks omitted), and that the use of force
caused the decedent's death.  Although Plaintiff asserts an
excessive force claim arising out of the SWAT Team's use of force,[7]
the Second Amended Complaint contains no factual allegations
demonstrating that these Defendants (R. Correa, Smith, or Mack)

---

[7] The Court addressed Plaintiff's claims against the SWAT Team
Defendants in its order dated December 2, 2021.  (Doc. 156).

were personally involved in the use of force by the SWAT Team that caused Yates' death or that they were involved in any other use of force against Yates' person which resulted in his death. Although Plaintiff alleges that Defendants R. Correa and Smith authorized the DeBourges to knock down the door to Yates' residence, as stated, there are no allegations that Deputies R. Correa or Smith (or the DeBourges) used any force against Yates' person, much less excessive force. Thus, Plaintiff's factual allegations fail to state a plausible excessive force claim against these Defendants.

### 2. <u>Failure to Intervene</u>

In Count Seven of the Second Amended Complaint, Plaintiff asserts a claim against Defendants R. Correa, Smith, and Mack for failure to intervene in the SWAT Team's use of force against Yates, which resulted in Yates' death. (Doc. 131 at ¶¶ 75-76). In order to state a claim for failure to intervene, Plaintiff must "identify [a] constitutional right that [the Defendants] failed to protect." <u>Roberts v. Malone</u>, 2018 U.S. Dist. LEXIS 51687, *17, 2018 WL 1518349, *6 (N.D. Ala. Mar. 28, 2018)(dismissing failure to intervene claim "because Plaintiff did not identify any constitutional right that Defendant Carter failed to protect — which is itself necessary to a failure to intervene claim."); <u>Sebastian v. Ortiz</u>, 918 F.3d 1301, 1312 (11th Cir. 2019)("Plainly, an officer cannot be liable for failing to stop or intervene when

there was no constitutional violation being committed.")(citations omitted).

In its order dated December 2, 2021, this Court found that the allegations of the Second Amended Complaint failed to state a claim against the SWAT Team Defendants for excessive force, and that, under the circumstances alleged by the Plaintiff, there could be no question that the SWAT Team Defendants' actions in attempting to extricate Yates from his residence and ultimately using deadly force was reasonable and justifiable. (Doc. 156 at 19-21). Thus, to the extent that Plaintiff bases her failure to intervene claim against Defendants R. Correa, Smith, and Mack on the SWAT Team's actions and alleged use of excessive force, those claims are due to be dismissed, as there is no constitutional violation by the SWAT Team upon which to base the failure to intervene claim against these Defendants. Likewise, as discussed herein, Plaintiff's allegations fail to demonstrate any other constitutional violation upon which to base a failure to intervene claim against these Defendants.[8]

The Court has considered Plaintiff's argument in opposition to Defendants' motion to dismiss her failure to intervene claim

---

[8] The Court also held that Plaintiff's allegations in the Second Amended Complaint failed to state a claim against the SWAT Team Defendants for unlawful search or seizure or deliberate indifference to serious medical needs in violation of Yates' constitutional rights. (Doc. 156 at 32).

that Defendants R. Correa and Smith misrepresented to other officers on the scene that Yates had fired his gun directly at R. Correa's head when he and Deputy Smith initially entered the residence, which Plaintiff alleges led to Yates' death by the SWAT Team because it made Yates appear to be more dangerous than he actually was. (Doc. 131 at ¶¶ 19, 23-24, 33, 62, 66, 72, 93). However, assuming Plaintiff's allegations as true, they do not plausibly demonstrate a causal connection between the alleged misrepresentation about the direction and target of Yates' initial gunfire and his death, hours later, by the SWAT Team – which came about after Yates fired a shotgun directly at an approaching SWAT Team member and was killed by return fire.

Thus, for each of these reasons, Plaintiff's allegations fail to state a plausible claim for failure to intervene.

### 3. **Deliberate Indifference**

Next, in Counts One and Two of the Second Amended Complaint, Plaintiff alleges that Defendants R. Correa, Smith, and Mack were deliberately indifferent to Yates' serious medical need "in that they either knew or should have known Yates was in serious need of medical treatment before and after the SWAT members used the Bearcat, teargas, and flashbangs to flush him out [of] his home, yet refused to allow his family members, medical personnel, and others he was frantically reaching out for to help, to intervene or have any contact with him before or after he was ultimately

14

killed by SWAT team members upon their violent entry into his home." (Doc. 131 at ¶¶ 38-39). Plaintiff alleges that these Defendants deprived Yates of necessary medical treatment which directly and proximately caused his death. (Id. at ¶¶ 38-41).

Plaintiff further alleges that Defendants R. Correa and Smith were deliberately indifferent to Yates' health and safety in that they "failed to follow national standards of care for law enforcement, including policies and procedures in place, in regard to interacting with citizens with known mental illnesses. They countenanced the DeBourges use of a crowbar and sledgehammer to beat down and destroy Yates's front door. They forcefully and unlawfully entered with excessive force with deliberate indifference to Yates's mental health in serious disregard for reasonable policies and procedures relating to persons with mental health that should have been in place and followed and enforced. They chose the worst path to approach a person with known mental illness and paranoia. The officers should have obtained a mental health evaluation of Mr. Yates and should only have used a nonviolent method in their attempted interactions with him." (Doc. 131 at ¶¶ 43-45).

Plaintiff's deliberate indifference claims in Counts One and Two derive from the Fourteenth Amendment's guarantee of due process; however, the applicable standard is that applied under the Eighth Amendment's protection against "cruel and unusual

punishments." Hinson v. Bias, 927 F.3d 1103, 1121 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 233, 208 L. Ed. 2d 14 (2020); Obremski v. Armor Corr. Health Servs., Inc., 467 F. Supp. 3d 1265, 1275 (S.D. Fla. 2020)("Because Mr. Obremski was a pretrial detainee, the Plaintiff's § 1983 claims sound, not in the Eighth Amendment's protection against 'cruel and unusual punishments,' but rather in the Fourteenth Amendment's guarantee of due process. . . . However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.")(citations omitted).

"Among other functions, the Eighth Amendment prohibits 'cruel and unusual punishments.'" Hinson, 927 F.3d at 1121–23 (quoting U.S. Const. amend VIII). "Deliberate indifference of a medical need violates the Eighth Amendment because it amounts to 'the unnecessary and wanton infliction of pain. . . .'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104, (1976)).

"To state a custodial deliberate indifference to serious medical needs claim under the Fourteenth Amendment, a plaintiff must allege the following: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Burke v. Miami-Dade Cnty., 2017 U.S. Dist. LEXIS 150925, *18, 2017 WL 4119625, *6 (S.D. Fla. Sept. 18, 2017)(citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306 (11th Cir. 2009)). "The first

prong, 'a serious medical need,' is objective." Hammonds v. Theakston, 833 Fed. Appx. 295, 300 (11th Cir. 2020), *cert. denied*, 2021 WL 4507658 (U.S. Oct. 4, 2021)(citations omitted). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "For either of these situations, the medical need must be one that, *if left unattended,* pos[es] a substantial risk of serious harm." Id. (emphasis added)(citations and internal quotation marks omitted).

"The 'deliberate indifference' prong, on the other hand, is subjective. Id. (citations omitted). "To meet the onerous deliberate indifference standard, . . . a plaintiff must demonstrate (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Id. (citations and internal quotation marks omitted). "The Constitution does not require that a detainee's medical care be 'perfect, the best obtainable, or even very good.'" Id. (citations omitted). "Rather, for treatment (or lack thereof) to amount to deliberate indifference, it must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. (citations omitted). Finally, in order to state a claim for deliberate indifference to a serious medical need, Plaintiff must show that

the defendant's deliberate indifference and the plaintiff's injury were causally related. Hinson, 927 F.3d at 1121-23 (citing Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019)).

A claim for deliberate indifference where the object of the alleged constitutional deprivation is *not* in custody is subject to a different deliberate indifference standard than that applied to custodial cases. See McCants v. City of Mobile, 2017 WL 4456727, *5 (S.D. Ala. Oct. 4, 2017), *aff'd,* 752 Fed. Appx. 744 (11th Cir. 2018)). "To state a deliberate indifference claim when not in custody, a plaintiff must at least allege deliberate indifference to an extremely great risk of serious injury to someone in the plaintiff's position." Burke, 2017 U.S. Dist. LEXIS 150925 at *20, 2017 WL 4119625 at *7 (citing Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1306 (11th Cir. 2003)). The Eleventh Circuit has held that "[s]tate and local government officials violate the substantive due process rights of individuals *not* in custody *only* when those officials cause harm by engaging in conduct that is arbitrary, or conscience shocking, in a constitutional sense." Burke, 2017 U.S. Dist. LEXIS 150925 at *18, 2017 WL 4119625 at *7 (citing White v. Lemacks, 183 F.3d 1253, 1259 (11th Cir. 1999)(emphasis added, internal quotation marks omitted)); see also McCants, 2017 WL 4456727 at *5 ("in non-custodial circumstances, only a purpose to cause harm unrelated to the legitimate object of law enforcement satisfies the element of

arbitrary conduct shocking to the conscience that is necessary for a due process violation.")(citing Daniel v. Hancock Cnty. School Dist., 626 Fed. Appx. 825, 830 (11th Cir. 2015)).

Here, Plaintiff appears to allege that, even before entering Yates' residence, Defendants R. Correa and Smith had a duty to provide necessary medical treatment for Yates' known mental illness and that these Defendants were deliberately indifferent to that need. Plaintiff alleges that Deputy R. Correa ran a background check on Yates when he arrived at the residence and "became aware or reasonably should have become aware of Yates' history of mental illness including paranoia when he looked Yates up on his squad car computer." (Doc. 131 ¶ 14). Thus, Plaintiff alleges, Defendants should have obtained a mental health evaluation on Yates "and should only have used a nonviolent method in their attempted interactions with him." (Id. at ¶ 43). Applying the non-custodial standard to these allegations, even if true, they do not demonstrate an intent by these Defendants to cause Yates harm unrelated to the legitimate object of law enforcement, nor do they demonstrate conduct that shocks the conscience in a constitutional sense. Therefore, Plaintiff fails to state a plausible claim for non-custodial deliberate indifference to Yates' medical need, health, or safety by these Defendants prior to entering Yates' residence.

Plaintiff also alleges that these Defendants were deliberately indifferent to Yates' serious medical needs during the standoff.[9]  However, Plaintiff's allegations demonstrate that all of the Defendants on the scene, including Mack, R. Correa, and Smith, were precluded by Yates himself from providing any medical care to Yates at any time during the standoff before he was shot. Plaintiff's allegations demonstrate that Yates refused to come out of his home for medical assistance, and he refused to peaceably allow law enforcement officers to enter his home for medical assistance to be rendered.  (Doc. 131 at ¶¶ 12-18).  Therefore, Plaintiff fails to plausibly state a claim against these Defendants for deliberate indifference to Yates' serious medical needs, health, or safety at any time between the initial entry into his residence by Deputies R. Correa and Smith and when Yates was shot.

Plaintiff also claims that these Defendants were deliberately indifferent to Yates' serious medical needs after he was shot.

---

[9] The Court assumes for purposes of this motion that Yates was in custody after Deputies R. Correa and Smith initially entered his home.  See McCants v. City of Mobile, 2017 WL 4456727, *4 (S.D. Ala. Oct. 4, 2017), aff'd, 752 Fed. Appx. 744 (11th Cir. 2018)("[F]or a seizure to occur, a person must not be free to disregard the police and go on about his or her business. . . . Courts consider 'whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.'")(citations omitted)).

However, Plaintiff's own allegations establish that Yates received virtually immediate medical attention from medics at the scene. As the Court previously found in its order dated December 2, 2021, with regard to the SWAT Team Defendants, Plaintiff's allegations establish that, although Yates was "barely alive" after he was shot, he was immediately treated and attended by medics at the scene but succumbed to his wounds. (Doc. 156 at 27). Plaintiff does not allege that the emergency medical care provided by the medics was so cursory as to amount to no treatment at all, or even that it was inadequate. Because Plaintiff has failed to allege facts which would establish that Yates' serious medical needs after he was shot were left unattended, she fails to establish the objective component of her deliberate indifference claim. In addition, Plaintiff fails to establish the subjective component of her deliberate indifference claim by showing: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. See Hammonds, 833 Fed. Appx. at 300. Although Plaintiff alleges that "Yates was not rushed to the emergency room by ambulance and was not transported by life saver helicopter to the hospital" (Doc. 131 at ¶ 34), she does not allege that the decision (ostensibly by these Defendants) to allow medics to treat Yates at the scene and/or to not call an ambulance or a helicopter to transport Yates to a hospital were deliberate attempts by these Defendants to punish

Yates or were so grossly incompetent, inadequate, or excessive as
to shock the conscience or to be intolerable to fundamental
fairness. Hammonds, 833 Fed. Appx. at 300. Because Plaintiff has
failed to allege facts which would establish *some purposeful or
intentional denial* of necessary medical treatment by these
Defendants or that the medical treatment that was given was so
*grossly incompetent* as to shock the conscience, she fails to
establish the subjective component of her deliberate indifference
claim as well. See Sasser v. Chase, 2008 U.S. Dist. LEXIS 120490,
*8, 2008 WL 4426034, *4 (M.D. Ga. Sept. 25, 2008)("the question of
whether *additional* diagnostic techniques *or forms of treatment* are
indicated are classic examples of matters for medical judgment and
that medical malpractice does not become a constitutional
violation merely because the patient is a prisoner. . . . [I]n
order to prevail in a § 1983 case involving allegations of
deliberate indifference to serious medical needs, a plaintiff must
show more than mere negligence or error in judgment; there must be
*some purposeful or intentional denial* of necessary medical
treatment or at least the medical treatment that was given must be
so *grossly incompetent* as to shock the conscience.")(emphasis
added in part)(citing Estelle v. Gamble, 429 U.S. 97, 107 (1976);
Mandel v. Doe, 888 F.2d 783 (11th Cir. 1989)); Blanton v. Howard,
2016 U.S. Dist. LEXIS 168776, *5, 2016 WL 7116128, *3 (N.D. Ga.
Nov. 7, 2016), *report and recommendation adopted*, 2016 WL 7104590

(N.D. Ga. Dec. 6, 2016)("Plaintiff does not state deliberate indifference claims against Defendants because there is no indication that they prevented emergency medical technicians from treating him after his arrest. . . . Accordingly, Plaintiff fails to state any deliberate indifference claims.").

Last, Plaintiff does not allege facts to establish causation, that is, that Yates would have lived if Defendants had called an ambulance or helicopter to transport him to a hospital, as opposed to the treatment that he was given on the scene by medics, or if Defendants had provided some medical care other than that provided. Thus, Plaintiff's allegations fail to state a claim for deliberate indifference for this reason as well.

### 4. Conspiracy

Next, in Counts Six and Ten of the Second Amended Complaint, Plaintiff alleges that all of the named Defendants, including Defendants R. Correa, Smith, and Mack, conspired to violate Yates' constitutional rights (as alleged in each of the counts in the Second Amended Complaint), thereby directly and proximately causing Yates' death. (Doc. 131 at ¶¶ 65-69, 91-95). However, Plaintiff's allegations fail to plausibly state a claim for conspiracy against these Defendants for several reasons.

First, "[t]o sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of [his] constitutional rights." Hadley v. Gutierrez, 526 F.3d 1324, 1332

(11th Cir. 2008)(quoting <u>GJR Invs., Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1370 (11th Cir. 1998)(internal quotation marks omitted)). "In addition, the plaintiff must prove that the defendants reached an understanding to deny the plaintiff's rights." <u>Id.</u> (citing <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 469 (11th Cir. 1990)); <u>see also</u> <u>Brown v. Williams</u>, 2021 U.S. Dist. LEXIS 110584, *26, 2021 WL 2414100, *9 (S.D. Fla. June 14, 2021)(dismissing conspiracy claim where plaintiff failed to allege the denial of an underlying constitutional right or that defendants reached an understanding to deny plaintiff his rights)(citing <u>Hansel v. All Gone Towing Co.</u>, 132 Fed. Appx. 308, 309 (11th Cir. 2005)). "In cases alleging civil rights violations and conspiracy, more than mere conclusory notice pleading is required for a complaint to survive a motion to dismiss." <u>Robinson v. McNeese</u>, 2020 U.S. Dist. LEXIS 208949, *10, 2020 WL 6566174, *6 (M.D. Ga. Nov. 9, 2020), *reconsideration denied*, 2020 WL 7232881 (M.D. Ga. Dec. 8, 2020)(internal quotation marks and brackets omitted)(citing <u>Fullman v. Graddick</u>, 739 F.2d 553, 556–57 (11th Cir. 1984)).

Here, Plaintiff alleges in a conclusory fashion that all of the Defendants conspired with one another to violate Yates' constitutional rights, as set forth in the various counts in the Second Amended Complaint. However, the Court has already found that Plaintiff's allegations are insufficient to state a claim for

24

any constitutional violation against these Defendants; thus, there is no underlying constitutional violation upon which to base a conspiracy claim.

Further, even assuming a constitutional violation, there are no factual allegations in the Second Amended Complaint from which the Court could discern an agreement between Defendants R. Correa, Smith, or Mack and anyone else to violate Yates' constitutional rights. "It is not enough to simply aver in the complaint that a conspiracy existed." Robinson, 2020 WL 6566174 at *6 (citing Fullman, 739 F.2d at 557). Here, Plaintiff's allegations do just that. Where, as here, a plaintiff does not plead sufficient facts to show a plausible communication between the co-conspirators about the intended conspiracy, including facts concerning when or how the conspirators reached an agreement to violate the plaintiff's rights, the allegations are insufficient to survive a motion to dismiss. See Robinson, 2020 WL 6566174 at *6; accord Davis v. Alabama Dept. of Transp., 2017 WL 4391730, *17 (M.D. Ala. Aug. 2, 2017).

In sum, there are no factual allegations in the Second Amended Complaint from which the Court could discern an agreement between these Defendants or any other persons to violate Yates' constitutional rights. Indeed, Plaintiff's allegations fail to establish any violation of Yates' constitutional rights. Thus, Plaintiff's allegations fail to plausibly state a claim for

25

conspiracy against these Defendants upon which relief could be granted.

### 5. **Americans with Disabilities Act (ADA)**

In Count Nine of the Second Amended Complaint, Plaintiff alleges that Yates suffered from depression and "other recognized disabilities" under the Americans with Disabilities Act and that by denying him "contact with his family, physicians, mental-health professional personnel, and others including the F.B.I." during the standoff, the Defendants caused him to suffer mental anguish, bodily injury, and death, which constituted "disability discrimination under the Americans with Disabilities Act." (Doc. 131 at ¶¶ 84-90). Plaintiff asserts this claim against these Defendants in their *individual capacities only*. (Doc. 131 at ¶¶ 2, 4).

"It is settled that Title II of the ADA does not permit individual capacity suits."[10]  Smith v. Rainey, 747 F. Supp. 2d 1327, 1340 (M.D. Fla. 2010)(citing Rylee v. Chapman, 316 Fed. Appx. 901, 905 (11th Cir. 2009); Badillo v. Thorpe, 158 Fed. Appx. 208, 211 (11th Cir. 2005)("[T]here is no individual capacity liability under Title II of the ADA ....")); see also Chaney v. Community Hospice of Baldwin Cnty., 2019 U.S. Dist. LEXIS 19951, *11, 2019

---

[10] While not specified in the Second Amended Complaint, Plaintiff refers to Title II of the ADA in her brief. (Doc. 147 at 20).

WL 489115, *4 (S.D. Ala. Feb. 7, 2019)("the Eleventh Circuit has found that employees are not subject to individual liability under the ADA. . . ."); <u>Buford v. Alabama Dep't of Corrs.</u>, 2020 U.S. Dist. LEXIS 20281, *2, 2020 WL 587647, *1 (S.D. Ala. Feb. 6, 2020)("[T]here is no individual capacity liability under Title II of the ADA....").  Title II does permit official capacity suits against state officials for prospective injunctive relief.  <u>See</u> <u>Smith</u>, 747 F. Supp. 2d at 1341.

Because Plaintiff has alleged an ADA claim against these Defendants in their individual capacities only, her allegations fail to state a claim upon which relief could be granted.

## 6. **Supervisor Liability**

In Count Eight of the Second Amended Complaint, Plaintiff alleges that Defendant Sheriff Mack was the supervising official for law enforcement purposes of his office in Baldwin County, that he had a duty to properly supervise and train Deputies R. Correa and Smith (as well as his other deputies), and that his "culture" of not enforcing policies and training resulted in Yates' death from the various constitutional and statutory violations alleged in the Second Amended Complaint.  (Doc. 131 at ¶¶ 78-83).  The law is settled that "a § 1983 action may not be premised on a theory of supervisory liability or *respondeat superior*."  <u>Kelley v.</u> <u>Jacksonville Sheriff's Off.</u>, 2021 WL 1312733, *4 (M.D. Fla. Apr. 8, 2021)(citing <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir.

2003), *abrogated in part on other grounds*, Randall v. Scott, 610 F.3d 701 (11th Cir. 2010)). "Absent allegations of a supervisor's personal participation, or otherwise demonstrating a causal connection between a supervisor's actions and the alleged constitutional deprivation, 'supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates.'" Id. (internal quotation marks and citation omitted). "There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." Id. (quoting Knight through Kerr v. Miami-Dade Cnty., 856 F.3d 795, 821 (11th Cir. 2017)(citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)); see also Taylor v. Taylor, 649 Fed. Appx. 737, 747 (11th Cir. 2016)("A causal connection may be established by showing that the supervisor directed a subordinate to act unlawfully or knowingly failed to prevent a subordinate from acting unlawfully. . . . [However,] [f]or a supervisor to be liable, there must be an underlying 'constitutional or statutory violation.'")(citations omitted)); Wilson v. Stewart, 2021 WL 3439398, *15 (S.D. Ala. Aug. 5, 2021)("the parties agree that there can be no supervisory or vicarious liability on the part of [the supervising Defendant] if there was no underlying violation.").

Here, Plaintiff seeks to hold Sheriff Mack liable for his department's alleged policy of failing to properly train his deputies which, Plaintiff alleges, led to his deputies'

unconstitutional acts which caused Yates' death.  However, because the Court has found that Plaintiff's Second Amended Complaint fails to state a claim for any constitutional violation by the Defendant deputies, there is no underlying constitutional violation upon which to base a claim for supervisory liability against Defendant Mack.[11]  Accordingly, Plaintiff's allegations of supervisory liability against Defendant Mack fail to state a claim upon which relief could be granted.

**B.  Abatement of Claim for Unlawful Search and Seizure**

In Counts Four and Five of the Second Amended Complaint, Plaintiff asserts claims against all of the Defendants, including Defendants R. Correa, Smith, and Mack[12] for unlawful search and seizure arising out of the initial entry into Yates' residence by Deputies R. Correa and Smith after they authorized the DeBourges to knock down the door to Yates' residence.  In this Court's order dated December 16, 2021, the Court held that Plaintiff's allegations in the Second Amended Complaint failed to plausibly

---

[11] In addition, the Court has found herein that the allegations of Plaintiff's Second Amended Complaint fail to plausibly state a claim for any constitutional violation by Sheriff Mack personally.

[12] The Court assumes that Plaintiff's unlawful search and seizure claims against Defendant Mack are supervisory, as he is not alleged to have personally participated in the search and seizure.  Having found herein that the underlying unlawful search and seizure claims fail to state a claim upon which relief could be granted, Plaintiff's supervisory claims based on the same likewise fail as a matter of law.

state a claim for unlawful search and seizure, invasion of privacy, or due process against Defendants Don and Tim DeBourge because the claims were not causally related to Yates' death and, thus, were abated.  In the order, the Court explained that "the application of Alabama law results in the abatement of Yates' Section 1983 claims for conduct that did not cause his death." (Doc. 157 at 10).  The Court rejected Plaintiff's attempts to link the action of Defendants in breaking down the door with Yates' death hours later and dismissed Plaintiff's unlawful search and seizure claims.  (Id.).

The Court's analysis of this claim against the DeBourges likewise applies to Plaintiff's unlawful search and seizure claims against Defendants R. Correa and Smith.  As explained in Estate of Gilliam ex rel. Waldroup v. City of Prattville, 639 F.3d 1041, 1047 (11th Cir. 2011), in Alabama the only constitutional violation that survives death, assuming suit was not filed before death, is when the constitutional violation actually caused the party's death.  Moreover, "[f]or damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue." Jackson v. Sauls, 206 F.3d 1156, 1168 (11th Cir. 2000).

Thus, in order for Plaintiff's claims of unconstitutional search and seizure against these Defendants to survive, she must allege plausible facts that, but for the breach of the door by the DeBourges (which was authorized by Deputies R. Correa and Smith) and the initial entry into the residence by Deputies R. Correa and Smith, Yates would not have been killed by the SWAT Team hours later. Plaintiff implausibly alleges that these Defendants, knowing Yates' mental instability, should have reasonably foreseen that he would resist eviction by means of gunfire and an hours-long standoff against police and ultimately would shoot at officers who had repeatedly identified themselves as law enforcement officers. However, as the Court explained in Jackson, "when a uniformed officer, or an undercover officer identifying himself as a policeman, draws his gun during an illegal stop or arrest, third party civilians and detained persons do not normally begin shooting. Thus, in those situations, an officer would not reasonably foresee a shooting in response to a stop or arrest, even if illegal." Jackson, 206 F.3d at 1169. In other words, the causation link is broken if an officer identifies himself and in response is met with gunfire.

Accordingly, even if the breach of the door and the initial entry into Yates' residence by Deputies R. Correa and Smith were unconstitutional, it is implausible that these actions *actually caused* Yates' death hours later at the hands of the SWAT Team after

Yates opened fire on an approaching SWAT Team member. Thus, Plaintiff's unlawful search and seizure claims, which did not result in Yates' death, are abated.[13]

## IV. Conclusion

For the reasons discussed herein, Defendants R. Correa, Smith, and Mack are entitled to qualified immunity on each of Plaintiff's claims. Thus, the Motions to Dismiss filed by Defendants R. Correa, Smith, and Mack (Docs. 138, 140) are **GRANTED**.

**DONE** this **22nd** day of **December, 2021**.

**/s/Kristi K DuBose**
**UNITED STATES DISTRICT JUDGE**

---

[13] Having found herein that Defendants R. Correa, Smith, and Mack are entitled to qualified immunity on each of Plaintiff's claims as a result of Plaintiff's failure to demonstrate, through plausible factual allegations, a clearly established constitutional or statutory violation by these Defendants, the Court need not address any additional arguments proffered by these Defendants.