# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **AIMEE LYNNE YATES,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 1:20-00131-KD-B |
| ) | |
| **HUEY HOSS MACK,** *et al.*, ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on Defendant Baldwin County, Alabama's Motion for Attorneys' Fees and Costs (Doc. 153), Plaintiff Aimee Lynn Yates (Yates)' Response (Doc. 154), and said Defendant's Reply (Doc. 155).

**I.   Background**

On March 5, 2018, Robert Lewis Yates, Jr. (Mr. Yates) was shot and killed in connection with the execution of an alias writ of possession (and resulting standoff) at his home, a mobile home trailer located at the Key Allegro Villas Retirement Community in Fairhope, Alabama (Baldwin County, Alabama). (Doc. 1; Doc. 78; Doc. 131). Plaintiff Aimee Lynne Yates (Yates) is Mr. Yates' daughter. As a result of her father's death, on March 4, 2020 Yates initiated this action[1] against 39 Defendants alleging claims under 42 U.S.C. § 1983 including excessive force and violations of the First, Second, Fourth, and Fourteenth Amendments, discrimination under the Americans with Disabilities Act, negligence, wantonness, wrongful death, abuse of process (including conspiracy), breach of implied warranty of habitability, and reckless infliction of emotional distress. (Doc. 1). On July 15, 2020, Yates voluntarily dismissed her claims against the Baldwin County Sheriff's Office, the Baldwin County Major Crime Unit Task Force, and the

---

1. In her capacity as the personal representative of his estate.

Baldwin County SWAT Team. (Doc. 72; Doc. 90 at 2 at FN 1 (adopted per Doc. 92)). On March 2, 2021, Yates also moved to dismiss 24 individual defendants (Judd Beedy, Chad Lambert, Jason Woodruff, Chuck Sutherlin, Glen Hartenstein, Larry Dearing, Tony Nelson, Charles Varnado, Bill Smith, Curtis Summerlin, Daniel Steelman, Donnie Payne, Jarrod Sheffield, Jason Hall, Joseph Davis, Larry Paul, Jr., Lonnie McKinney, Mathew Hunady, Matt Morrison, Nate Lamplugh, Randy Younce, Rob Lindell, Shane Robinson, and Rex Bishop), and to file an amended complaint. (Doc. 128; Doc. 129). On March 10, 2021, the Court granted Yates' motion. (Doc. 130).

The Second Amended Complaint alleges Fourth and Fourteenth Amendment claims, Section 1983 claims, ADA claims, and state law claims, against 11 defendants: Baldwin County, Alabama (Baldwin); Justin Correa (J. Correa) and Robert Correa (R.Correa),[2] Tim Debourge (T.Debourge) and Don Debourge (D.Debourge);[3] Huey Hoss Mack (Mack);[4] Steve Arthur (Arthur), Nathan Lusk, Tony Nolfe (Nolfe), Andrew Reid (Reid), and Greg Smith (Smith).[5] (Doc. 131). As to Baldwin County, Yates generally asserts claims in the complaint based on the actions/inactions of Sheriff Mack and his deputies, the Baldwin County 911 Call Center (Call Center), and/or the Baldwin County Probate Court (Probate Court), and specifically asserts a claim for ADA disability discrimination (Count IX) -- as follows:[6]

> 55. All of the named individual defendants ...were acting under color of law outside the line and scope of the employment ... executing the writ of possession under the authority of the officials of Defendants Baldwin County....
>
> 56. ... it is the policy or custom of .... Baldwin County ... to allow, to fail to prohibit, or fail to discipline such actions, so as to constitute the policy of ... Baldwin

---

2. Deputies with the Baldwin County Sheriff Department, sued in their individual capacities. J.Correa is also sued as a member of the Baldwin County Swat Team.
3. Owner of Key Largo Villas Retirement Community, the mobile home park in Baldwin County where the incident occurred. D.Debourge is sued in his individual capacity. T.Debourge is his son.
4. Baldwin County, Alabama Sheriff.
5. Baldwin County Swat Team Members, sued in their individual capacities.
6. The Court has not included Yates' allegations against the Sheriff's Office, Task Force, and/or Swat Team, as she voluntarily dismissed those defendants were voluntarily dismissed from this case.

County..... Further, said defendants failed to train its officers, despite notice of the need to do so, to avoid such constitutional violations. .... no reasonable policies and procedures in place exist. The breach in this case was done without a search warrant on Yates's mobile home in violation of the Fourth Amendment. All named Defendants are liable for said breach.

\*\*\*

85. Yates suffered from depression and other recognized disabilities under the Americans with Disabilities Act.

86. Baldwin County, Alabama, through, and employers in the Probate Court of Baldwin County, including the sheriff deputies its agents, officers they employed to assist in involuntary commitment hearings, knew of Yates' mental disability and disorders, having initiated several involuntary commitment proceedings against Yates in the past through the Probate Court of Baldwin County, Alabama, and by Yates' own 911 calls to the Baldwin County 9-1-1 District Call Center.

87. Yates desperate pleas for help were ignored by Baldwin County, Alabama, by and through, defendant Sheriff Mack whose sheriff deputies act as officials who are employed to assist in probate court involuntary commitment hearings, in Baldwin County, Alabama, and by the Baldwin County 9-1-1 District Call Center, and other officials who were in charge of their operations.

88. Said actions by said Baldwin County, Alabama and its officials constitute disability discrimination under the Americans with Disabilities Act.

\*\*\*

(Doc. 131 at 26, 36-37).

On November 8, 2021, the Court granted Baldwin County's motion to dismiss stating, in part, as follows:

> **Yates' general claims against Baldwin County are due to be dismissed *as a matter of law*.** Yates asserts that Baldwin County is the employer of Probate Court, sheriff/ deputies, and Call Center (Doc. 131 at ¶86) -- based on a *respondeat superior* framework -- such that the county is liable for their inactions/actions. From this, Yates' claims are rooted in the mistaken beliefs that: 1) Sheriff Mack and his deputies are agents of the county; 2) the Call Center is an agent of the county; and 3) the Probate Court is an agent of the county -- rather than a political and legal subdivision of the State of Alabama. However, as a matter of case law: 1) the Sheriff and his deputies are agents of the State of Alabama, not the county; 2) the Call Center is a political and legal subdivision of the State of Alabama, not an agent of the county; and 3) the Probate Court is a judicial body and treated as an arm of the State of Alabama judicial system, not the county. As a result, Baldwin County cannot be held liable for the actions of Sheriff Mack or his deputies, the Call Center, and/or the Probate Court, *as a matter of law*. See, e.g., McMillian v. Monroe Cty., Ala., 520 U.S. 781, 789 (1997) ("...sheriffs are state officers, and ... tort claims

3

brought against sheriffs based on their official acts...constitute suits against the State, not suits against the sheriff's county...[--]" holding that the sheriff was a policymaker for the State of Alabama, not for the sheriff's county); Snow v. King, 2018 WL 656032, *7 (N.D. Ala. Feb. 1, 2018) (discussing ALA. CONST. 1901, § 139 and holding that in Alabama, municipal courts (and generally courts of the unified judicial system -- including probate courts) are "treated as an arm of the state judicial system[]"); Hester v. Lowndes Cty. Com'n, 2006 WL 2547430, *5-6 (M.D. Ala. Sept. 1, 2006) (a deputy sheriff is an officer of the State of Alabama, not an employee of the county such that a county cannot be held liable in *respondeat superior* for the acts of a county deputy, who is a state officer (not a county employee); ALA. CONST. 1901, § 139 ("... the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of .... a probate court[]"); Ala. Code §§ 11-98-1 *et seq*. (all Alabama call centers authorized to be created by the governing bodies of cities and counties under this section are "political and legal subdivisions of the state, with power to sue and be sued in their corporate names[]"); Ala. Code § 12-1-2 ("The judicial power of the state is vested exclusively in a unified judicial system which shall consist of ... a probate court[]"); Ex parte Sumter Cty., 953 So.2d 1235, 1239 (Ala. 2006) (sheriffs and sheriffs' deputies are not county employees but are executive officers of the State of Alabama, meaning that the sheriff's county cannot be held vicariously liable for his or her actions or inactions); Hutchison v. Choctaw Cty. Emergency Comm. District, 906 So.2d 933, 937 (Ala. Civ. App. 2004) (the emergency communication districts in the State of Alabama are political and legal subdivision of the state, with the power to sue and be sued in their corporate names -- "in other words, although [the Call Center] .... was created by a county commission, the plaintiffs' claim against it is not a claim against a 'county'....").

**Similarly, Yates' ADA claims against Baldwin County are due to be dismissed *as a matter of law*.** Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12132. Specifically, as set forth in Rylee v. Chapman, 316 Fed. Appx. 901, 905-906 (11th Cir. 2009), to establish a *prima facie* case under the ADA, the plaintiff must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami–Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007). A plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n. 6 (11th Cir. 2008). In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a "specific demand" for an accommodation. Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999).

4

See also 42 U.S.C. § 12131). In the Eleventh Circuit, "whether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination." United States v. Hialeah Hous. Auth., 418 Fed. Appx. 872, 875 (11th Cir. 2011) (citation omitted) (\ reasonable accommodations under the Fair Housing Act). The focus is whether the defendant "[has] enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [defendant] to make appropriate inquiries about the possible need for accommodation." Id. 876. "[F]or a demand to be specific enough to trigger the duty ... the defendant must have enough information to know of both the disability and a desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [defendant] to make appropriate inquiries about the possible need for an accommodation." Id.

In the Complaint, Yates alleges that Mr. Yates suffered from depression and other disabilities under the ADA and that Baldwin County -- via involuntary commitment proceedings against him in Probate Court (with which the sheriff and deputies assisted) and 911 calls to the Call Center -- "knew or should have known" of his mental disability/disorders but ignored "his desperate pleas for help[.]" (Doc. 131 at 36-37 at ¶¶ 86-87)). Yates also argues that her ADA claim is based on the same allegations as her claims of violation of due process and deliberate indifference to Mr. Yates' serious medical needs. Yates frames her ADA claim as follows:

> ... Baldwin County ... knew or should have known of Yates' mental disability, but ignored his 911 calls and his family's desperate pleas for help, and in so doing failed to make reasonable accommodations ... including access to medical and mental health treatment .....

(Doc. 147 at 21).

However, as detailed *supra*, Baldwin County cannot be liable for the actions or inactions of the Probate Court, Call Center, Sheriff and/or his deputies, because they are not agents or employees of the county. Rather, respectively, they are part of the unified judicial system of the State of Alabama, a political/legal subdivision of the State of Alabama, and officers of the State of Alabama. See supra. See also e.g., Slaughter v. Dooly Cty., 2007 WL 2908648, *8 and *15 (M.D. Ga. Sept. 28, 2007) (Plaintiff's ADA claim -- failure to .... accommodat[e] -- concern state, not county, functions. In carrying out these functions, the sheriff acts as an official of the State, not the County. Thus, Dooly County is not the proper "public entity" which bears responsibility for the conduct alleged to have violated the ADA. See 42 U.S.C. § 1213(1)[]").

(Doc. 152 at 5).

## II.   Attorneys' Fees and Costs

Baldwin County argues that it should be awarded attorneys' fees and costs pursuant to 42

U.S.C. § 1988, as the prevailing party in this case, due to the frivolous nature of Plaintiff's general claims and ADA claims against it based on existing case law and the Court's Order explaining that: 1) the Sheriff and his deputies are agents of the State of Alabama, not the county; 2) the Call Center is a political and legal subdivision of the State of Alabama, not an agent of the county; and 3) the Probate Court is a judicial body and treated as an arm of the State of Alabama. Baldwin County adds that Plaintiff's failure to "conduct[] a basic investigation of her claims prior to bringing suit[]" -- from which she would have determined that the Sheriff, 911 Call Center, and Probate Court, were not employed by Baldwin County -- supports the requested fees and costs.

Section 1988(b) provides, in relevant part, that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, ...1983, ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs..." 42 U.S.C. § 1988(b). Plaintiff's claims against Baldwin County were alleged as: 1) general claims of inaction/action based on *respondeat superior*; and 2) ADA claims. Baldwin County's motion to dismiss those claims was granted, and so it now seeks Section 1988 attorneys' fees/costs citing the frivolous nature of Plaintiff's claims.

First, Section 1988(b) does not provide for the recovery of attorneys' fees and costs for ADA claims, such that they cannot be awarded in this case pursuant to same. Rather, the ADA contains a fee shifting provision to award reasonable fees to prevailing parties. Specifically, 42 U.S.C. § 12205 provides that "[i]n any action ... commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs ..." As summarized by the Eleventh Circuit in Caplan v. All American Auto Collision, Inc., 2022 WL 1939553, *3 (11th Cir. Jun. 6, 2022) (footnote omitted):

> ...Under Section 12205 of the ADA, a court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including

litigation expenses, and costs." 42 U.S.C. § 12205. A reasonable attorney's fee, in turn, is calculated "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."[] Blum v. Stenson, 465 U.S. 886, 888... (1984) (citing Hensley v. Eckerhart, 461 U.S. 424, 433... (1983)). The sum of this calculation is often called the "lodestar." *Ass'n of Disabled Ams.*, 469 F.3d at 1359 (quoting Hensley, 461 U.S. at 433–34...)...

See also Ass'n of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359 (11th Cir. 2006). As explained in Grasso v. Dudek, 2014 WL 12621193, *2 (M.D. Fla. Jan. 6, 2014):

> ..The term "prevailing party" under the ADA ... is to be interpreted consistently with its meaning under Section 1988 of the Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988(b). Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7,...(1983) ("The standards set forth in this opinion [construing the recovery of attorney fees under § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party' "); Barnes v. Broward County Sheriff's Office, 190 F.3d 1274, 1277 (11th Cir. 1999) (applying analysis of prevailing party standard under Section 1988 in an ADA case)....

See also Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 604 (2001) (eliminating the "catalyst theory" as a basis for attorney's fees, stating instead that to qualify as a "prevailing party" under a fee shifting statute, a plaintiff must have obtained a "court-ordered change in the legal relationship between the plaintiff and the defendant[]").

In its discretion, the Court construes Baldwin County's motion as seeking attorneys' fees and costs pursuant to 42 U.S.C. § 12205.  In awarding Section 12205 attorneys' fees, "a district court has discretion to consider, among other things, whether the litigation is frivolous or whether the plaintiff declined to settle after receiving a fair offer of judgment...." Neptune Designs, 469 F.3d at 1360 (internal citation and footnote omitted). "[W]here the factual record supports a finding that the plaintiff filed or maintained a suit unnecessarily, a district court may properly consider such a finding in setting the amount of attorney's fees. Id. Additionally, the fees and costs are

sought based on Baldwin County's successful motion to dismiss. And as this Court noted in its order granting the motion to dismiss as follows:

> ... While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555). "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Id. at 570. While this "plausibility standard is not akin to a 'probability requirement' at the pleading stage ... the standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." Id. at 556.

Yates v. Mack, 2021 WL 6211385, *2 (S.D. Ala. Nov. 8, 2021).

A prevailing defendant such as Baldwin County may be awarded attorneys' fees, in this Court's discretion, based on a finding that the Plaintiff's lawsuit was frivolous, unreasonable, or groundless. Bruce v. City of Gainesville, 177 F.3d 949, 952 (11th Cir. 1999) (citing Christiansburg Garment Co. v. Equal Employment Opportunity Commn., 434 U.S. 412, 422 (1978)) (a "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so[]"); see also Beach Blitz Co. v. City of Miami Beach, Fla., 13 F.4th 1289, 1296–97 (11th Cir. 2021) ("Because Congress intended for prevailing defendants to recover fees only when forced to defend suits 'having no legal or factual basis,' Christiansburg, 434 U.S. at 420, 98 S.Ct. 694, a defendant may recover attorney's fees 'only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quotation marks omitted); accord CRST Van Expedited, Inc. v. E.E.O.C., 578 U.S. 419, 136 S. Ct. 1642,

1646, 194 L.Ed.2d 707 (2016) ('When a defendant is the prevailing party on a civil rights claim, the Court has held, district courts may award attorney's fees if the plaintiff's "claim was frivolous, unreasonable, or groundless," or if "the plaintiff continued to litigate after it clearly became so."') (quoting Christiansburg, 434 U.S. at 422, 98 S.Ct. 694)). The Eleventh Circuit provides general guidelines for courts to assess frivolity: 1) whether plaintiff established a *prima facie* case; 2) whether defendant offered to settle; and 3) whether the trial court dismissed the case prior to trial or a full trial was held on the merits. Bruce, 177 F.3d at 952. Even so, district courts determine frivolity on a case-by-case basis, focusing on whether the case is "seriously lacking in arguable merit."

As explained in the Order, based on clearly established and readily accessible Alabama caselaw and Alabama statutes, the Sheriff, Deputy, 911 Call Center, and/or Probate Court were improper defendants in this case. This -- in light of the motion to dismiss standard (*i.e.*, mere plausibility) underscores the frivolous nature of Plaintiff's ADA claims against them and highlights the conclusion that there was no reasonable legal basis for asserting same (*i.e.*, that Plaintiff's claims against these specific defendants were so lacking in arguable merit as to be groundless or without foundation). Additionally, a review of Baldwin County's billing records indicate that counsel repeatedly advised Plaintiff's counsel of the frivolous nature of the claims. (Doc. 153-1 at 3). As such, Plaintiff failed to make out a *prima facie* case and the case was dismissed by the Court and never made it to trial. Accordingly, the Court is satisfied that the record supports a finding that Plaintiff's ADA claims against these defendants were frivolous, unreasonable, or groundless.

Second, there is no specific fee-shifting provision for Plaintiff's more general (non-ADA) action/inaction claims against Baldwin County based on *respondeat superior* (vicarious liability). Baldwin County also provides no legal basis in its motion and/or reply for the award of fees based

on defending those types of claims. However, the Court's review of the Plaintiff's overall complaint reveals that such clearly raises Section 1983 claims, and Section 1983 provides the umbrella statute through which these action/inaction claims (rooted in *respondeat superior*) have been alleged against Baldwin County. Case law repeatedly holds that *respondeat superior* claims (claims based on vicarious liability doctrines) against a municipality are not viable under Section 1983, and supervisory officials are not liable under section 1983 claims on the basis of *respondeat superior* or vicarious liability.[7] See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); see, e.g., Lankster v. City of Linden, Ala., No. 2009 WL 2255009, at *4 (S.D. Ala. July 27, 2009) ("[T]o the extent plaintiff seeks to hold the [defendant] liable under a theory of *respondeat superior,* his claim is frivolous.").

Nevertheless, Baldwin County still had to defend against Plaintiff's claims and did so successfully, via a motion to dismiss. For the same reasons stated *supra* for Plaintiff's ADA claims, the non-ADA claims were frivolous. As such, the court is satisfied that attorneys' fees and costs are awardable to Baldwin County under Section 1988 for these claims. See, e.g., O'Boyle v.

---

7 As specified in Kentucky v. Graham, 473 U.S. 159, 165 and 168 (1985):
    "... liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant[FN9] ...
        FN 9 The rules are somewhat different with respect to prevailing defendants. Prevailing defendants generally are entitled to costs, see Fed.Rule Civ.Proc. 54(d), but are entitled to fees only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. See Hensley v. Eckerhart, 461 U.S. 424, 429, n. 2, 103 S.Ct. 1933, 1937, n. 2, 76 L.Ed.2d 40 (1983)....
    ... Section 1988 does not guarantee that lawyers will recover fees anytime their clients sue a government official in his personal capacity, with the governmental entity as ultimate insurer. Instead, fee liability runs with merits liability; if federal law does not make the government substantively liable on a respondeat superior basis, the government similarly is not liable for fees on that basis under § 1988. Section 1988 simply does not create fee liability where merits liability is non-existent[ ]..."

10

Thrasher, 647 Fed.Appx. 994, 995-996 (11th Cir. 2016) (affirming the trial court's award of attorney's fees to a defendant where the trial court had previously dismissed the plaintiff's Section 1983 claims with prejudice, finding the plaintiff's factual allegations were insufficient to state a claim).

Baldwin county seeks an award of $4,731.85 in attorneys' fees and $2.30 for costs pursuant to 42 U.S.C. § 1988 from Aimee Lynne Yates based on "the reasonable rate and for work which was necessary in the defense of this case." (Doc. 153 at 6). The fees are for the "investigation of the Plaintiff's claims, interviews with witness, review of evidentiary material, preparation of motions, legal research, preparation and attendance of hearings, etc.," performed by attorney James Randall McNeill. (Doc. 153 at 5).

When considering the fees requested -- and as explained in Precision IBC, Inc. v. Phoenix Chemical Tech., LLC, 2017 WL 1404328, *1-2 (S.D. Ala. Apr. 19, 2017): "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract... Jones v. Regions Bank, 25 So. 3d 427, 441 (Ala. 2009) (citations omitted)... Under Alabama law, such attorney's fees are recoverable; however, recovery is subject to Alabama's imposition of a reasonableness constraint on all fee shifting contracts, as a mat[t]er of public policy..."

The calculation of reasonable attorney's fees is within the sound discretion of the court. Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1187 (11th Cir. 1983); see also Kiker v. Probate Court of Mobile Cty., 67 So. 3d 865, 867 (Ala. 2010) ("'the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Watford v. Heckler, 765 F.2d 1562, 1568 (11th Cir. 1985) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433.... (1983)). "The first step.... is

to determine the 'lodestar'—the product of multiplying reasonable hours expended times a reasonable hourly rate." Martinez v. Hernando Cty. Sheriff's Office, 579 Fed.Appx. 710, 713 (11th Cir. 2014) (citing Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999)); see also Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) ("The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve."). The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Barnes, 168 F.3d at 427. The court may utilize its own "knowledge and expertise" to come to an independent judgment regarding the reasonableness of requested attorney's fees. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).

"[T]he prevailing party must not request fees for hours that are "excessive, redundant, or otherwise unnecessary," or request fees for unsuccessful claims. Hensley, 61 U.S. at 434-35. When a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins, 548 F.3d at 1350. Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. See, e.g., Norman v. Hous. Auth. of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). Notably, "[t]he court ... is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." Id. at 1303 (citations omitted). The lodestar figure established by the Court may be adjusted in consideration of various factors that include:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So. 2d 740, 749 (Ala. 1988).

In determining the proper lodestar in this case, the undersigned first considers what hourly rates are reasonable and then what hours were reasonably expended in pursuing this matter. In so doing, the Court keeps in mind that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437 ... Adjustments may be made "as necessary[.]" Blum v. Stenson, 465 U.S. 886, 888 (1984).[8]

Indeed, regardless of who is doing the billing, courts may only award fees for time spent by attorneys, or for the work of non-lawyer paralegals and non-lawyer law clerks but only to the extent they perform work "traditionally done by an attorney[ ]" -- i.e., there can be no fees awarded for overhead. See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 at note 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them[ ]"); see also Vanderbilt Mortg. and Fin., Inc. v. Crosby, 2015 WL 5178719, *2 (S.D. Ala. Sept. 54, 2015) ("excessive, redundant, or otherwise unnecessary" fees are not recoverable); see also SE Prop. Holdings, LLC v. 145, LLC, 2012 WL 6681784, *4-5 (S.D. Ala.

---

8. Norman v. Housing Auth. of the City of Montg., 836 F.2d 1292 (11th Cir. 1988). Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended. Hensley, 461 U.S. at 434. Even when a party prevails, the court still must determine whether time was reasonably expended and if not, that time should be excluded. Id. While the "lodestar" method effectively replaced Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), the 12 Johnson factors "might still be considered in terms of their influence on the lodestar amount.

Dec. 21, 2012) (allowing recovery of traditional attorney-work but not clerical work); see also Brown v. Lambert's Cafe III, 2016 WL 325131, *6, n. 4 (S.D. Ala. Jan. 27, 2016) (clerical tasks are not recoverable).[9] "Courts in this district generally consider tasks such as mailing and telefaxing correspondence, making routine calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions." Cormier v. ACAC Inc., 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013). See Johnson v. TMI Mgmt. Sys., Inc., 2012 WL 4435304, *5 (S.D. Ala. 2012) (finding "telephone call to client re: scheduling appointment," "receipt and download of order," and "review of the Court's Order ..." non-compensable); Oden, 2013 WL 4046456, *8 (S.D. Ala. 2013) (excessive time spent tracking down documents is not recoverable). See also Whitney Bank v. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition).

### A. Reasonable Hourly Rate

The Court may look to the fee customarily charged in the relevant locality for legal services in similar cases. Baldwin County states that $170.00 is a reasonable hourly rate for McNeill, a partner, and that $135.50 is a reasonable hourly rate for his associate(s). In support, Defendant

---

9. See, e.g., Cormier v. ACAC Inc., 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013) (tasks like emailing, faxing, obtaining pleadings from the court's database, etc. are not recoverable); Whitney Bank v. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (holding that time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," etc. are not compensable); Andriello v. CFI Sales & Marketing, Inc., 2012 WL 3264920, *9 (M.D. Fla. Jan. 4, 2012) (same); Miller v. Kenworth of Dothan, Inc., 117 F.Supp.2d 1247, 1261 (M.D. Ala. 2000) (excessive time billed not compensable).

provided attorney Henry Floyd Sherrod, III's, affidavit as to his opinion that $170.00 per hour is a "very reasonable and below average" hourly rate in this district for a skilled and experienced attorney in § 1983 litigation, as Sherrod's hourly rate is $500.00 per hour for § 1983 cases. (Doc. 153-3 at 3). McNeill states that he has more than 10 years experience in § 1983 cases and has defended at least 400 § 1983 claims. McNeill "prosecuted cases for the Alabama Attorney General in the Appeals and Criminal Trials Division from 1987-1993, Montgomery County District Attorney's office from 1993-2000, and the Alabama Securities Commission from 2000-2011 as a Deputy Directory." (Doc. 153-3 at 3).

Generally, the "reasonable hourly rate" is defined as "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895–896 n. 11, 104 S. Ct. 1541 (1984). The "relevant market" is usually the "place where the case is filed." American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (citation and internal quotation marks omitted). Overall, the court is " 'itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quoting Norman, 836 F.2d at 1303). But the district courts are warned that "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." Dillard v. City of Greensboro, 213 F.3d 1347, 1355 (11th Cir. 2000).

Although the Court does not give controlling weight to prior awards, those awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this district for attorneys of reasonably comparable skill, experience, and reputation to that of McNeill seeking an award of attorney's fees. Norman, 836 F.2d at 1299; see

Goldsby v. Renosol Seating, LLC, 2013 WL 6535253, at *9 (S.D. Ala. Dec. 13, 2013) (FLSA collective action) ("[T]his Court's customary hourly rates for attorneys ... ranges from $250.00 to $300.00 for more experienced and qualified attorneys[.]"); Oden v. Vilsack, 2013 WL 404656 at *6 (S.D. Ala. Aug. 9, 2013) (awarding $250.00 per hour as a reasonable rate in the prevailing market for attorneys with fifteen to twenty years of experience including one attorney with forty years experience but with limited experience in civil rights actions) (action pursuant to the Equal Credit Opportunity Act); Decorative Components Inc., Inc. v. ICON Computing Solutions, Inc., 2012 WL 5398800, *5-6 (S.D. Ala. Nov. 2, 2012) (recognizing that $250 to $350 per hour was a reasonable hourly rate for "top Mobile lawyers in complex cases") (citation omitted); Langford v. Hale Cnty. Alabama Comm'n, 2016 WL 4976859, at *5 (S.D. Ala. Sept. 16, 2016) ($275.00 hourly rate was found reasonable in a § 1983 claim). The Court has also considered Sherrod's affidavit as to the reasonableness of McNeill's hourly rate.

Also, the skill requisite to perform the legal service properly and the attorney's experience and reputation may be considered in determining a reasonable hourly rate. The Court has considered the legal skills exhibited by McNeill in his appearance before this Court and finds him to be a highly qualified litigator. In Norman, the Eleventh Circuit discussed legal skill in depth and instructed that the district courts may consider the "judgment shown in case assessment," "expertise in negotiations and tactics," "organization and efficiency," "knowledge of trial practice and knowledge of the substantive law" and last "persuasiveness." Norman, 836 F.2d at 1300-01. The Eleventh Circuit then explained that "[i]t is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar ..." Norman, 836 F.2d at 1301.

Upon consideration of the foregoing, the Court finds $170.00 per hour is a reasonable hourly rate for McNeill and that $135.50 per hour is a reasonable rate for his associate(s).[10]

### B. Reasonableness of Hours Expended

In determining whether the number of hours expended are reasonable, the Court should not include any hours which are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301. When awarding a fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428. The Court will not permit a party to recover fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted).

The Court has reviewed the time billed, 45.8 hours, by attorney McNeill and his associate(s). (Doc. 153-1). The billing record shows time spent drafting motions and briefs, analyzing evidence, reviewing answers and objections, determining defenses, and communicating with other counsel. (Doc. 153-1). A review of the billing record does not reveal excessive, redundant or unnecessary hours. The billing records support a finding of reasonable hours billed. Additionally, per the affidavit, McNeill attested to the reasonableness of the hours billed (Doc. 153-2). Thus, the Court finds reasonable the **45.8 hours** billed by McNeill (36.8 hours) and his associate(s) (9 hours).

### C. Calculating the Loadstar

---

10. Here, no information has been submitted about the associate(s) experience. "In the past, this Court has awarded the rate of $150 per hour for associates' time when their expertise is indeterminate." Vision Bank v. Anderson, No. CIV.A. 10-0372-KD-M, 2011 WL 2142786, at *3 (S.D. Ala. May 31, 2011) (collecting cases). See e.g., Vision Bank v. FP Management, LLC, 2012 WL 222951, at *3 (S.D. Ala. Jan. 25, 2012)(finding $150 per hour a reasonable rate for an associate attorney with an indeterminate amount of experience).

The Court has determined that Defendant is entitled to an hourly rate of $170.00 as to McNeill and $135.50 as to his associate(s) for their provided legal services. The Court has determined that 45.8 hours were reasonably expended in this action – 36.8 hours by McNeill and nine hours by his associate(s). Accordingly, the lodestar calculation is $7,475.50.[11] However, Defendant "seek[s] less than the lodestar of reasonable hours x reasonable rate," and requests $4,731.85. (Doc. 153 at 6). Thus, Defendant is entitled to attorneys' fees in the amount of $4,731.85 and adjustments to the loadstar calculation shall not be made.

### D. Costs

Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Defendant prevailed via the Court's granting of its Motion to Dismiss. (Doc. 152). Defendants seek to recover **$2.30** for costs incurred in defending this action. Upon consideration, the Court finds that the *de minimis* costs requested by Defendants are reasonable and recoverable.

### III.  Conclusion

Accordingly, it is **ORDERED** that Defendant Baldwin County, Alabama's, Motion for Attorney Fees and Costs (Doc. 153) is **GRANTED**. The Court awards $4,731.85 in fees and $2.30 in costs.

**DONE** and **ORDERED** this the **27th** day of **June 2022.**

/s/ Kristi K. DuBose  
**KRISTI K. DUBOSE**  
**UNITED STATES DISTRICT JUDGE**

---

11. $6,256 from McNeill's work plus the $1,219.5 from his associate's work totals $7,475.50.